**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| STACY ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 19-06137-CV-SJ-BP |
| CITY OF ST. JOSEPH, | ) | |
| ST. JOSEPH PUBLIC LIBRARY, | ) | |
| OFFICER REBECCA HAILEY (IN HER | ) | |
| PERSONAL AND PROFESSIONAL CAPACITY) | ) | |
| AND ROGER CLARY | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## FIRST AMENDED COMPLAINT

> [I]mperative is the need to preserve inviolate the constitutional rights of free
> speech, free press, and free assembly in order to maintain the opportunity for free
> political discussion, to the end that government may be responsive to the people,
> and that changes, if desired, may be obtained by peaceful means.
> Charles Evans Hughes, De Jonge v. Oregon, 229 U.S. 353, 365 (1937).

1.   Plaintiff Stacy Arnold presents this complaint under the United States Constitution to

resolve her unlawful detention, charge, and chilling violations of her First Amendment right to

petition on a sidewalk as well as the external grounds of a public library.  Plaintiff seeks

declaratory and injunctive relief from Defendant St. Joseph Public Library, due to actions and a

policy that violate that the First Amendment. Due to Defendants' City of St. Joseph's,  Officer

Rebecca Haley's and Roger Clary's willful and egregious Constitutional violations, Plaintiff

seeks not only declaratory and injunctive relief, but also any applicable damages, including, but

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 1

not limited to, the costs she has incurred and continues to incur in the vindication of her civil rights. The Constitution is a living document that forms the foundation of our democracy, and Plaintiff was arrested, intimidated, and prosecuted for engaging in core political speech in the most appropriate and profoundly compatible place imaginable with discussing matters of public concern. While Plaintiff seeks multiple forms of relief, she will not be made whole absent a holding declaring and vindicating her rights, subsequently lifting the chill that Defendants have placed on the core political speech of Plaintiff and others not before this Court.

## JURISDICTION AND VENUE

2.   This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

3.   This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.   As this Complaint involves a question of actual controversy, this Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

5.   Venue is proper in the District of Western Missouri under 28 U.S.C. § 1391.

6.   This Court has the authority to grant Plaintiff's prayer for costs, including any applicable attorney's fees,  under 42 U.S.C. § 1988.

## PARTIES

7.   Plaintiff Stacy Arnold frequently works as a canvasser. Canvassing involves talking with

people about matters of public concern and often also involves facilitating the collective action of people who share the same values, to the end that those values may be reflected in the society in which we find ourselves. While Plaintiff has worked for many causes she believes in, no cause is closer to her than her belief that people who are working hard and playing by the rules deserve a fair playing field and should not be living in poverty. Plaintiff has experienced economic insecurity herself and has worked in restaurants alongside hard-working people who frequently had to make decisions between paying for rent, healthcare and childcare—decisions that no human being should ever have to make. While Plaintiff was "on-the-clock" when the incident described herein occurred, she chose the position, consistent with her work record over the last six years, because it allowed her a structured and meaningful opportunity to discuss public questions and affect change.

8.   Defendant City of St. Joseph was and still is a municipal corporation, organized and existing under the Laws of the State of Missouri.

9.   Defendant St. Joseph Public Library was and still is a political subdivision of Missouri and a public entity that provides library facilities and library services to the St. Joseph area.

10.   Defendant Officer Rebecca Hailey was and still is a police officer for the City of St. Joseph. She is sued in her personal and professional capacity.

11.   Defendant Roger Clary was a security guard for the East Hills Mall. Defendant Roger Clary's contested conduct constituted state action.

## STATEMENTS OF FACT

12.   On or around noon on January 30, 2018, Plaintiff was circulating a petition in front of the East Hills Library, a library within the St. Joseph Public Library branch.

13. Plaintiff was positioned on the exterior grounds of the East Hills Library, and was

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 3

circulating a petition registered with the state of Missouri to raise the minimum wage. Plaintiff asked patrons entering and exiting the library if they would like to sign her petition, while not positioning herself as to block the ingress or eress of patrtons. Plaintiff was petitioning the way that she always does: she would smile and greet people when she saw them, and then would approach them, casually but non-threateningly—as though she were approaching a friend—and tell them about the petition. If anyone indicated that they were not a registered voter, had already signed the petition, did not support the petition, or wanted Plaintiff to go away, Plaintiff smiled at them and told them to have a good day.

14. At no time did Plaintiff cause crowds to gather.

15. As foot traffic was fairly limited, Plaintiff did ask some individuals in their cars in the single-row parking lot facing the library. Plaintiff did this by positioning herself about five (5) feet from people in vehicles and smiling, holding up the petition, and making eye contact. If the occupant of a vehicle rolled their window down, Plaintiff would ask him or her to sign her petition. At no time did Plaintiff block or impede vehicular traffic.

16. Plaintiff had petitioned in front of the library the preceding Saturday with no problems whatsoever. At no point on the preceding Saturday was she approached by an employee or agent of the Library with a request that she stop petitioning or amend any aspect of how she was petitioning.

17. Shortly after Plaintiff had begun petitioning on January 30, 2018, a mall security vehicle arrived. Two individuals were inside of the vehicle. One individual (later identified via Sunshine request as Defendant Roger Clary) told Plaintiff that she could not petition at the library. Upon information and belief, these individuals arrived per the complaint of a librarian.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 4

18.  Neither Defendant Roger Clary nor the individual accompanying him expressed any complaint or concern about the w*ay* Plaintiff was petitioning. Neither or them asked Plaintiff to acquiesce to any type of petitioning restriction. Neither of them informed Plaintiff that there was a designated area or asked her to remain in or move to said area.  Neither of them asked Plaintiff to stop talking to people in their cars. Neither or them referred Plaintiff to the library director or her designee. Neither of them mentioned any adequate, alternative locations from which Plaintiff could petition. Neither of them differentiated property belonging to the library and property belonging to the mall. On the contrary, Defendant Roger Clary told Plaintiff that the librarian had called to complain about Plaintiff's petitioning, that the mall owned the entire library grounds and that no one had ever been allowed to petition there.

19.  Before the incident complained of herein transpired, Plaintiff had googled, "Can I petition in front of a public library?" and the first result linked her to Groene v. Seng[1]  2006 WL 5680261 (D. Neb. June 29, 2006), which she had read. Like any reasonable person reading that decision, Plaintiff rightfully believed that she had a right to petition in front of the library.  She rightfully pointed out to the then-nameless security guard—Defendant Roger Clary—that she had a First Amendment right to petition in front of the library. She told him that if he thought otherwise that he would need to call the police and have them make a determination.  She also told him that if the police agreed with him that she would get the badge number of the officer and leave.

20. The then-nameless security guard, Defendant Roger Clary, became irritated. Plaintiff told

[1]As of June 18, 2019, this is still the first result on google for "Can I petition in front of a public library?"
https://blog.librarylaw.com/librarylaw/2006/07/can_you_prohibi.html
COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 5

him that if she were at the mall she would happily leave, to which Defendant Roger Clary argued that the library was no different than the mall. Plaintiff Stacy Arnold and Defendant Roger Clary verbally disagreed with each other over at least two Constitutional questions: 1) whether or not petitioning in front of a public library is protected by the First Amendment and 2) whether or not petitioning in front of a public library with private ownership is protected by the First Amendment. Notably, Plaintiff Stacy Arnold and Defendant Roger Clary did *not* verbally disagree over whether or not confining petitioning to a designated area in front of a library was a permissible restriction under the First Amendment, as Defendant Roger Clary made Plaintiff aware of no such designated area, claiming, once again, that the mall owned the entire library and that no one had ever been allowed to petition there.

21.  Defendant Roger Clary called the police. A recording of this call obtained via a Sunshine request to the St. Joseph PD and redacted by an agent of Plaintiff was delivered to the Court along with Plaintiff's original complaint as Exhibit A. Plaintiff incorporates this recording—hereinafter "Exhibit A"—by reference.

22. Plaintiff Stacy Arnold then called her boss, who, at Plaintiff's request, also called the police. A recording of this call obtained via a Sunshine request to the St. Joseph PD and redacted by an agent of Plaintiff was delivered to the Court along with Plaintiff's original complaint as Exhibit B. Plaintiff incorporates this recording—hereinafter "Exhibit B"—by reference. In the recording, the individual who was Plaintiff's boss at the time of the conduct complained of herein says that he wants to "make sure she [Plaintiff] has a right to be at a public library petitioning."  The operator did *not* indicate that Plaintiff should leave or stop petitioning but did indicate that an officer was on the way and would make a determination.

23. The call for service report regarding this incident indicates that Defendant

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 6

Roger Clary placed his call to the police around 12:10 pm and that Plaintiff's boss placed his call to the police around 12:14 pm. Plaintiff obtained a copy of the call for service report via a Sunshine request. A redacted copy is attached hereto as Exhibit C.

24. Plaintiff then asked the then-nameless security guard—Defendant Roger Clary—for his name so that she could follow up regarding the incident, as Plaintiff had a suspicion that he was not being truthful, and he refused to tell her his name. Plaintiff recorded the Defendant security guard refusing to tell her his name. A copy of this recording was delivered to the Court with Plaintiff's original complaint as Exhibit D. This recording—hereinafter "Exhibit D"—is incorporated herein by reference. The other individual who was in the vehicle—Zachary Langford—who gave no command to leave, gave Plaintiff his card. In fact, the only recollection that Plaintiff has of leaving the sidewalk area and stepping onto the parking lot after mall security arrived was to walk forward in order to accept the card of Zachary Langford.

25. Plaintiff was out of earshot of mall security and on the phone with her boss when two officers arrived. Defendant Officer Rebecca Hailey stepped out of her vehicle. "Get off your phone," she commanded Plaintiff, and Plaintiff got off her phone, without argument and without question. Defendant Officer Rebecca Hailey then dramatically asked Plaintiff "What are you doing, on private property?" and immediately followed this question with a command for Plaintiff to "give me your ID." And Plaintiff walked forward towards Defendant Officer Rebecca Hailey to give her Plaintiff's ID, without argument and without question. The call for service report regarding this incident—Exhibit C—displays Plaintiff's full name and birthdate in the description added at 12:28:06 as well as a number resembling Plaintiff's ID number—one digit is missing—at 12:28:20.

26. Defendant Officer Rebecca Hailey then asked Plaintiff something to the effect of if she

was aware that she could not petition at the library, and to this Plaintiff did not agree. Plaintiff then rightfully stated that she was "aware that this a public forum." Plaintiff recorded the interaction from this point onward until her phone was unlawfully seized. A copy of this video was delivered to the Court along with Plaintiff's original complaint as Exhibit E. This video—hereinafter "Exhibit E"—is incorporated herein by reference. Defendant Officer Rebecca Hailey then responded with "it's actually not," at which point Plaintiff vocalized that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the defendant officer's badge number, and indicated that she, Plaintiff, would not disobey an order.

27. Defendant Officer Rebecca Hailey then alleged that Plaintiff was trespassing because the security guard had already asked her to leave. Plaintiff repeated her request for the badge number of the defendant officer.

28. Defendant Officer Rebecca Hailey did not provide Plaintiff with her badge number.

29. Instead, she said, "we're gonna do this the easy way." She then turned directly to Defendant Roger Clary and asked him if he wanted to prosecute for trespassing. Defendant Roger Clary said "yeah," and Defendant Officer Rebecca Hailey said "perfect," and then she proceeded to put Plaintiff in pink handcuffs that resembled a sex toy.

30. Plaintiff did not resist arrest, and excessive force was not used.

31. Defendant Officer Rebecca Hailey did not, at any time, distinguish between property belonging to the library and property belonging to the mall. She did not make Plaintiff aware of any designated area and/or ask Plaintiff to move to or remain in said area. And she certainly did not inform Plaintiff of any adequate, alternative areas in which she could petition or discuss public questions.

32. While Defendant Officer Rebecca Hailey was giving Plaintiff a free ride to the Buchanan

County Jail, she raised her voice, and, with a tone of anger, indicated that petitioning in St. Joseph was becoming "a really big problem." "Are there more of y'all?" Defendant Officer Rebecca Hailey asked the handcuffed Plaintiff, as though the Constitution were a dead letter, and petitioning were an act of civil disobedience. But all of this was not enough for Defendant.

33. Instead of reporting the facts of the incident thus far complained of herein as they transpired, Defendant Officer Rebecca Hailey cooked up her own alternative version of events. Plaintiff's police report, which is attached hereto as Exhibit F, contains at least two counts of material misrepresentation.

(a): Defendant Officer Rebecca Hailey wrote that Plaintiff "immediately became verbally combative with officers and said she didn't have to leave because it was her First Amendment right." While Plaintiff indeed *expressed disagreement* with the Defendant Officer over the library's status as a public forum, she *obeyed* the Defendant Officer's every command. Plaintiff did *not* tell Defendant Officer Rebecca Hailey that she didn't have to leave, nor did Plaintiff think that would have been a good strategy to help her cause. As stated above in paragraph 26, Plaintiff made it clear that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the badge number of Defendant, and said that she would not disobey Defendant's order. Moreover, far from "immediately becom[ing] verbally combative with officers," Plaintiff *obeyed* the orders of the responding officer: she got off of her phone when told to do so by Defendant Officer Rebecca Hailey and she gave Defendant Officer Rebecca Hailey her identification as instructed, without argument and without question.

(b): Defendant Officer Rebecca Hailey also wrote that Zachary Langford—not the then-nameless security guard—was the one who made the complaining call to dispatch, as

well as the one who said that he wanted to prosecute for trespassing. In actuality, the

security guard who refused to tell Plaintiff his name, Defendant Roger Clary, is the one

who called dispatch (a fact evidenced by the call for service report—Exhibit C) as well as

the one who indicated that he wanted to prosecute for trespassing.  For the court's

reference, Plaintiff has also included a snippit of the call for service report below, and has

circled the name of the caller.

### Call Log

| Log Date/Time | Entered By | Action | Description |
|---|---|---|---|
| 01/30/2018 12:10:14 | gnorton | Call Created | New call created. Call Type: ?, Location: , Phone Number: , Name: |
| 01/30/2018 12:10:14 | gnorton | Person Added | Name: |
| 01/30/2018 12:10:20 | gnorton | Location | Location: 3702 FREDERICK AVE, Venue: SJ |
| 01/30/2018 12:10:20 | gnorton | Reset Alarm Level | Fire Alarm Level Reset |
| 01/30/2018 12:10:26 | gnorton | Narrative Added | IN FRONT OF THE LIBRARY |
| 01/30/2018 12:10:30 | gnorton | Narrative Added | SUBJ REFUISNG TO LEAVE MALL LOT |
| 01/30/2018 12:10:45 | gnorton | Narrative Added | WF EARLY 20S |
| 01/30/2018 12:10:49 | gnorton | Call Type | NewCallType: 1402, Status: In Progress, Priority: 2 |
| 01/30/2018 12:11:10 | gnorton | Narrative Added | CALLER IS SECURITY FOR THE MALL |
| 01/30/2018 12:11:25 | gnorton | Narrative Added | LSW BLK COAT WHI TURTLE NECK BLK PANTS AND BLK BOOTS |
| 01/30/2018 12:11:31 | gnorton | Person Updated | Name: CLARY,ROGER, Location: <UNKNOWN> |
| 01/30/2018 12:11:36 | gnorton | Call Updated | Phone Number. (816)248-1889 |
| 01/30/2018 12:11:43 | gnorton | Person Added | Name: EAST HILLS MALL SECURITY,... |
| 01/30/2018 12:11:49 | gnorton | Narrative Added | CALLER IS OUT WITH HER |
| 01/30/2018 12:12:42 | Andrea Rose | Incident Created | Added Incident Number, ORI: MO0110100, Number: 2018-00007401 |
| 01/30/2018 12:12:42 | Andrea Rose | Unit Status Action | Unit 2X5 Dispatched |
| 01/30/2018 12:12:42 | Andrea Rose | Unit Status Action | Unit 207 Dispatched |

Plaintiff has also included snippits from her police report below for the court's reference.

The name of the person who Defendant Officer Rebecca Hailey indicated was the

complainant is circled.

# Case Report

## Summary

| | | | |
|---|---|---|---|
| Print Date/Time: | 02/02/2018 10:56 | | St Joseph Police Department |
| Login ID: | aevans | ORI Number: | MO0110100 |
| Case Number: | 2018-00007401 | | |

### Case

| | | | |
|---|---|---|---|
| Case Number: | 2018-00007401 | Incident Type: | Trespass |
| Location: | 3702 FREDERICK AVE | Occurred From: | 01/30/2018 12:10 |
| | ST JOSEPH, MO 64506 | Occurred Thru: | 01/30/2018 12:28 |
| Reporting Officer ID: | 34265 - Hailey | Disposition: | |
| | | Disposition Date: | |
| | | Reported Date: | 01/30/2018 12:10 Tuesday |

### Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | MO0110100 | 90J | 20-51 (B) | TRESPASS PUBLIC PLACE | 12 |

### Subjects

| Type | No. Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|
| Complainant | 1 LANGFORD, ZACKARY L | 119 S 15TH ST ST JOSEPH, MO 64501 | (785)850-1261 | White | Male | 11/01/1993 24 |
| Other Subject Not Listed | 1 EASTHILLS MALL | 3702 FREDERICK AVE ST JOSEPH, MO 64506 | (816)279-5667 | | | |
| Suspect | 1 ARNOLD, STACY KAYE | 1589 RACCOON RD MAYESVILLE, SC 29104-8995 | (803)428-7024 | White | Female | 06/10/1985 32 |
| Victim | 1 Society | 1605 S BELT HWY ST JOSEPH, MO 64507 | (816)232-1087 | | | |

## OfficerID: Bhailey, Narrative

ON 01-30-2018 AT 1212 HOURS, OFFICER KNEIB AND I, OFFICER HAILEY RESPONDED TO 3702 FREDERICK AVE, IN REFERENCE TO TRESPASSING. CALLER, ZACKARY L. LANGFORD ADVISED A WHITE FEMALE WAS ASKED TO LEAVE THE MALL PROPERTY FOR SOLICITING AND REFUSED TO LEAVE.

OFFICER'S MADE CONTACT WITH STACY KAYE ARNOLD (06-10-1985), WHO IMMEDIATELY BECAME VERBALLY COMBATIVE WITH OFFICER'S. SHE TOLD US IT WAS HER FIRST AMENDMENT RIGHT AND SHE DIDN'T HAVE TO LEAVE BECAUSE IT WAS PUBLIC PLACE.

SECURITY OFFICER ZACKARY L. LANGFORD ADVISED HE WANTED TO PRESS CHARGES FOR TRESPASSING. I PLACED HER UNDER ARREST, SEARCHED HER PERSON, AND TRANSPORTED HER TO BOOKING.

I ISSUED ARNOLD A CITY SUMMONS AND BOOKED HER IN FOR CITY TRESPASS WITH A CASH OR SURETY BOND OF $150.00.

34. Plaintiff was charged with violating the St. Joseph City Code Ordinance 20-51. The ordinance reads as follows: "Trespass. (a) A person commits the offense of trespass if he enters or remains unlawfully upon real property of another. The fact that a person has no intent to enter unlawfully or remain unlawfully is no defense to this section. (b) A person enters unlawfully or

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 11

remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. (c) Trespass is a misdemeanor. (Code 1969, § 16-140(b)(5); Gen. Ord. No. 834, § 1(16-48), 11-13-90) State law reference(s)--Similar provisions, RSMo 569.010(8), 569.150."

35. The "victim" that was listed on Plaintiff's police report was none other than society. While the freedom of speech does not depend upon the popularity of said speech, or the likelihood that said speech will result in social change, if "society" can reasonably be defined to include the electorate of Missouri, 62% of them, like Plaintiff, also believed that working people deserve more, and voted to approve the measure; and, partially because of the petitioning of Plaintiff and others, the government was responsive to the people, and a change that was desired by the people was secured by peaceful means. Yet this same "society" is listed as a victim on Plaintiff's police report, even though Plaintiff was engaging in core political speech in front of a public library, the most profoundly compatible place imaginable with discussing such important public questions.

36.  The East Hills Library was not listed on the police report. The East Hills Mall and the East Hills Library have separate addresses. The address of the East Hills Mall is 3702 Frederick Ave, St. Joseph, MO 64506. The address of the East Hills Library is 502 N Woodbine Rd, St. Joseph, MO 64506.

37. (a) There is a sidewalk that runs parallel to the entrance of the East Hills Library.

Pictures of this sidewalk are attached hereto as Exhibits G, H, I and J. Although it extends far beyond the front library doors, the sidewalk has a beginning and an end. (b) In front of the sidewalk is a single row of parking spaces, in front of the spaces is a vehicular pass-through that cars must utilize to access the library, and on the other side of the vehicular pass-through sits the mall parking lot. (c) A statue of a girl with a dove surrounded by sidewalk now stands in place of what was once five parking spaces in the single row of spaces in front of the library. A copy of what appears to be a blueprint for trading the parking spaces for the installation of a statue and related landscaping is attached hereto as Exhibit K. This document was provided to Plaintiff by Mary Beth Revels, the library director. (d) The sidewalk surrounding the statue is intertwined with and physically indistinguishable from the sidewalk that is parallel to the library. (e) There are four benches, two to the right and two to the left of the statue. (f) Between the statue and the sidewalk are rocks. (g) There was, at the time of Plaintiff's arrest, and on January 2, 2019, a sign in the rocks that read: "Rock Garden/Take a rock for inspiration/Share one for motivation/or/ Leave a rock to help the garden grow!" A picture of this sign is attached hereto as Exhibit L. (h) Messages as well as artwork were displayed on some of the rocks in the garden. (i) There is a plaque in front of the statue that reads: "Girl With Dove/Artist: Tom Corbin/Generously donated to the St. Joseph Public Library by the Bradley Charitable Trust and the William T. Kemper Foundation Commerce Bank, Trustee." A picture of this plaque is attached hereto as Exhibit M. (j) According to Google maps, public bus stops 13 and 19 are located in front of the statue.

38. Although Defendant Roger Clary told Plaintiff that the East Hills Mall owned the entire library grounds, this was misrepresentation, most likely malicious misrepresentation. Upon information and belief: (a) The public library itself owns the property from and including the parallel sidewalk (not to include the parts of the sidewalk to the front, right and left of the statue).

A copy of the final plat of the library knoll is attached hereto as Exhibit N. This copy was given to Plaintiff by Mary Beth Revels.  A copy of the property line for the East Hills Library—502 N Woodbine Ave—obtained from the St. Joseph Department of Public Works and Transportation is attached hereto as Exhibit O.  (b) The East Hills Mall owns the parking spaces. (c) An area where five parking spaces used to be is owed by the mall with an easement granted to the library for the purpose of the installation of a statue and related landscaping. A copy of the easement, obtained via informal request to Mary Beth Revels, is attached hereto as Exhibit P.  (d) Plaintiff was standing in the easement area when she was arrested.

39. The library had a published policy on petitioning and the distribution of literature at the time of Plaintiff's arrest. This policy indicated that petitioning was allowed in undifferentiated "areas designated by staff." It also indicated that petitioners were "not to pursue patrons." Plaintiff obtained a copy of this policy via informal request to Mary Beth Revels; it is attached hereto as Exhibit Q.  Another similar, but more detailed policy adopted on 3/27/18 included specific locations of designated areas as well as a picture of the designated area in front of the East Hills Library. The policy was once again revised/edited on July 8/23/2019. Among the edits are the inclusion of "public assembly" and a shift in the location of the designated area at the East Hills Library. A copy of the library policy on petitioning as of 12/12/2019 is attached hereto as Exhibit R.

40.  Neither Defendant Roger Clary nor Zachary Langford made Plaintiff aware of any distinction in property ownership. Nor did either of them ask Plaintiff to move to a designated area; Defendant Roger Clary claimed that the mall owned everything and told Plaintiff that no one had ever been allowed to petition at the library. To the best of Plaintiff's recollection—and certainly unbeknownst to her at the time—she moved back and forth several times between the

publicly owned sidewalk that served a public purpose and the physically indistinguishable privately owned sidewalk that served a public purpose/easement. Once, as Plaintiff traversed from the public property to the private property/easement, Defendant Roger Clary gave her the following "command": "you just stay right there," he said smugly. In between the arrival of mall security and the police, Plaintiff recalls asking two people/parties to sign her petition. To the best of Plaintiff's recollection, both of these asks were made on library property (on the publicly owned sidewalk), and at least one of them resulted in a citizen signing the petition. As stated in paragraph 24, the only recollection that Plaintiff has of stepping onto the parking lot after the arrival of mall security was to accept the card of Zachary Langford.

41. There could not be a place more profoundly compatible with discussing public questions and petitioning than on the external grounds of a public library. Given former Chief Justice Charles Evans Hughes's observation that it is through free discussion that changes may be obtained through peaceful means, the area around the statue itself is also uniquely and profoundly compatible with discussing public questions: according to the sculptor of the statue, it was originally dedicated to the United Nations as a symbol of peace. Moreover, the interactive rock garden, that seems to invite passersby to contemplate meaning, further rings of profound compatibility with discussing public questions.

42. Case law, in addition to supporting Plaintiff's right to discuss public questions in public places that are compatible with public discourse, also supports Plaintiff's right to evoke First Amendment concerns on both the public property and the private property that is used for public purposes, Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 801 (1985) ("[A] speaker must seek access to public property **or** to private property dedicated to public use to evoke First Amendment concerns" (emphasis added)). While the cases that Plaintiff would

characterize as the closest factual analogues to her situation present only persuasive authority, two courts had specifically considered the question of the public fora status of the external grounds of a public library as of January 30, 2018. One determined that they were public fora, Prigmore v. City of Redding, 211 Cal. App. 4th 1322, 1328 (2012) (holding that "the trial court correctly determined the area outside the Library to be a public forum"), and concluded that "leafletting on the walkways and entrance of the Library must be permitted according to the principle that 'one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion…,'" id. at 1340 (citing Jamison v. Texas, 318 U.S. 413, 416 (1943)). The other determined that they were likely public fora. Deans v. Las Vegas Clark Cnty Library Dist. 220 F. Supp. 3d 1058, 1060 (D. Nev. 2016). Moreover, the case referenced in paragraph 19 above, Groene v. Seng, 2006 WL 5680261 (D. Neb. June 29, 2006), specifically addressed the question of petitioning on the non-perimeter sidewalks of publicly and privately owned government buildings, including libraries, and determined that these sidewalks/walkways were "likely public fora." It is in this context that the City of St. Joseph charged Plaintiff with trespassing.

43. Plaintiff sat in the St. Joseph municipal courtroom on March 6, 2018, a day before her arraignment was scheduled, and watched the judge. She noted a sign in the back of the courtroom that read "you are URGED not to plead guilty if you do not think that you are guilty." Plaintiff hired and paid a criminal defense attorney the morning of March 7, 2018, prior to her arraignment. Plaintiff nevertheless arrived at the municipal court at the time her arraignment was scheduled; she was told that she was still on the docket and was referred to the prosecuting attorney. "You don't have an attorney," the prosecuting attorney said to Plaintiff, in a tone that was menacing and taunting.

44. The trespassing charge against Plaintiff was eventually dismissed; however, this did not occur until July 25, 2018, long after Defendant City of St. Joseph was shown the video of Plaintiff telling Defendant Officer Rebecca Hailey that she would not disobey an order, and five (5) days before Plaintiff was scheduled for trial in the St. Joseph municipal court.

45. All acts alleged herein of the Defendants, and their members, officers, agents, employees or persons acting at their behest or direction, were done under color and pretense of law.

46. Plaintiff paid $350 for a criminal defense attorney to review her case and then $1500 for the defense of the charge. Plaintiff paid a Sunshine request fee in the amount of $42.30 to the St. Joseph Police Department for information related to this incident. Furthermore, she has thus far has incurred courier fees in the amount of $450 related to obtaining information about the incident complained of herein.

47. Plaintiff lost wages for multiple reasons directly attributable to the incident complained of herein. Plaintiff was unable to work on the day following the incident as she was in a state of psychological shock due to the difficulty of reconciling petitioning in front of a public library with getting arrested. Plaintiff also missed work on at least several occasions to perform tasks in St. Joseph directly related to this incident to include: researching the title of the property in question, finding and retaining a criminal defense attorney, watching the judge so that she could make an assessment as to whether or not pleading pursuant to her conscience might land her the maximum penalty (which is six months in jail), and appearing for her arraignment.

48. Plaintiff has since incurred numerous expenses in the furtherance of vindicating her civil rights, including, but not limited to, Plaintiff's Westlaw bill, Plaintiff's PACER bill, Plaintiff's membership to the LA Law Library, Plaintiff's membership to Courtroom 5, Plaintiff's civil lawsuit basics classes and Plaintiff's civil rights class.

49.  Plaintiff, who had never before been arrested, found the experience unsettling, and also experienced damages in that she experienced apprehension, mental distress, inconvenience, anxiety, feelings of unjust treatment, and emotional pain and suffering. In fact, Plaintiff experienced feelings of unjust treatment, apprehension, mental distress, inconvenience, anxiety and emotional pain and suffering for which each and every cause of action herein was a moving force. Plaintiff's discovery of the misrepresentation on her police report as well as the fact that Defendant Roger Clary had misrepresented the property ownership in particularly struck Plaintiff as an abomination of ordered liberty, and Plaintiff was overwhelmed with feelings of anxiety, feelings of unjust treatment, and the uncertainty of justice.

50.  Plaintiff has been injured by the Constitutional violations complained of herein, and Plaintiff is entitled to equitable relief, costs, and damages.

51.  Moreover, Plaintiff has suffered the loss of First Amendment freedoms and irreparable harm. Defendants' policies and actions against Plaintiff and her speech have a chilling effect on the Free Speech rights of Plaintiff and others not before this Court.

52.  Plaintiff would like to return to the external grounds of the East Hills Library to petition for another cause she cares about in the future, both because it is an area wholly and profoundly compatible with petitioning, and also because Plaintiff wishes to lift the chill that Defendants have shadowed before the First Amendment rights of Plaintiff and those not before this court.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**OF THE UNITED STATES CONSTITUTION**
**FREEDOM OF SPEECH - CONSTITUTIONAL QUESTION**
**(against Defendants City of St. Joseph, Defendant Officer Rebecca Hailey in her Official Capacity[2] and St. Joseph Public Library)**

---

[2] Plaintiff has no interest in arguing that the City of St. Joseph and Officer Rebecca Hailey in her official capacity do not function as the same suable entity; they are listed separately here to as accurately as possible describe who did what to whom.

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 18

53.  Plaintiff hereby incorporates by reference all foregoing allegations as if set forth fully herein.

54.  The library policy on petitioning was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable. Specifically, confining human communication to a box on the external grounds of a public library is unnecessary to achieve any cognizable government interest and moreover it places a substantial burden on speech—it elevates perceived public inconvenience above our rights as citizens to speak freely and naturally with other citizens about public questions. Furthermore, the library policy also contained/s a clause—"must not pursue patrons"—that  is impermissibly vague in that it covers over multiple distinctions and affords unbridled discretion to city officials and employees in its interpretation, affording Defendants ample opportunity to enforce the policy in an *ad hoc*, arbitrary and/or discriminatory manner.[3]

55.  A library is a forum for information and ideas.

56. Wherever the title of a public library may rest, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on its exterior grounds.

57.  Moreover, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on a public sidewalk, including **all** of the public sidewalk surrounding the East Hills Library.

58.  Even if the private property in question (which serves the same public purpose as the

---

[3]The policy in effect on January 30, 2018, the date when Plaintiff was arrested, did not specify where the designated areas were located, allowing further unbridled discretion to library staff to enforce the policy in an ad hoc manner. Plaintiff seeks no monetary relief from this because: 1) Defendant St. Joseph Public Library enacted a different/revised policy specifying the locations of the designated areas and 2) while Plaintiff maintains that the policy itself is facially invalid, she greatly appreciated the revision.

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 19

public property and is physically indistinguishable from the same) is not subject to First Amendment protection, the library policy on petitioning as applied to the publicly owned exterior grounds of the East Hills Library was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable.

59. Defendant Officer Rebecca Hailey, in her official capacity, did not inform Plaintiff of any adequate alternative locations from which Plaintiff could petition, chilling and preventing the effective *exercise* of Plaintiff's First Amendment rights.

60. Defendant City of St. Joseph did not—at any stage of its involvement—adhere to the First Amendment requirement to give the benefit of any doubt to protecting rather than stifling Plaintiff's speech.

61. Plaintiff's arrest, charge and prosecution were not passive.

62. Plaintiff would like to return to both the publicly and privately owned external grounds of East Hills Library to petition about causes that she cares about in the future and to lift the chill that Defendants have placed on core political speech.

WHEREFORE, Plaintiff respectfully prays that this court:

A.      Enter a judgment of declaratory and injunctive relief.


**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FIRST AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**FREEDOM OF SPEECH -**
**VIOLATION OF A CLEARLY ESTABLISHED RIGHT**
**(against Defendants St. Joseph Public Library, Roger Clary, Officer Rebecca Hailey—in her personal capacity—and City of St. Joseph)**


63. Plaintiff hereby incorporates by reference all forgoing allegations as if set forth fully

herein.

64. In their enthusiasm to sock it to Plaintiff (re: the Constitutional question at issue in the preceding cause of action), Defendants swept a violation of Plaintiff's clearly established rights under the umbrella of said enthusiasm.

65. The ability of petitioners to "stand outside library buildings on library district property in areas designated by staff" had been clearly established since 3/8/2010 on what was then the published guidelines on petitioning and the distribution of literature. See Exhibit Q. It was also clearly established, on January 30, 2018, that the First Amendment activity is protected in designated areas. Moreover, on January 30, 2018, it was clearly established that the East Hills Mall did *not* own the entire library grounds. See Exhibits N and O.

66. Even assuming, arguendo, that Defendant Roger Clary, who refused to identify himself, was an authorized person within the meaning of the St. Joseph Code Ordinance 20-51, his command that Plaintiff leave the "mall property"/entire undifferentiated library swept within its ambit property titled to the library, including the nominally clearly established "area[] designated by staff."

67. The notion that a lawful command to leave the real property of another can include both *the real property of the party in question + more real property that does not actually belong to the party in question* defies ordered liberty. Defendant Roger Clary's command maliciously misidentified the ownership of the premises in question (the library), and as such it was not a lawful command.

68. The call for service report—Exhibit C—indicating that Plaintiff was "in front of the library," coupled with Defendant Roger Clary's call to the non-emergency line—Exhibit A—in which he states that Plaintiff is "right here in front of the library" and that the "library did call to

complain about it," provides referential support to an already reasonable inference that Defendant Roger Clary, indeed, asked Plaintiff to leave the entire library grounds without differentiating the public and the private property. Moreover, Defendant Roger Clary's other "command"/smug suggestion to Plaintiff that she "just stay right there" when, unbeknownst to Plaintiff, she traversed from the publicly owned sidewalk serving a public purpose to the physically indistinguishable privately owned sidewalk serving a public purpose—if accepted as true—supports a reasonable inference that Defendant Roger Clary's misrepresentation of the ownership of the exterior grounds of the library was malicious.

69. Defendant Officer Rebecca Hailey—and indeed, any reasonable officer responding to the call—should have been aware that the area in question was "the library;" it is described as such on the call for service report (Exhibit C).

70. Either Defendant Officer Rebecca Hailey made no effort to decipher 1) to whom the external grounds of the library were titled and 2) if petitioning was allowed under the First Amendment on the external grounds of the library (in a designated area or otherwise), or, alternatively, already knew the answers to 1) and 2) and willfully discarded this knowledge.

71. Plaintiff was not a danger to anyone; there was no assertion from any party that she was, and, especially given that calls to the non-emergency line had been placed on behalf of both Plaintiff and Defendant Roger Clary outlining a difference of opinion, any reasonable officer would have, at the bare minimum, found out to whom the library grounds were titled as well as if there were a clearly established right to petition there.

72. Defendant Officer Rebecca Hailey denied Plaintiff access to the entire exterior library grounds—the private property, the easement, and the public property, including the clearly established (at least nominally) designated area—for the purpose of petitioning and discussing

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 22

public questions with her fellow citizens living in a democratic society in violation of Plaintiff's constitutionally protected right of free speech. The method by which Defendant Officer Rebecca Hailey denied Plaintiff access was not by asking her to leave, but instead by arresting her.

73. The City of St. Joseph charged Plaintiff with violating ordinance 20-51, and did not drop this charge until five (5) days before Plaintiff was scheduled for trial on July 30, 2018, which had a chilling effect on Plaintiff's speech as well as the speech of others not before this Court.

WHEREFORE, Plaintiff respectfully prays that this court:

A. Grant Plaintiff declaratory and injunctive relief against all Defendants. Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages against Defendants Rebecca Hailey, Roger Clary and City of St. Joseph.

### THIRD CAUSE OF ACTION
### VIOLATION OF DUE PROCESS
### FABRICATION OF EVIDENCE
### (against Defendant Officer Rebecca Hailey - in her individual capacity)

74. Plaintiff hereby incorporates by reference all forgoing and subsequent allegations as if set forth fully herein.

75. At the time in which Defendant Officer Rebecca Hailey willfully, deliberately and maliciously wrote lies on Plaintiff's police report, the right to be free from falsified material evidence was—and still is—implicit in any meaningful conceptualization of ordered liberty.

76. Under no circumstances would any objectively reasonable officer think it lawful to make up evidence.

77. Defendant Officer Rebecca Hailey's material misrepresentation on Plaintiff's police report is conscience-shocking in that it: 1) is consistent with using her badge of authority to protect and serve her own ego as well as the ego of her co-conspirator Defendant Roger Clary,

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 23

instead of protecting and serving the people and 2) corrupts the truth-seeking function of the trial process.

78. The difference between obeying and disobeying an officer of the law is material. See Exhibit E of Plaintiff telling Defendant Officer Rebecca Hailey that is she wanted her to leave that she, Plaintiff, would leave. Compare to Plaintiff's police report—Exhibit F—which reads that "she [Plaintiff] said that she didn't have to leave because it was a public place." The inconsistency between Plaintiff's video and Plaintiff's police report lends referential support to an already reasonable inference supporting Plaintiff's allegation that Defendant Officer Rebecca Hailey's aforementioned statement on Plaintiff's police report was false.

79. The proper identity of the complaining party is also material and a prerequisite for any factfinder to determine any other factual dispute. Specific to the context here, Plaintiff's allegation that Defendant Roger Clary misrepresented the title of the property in question would have to overcome at least two hurdles before it could be presented to a factfinder: 1) It would be Plaintiff's word against Defendant Officer Rebecca Hailey's word that Zachary Langford was indeed not the complaining party, and 2) Plaintiff had no clue as to who the actual complaining party was.[4] The inconsistency between the complaining party listed on the call for service report—Exhibit C—and the complaining party listed on Plaintiff's police report—Exhibit F— lends referential support to an already reasonable inference supporting Plaintiff's allegation that Defendant Officer Rebecca Hailey misidentified the complainant on Plaintiff's police report.

80. Defendant Officer Rebecca Hailey's fabrication of evidence unnecessarily impeded

---

[4] Plaintiff actually found out the identity of Defendant Roger Clary as a by-product of a Sunshine Request that she wrote aiming at obtaining a record of her boss's call to the non-emergency line.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 24

the truth-seeking process, caused Plaintiff an undue burden in working to demonstrate the truth, was a moving force behind Plaintiff's damages (including apprehension, mental distress, inconvenience, anxiety, feelings of unjust treatment, uncertainty, and emotional pain and suffering), and was not fair.

WHEREFORE, Plaintiff respectfully prays that this court:

A.     Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages.

### FOURTH CAUSE OF ACTION
### CONSPIRACY TO DEPRIVE PLAINTIFF
### OF HER CONSTITUTIONAL RIGHTS
### (against Defendants St. Joseph Public Library, Roger Clary and
### Officer Rebecca Hailey - in her individual capacity)

81.  Plaintiff hereby incorporates by reference all forgoing and subsequent allegations as if set forth fully herein.

82.  At the time of the conduct complained of herein, Plaintiff had a clearly established right to be free from conspiratorial conduct to deprive Plaintiff of her Constitutional rights.

**Defendant St. Joseph Public Library and Defendant Roger Clary conspired to deprive Plaintiff of her First Amendment rights.**

83. Upon information and belief, on or around noon on January 30, 2018, a librarian of Defendant St. Joseph Public Library contacted Defendant Roger Clary and complained about Plaintiff's petitioning. The librarian and Defendant Roger Clary then reached an agreement to have Plaintiff ejected from the external library grounds—including the clearly established designated area—in violation of Plaintiff's First Amendment rights.

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 25

84. The joint conspiratorial enterprise referenced in the preceding paragraph involved a meeting of the minds.

85. In the furtherance of this conspiracy, Defendant Roger Clary engaged in the overt acts described in Plaintiff's **Statements of Fact** and **SECOND CAUSE OF ACTION**, which include the following:

    a. "Defendant Roger Clary told Plaintiff that she could not petition at the library." ¶ 17.

    b. Defendant Roger Clary told Plaintiff that "the mall owned the entire library grounds and that no one had ever been allowed to petition there." ¶ 18

    c. "Defendant Roger Clary called the police." ¶ 21. Plaintiff incorporates by reference the content of this call—Exhibit A—as though set forth fully herein.

    d. Defendant Roger Clary indicated that he wanted to prosecute Plaintiff for trespassing. ¶ 29.

86. As a result of Defendant Roger Clary's overt acts, Plaintiff was deprived of her First Amendment rights, experienced irreparable harm, and moreover has incurred expenses and has suffered all the damages set forth previously in her complaint.

**<u>Defendant Roger Clary and Defendant Officer Rebecca Hailey conspired to deprive Plaintiff of her right to due process.</u>**

87. At some point between Plaintiff's arrest and Defendant Officer Rebecca Hailey writing Plaintiff's police report, Defendant Officer Rebecca Hailey and Defendant Roger Clary conspired to conceal the identity of Defendant Roger Clary, the complaining party.

88. The joint conspiratorial enterprise referenced in the preceding paragraph involved a meeting of the minds.

89. In the furtherance of this conspiracy, Defendant Officer Rebecca Hailey engaged in the

overt act of intentionally and maliciously misrepresenting the identity of the complaining party and the party who indicated that he wanted to prosecute for trespassing on Plaintiff's police report.

90. Defendant Officer Rebecca Hailey's over act significantly impeded the due course of justice and injured the Plaintiff, as described in the preceding cause of action.

91. Defendant Roger Clary and Defendant Officer Rebecca Hailey, in conspiring to conceal the identity of Defendant Roger Clary acted willfully, wantonly and maliciously 1) to deprive Plaintiff of her right to due process 2) to chill Plaintiff's speech and 3) to retaliate against Plaintiff for exercising her First Amendment rights.

92. The discrepancy between the complaining party as listed on the call for service report—Exhibit C—and the complaining party listed on Plaintiff's police report—Exhibit F—supports a reasonable inference that the aforementioned meeting of the minds did indeed take place.

93. The video from Plaintiff's cell phone taken on January 30, 2018 of Defendant Roger Clary refusing to tell her his name—Exhibit D—supports a reasonable inference that the aforementioned meeting of the minds was willful, wanton, and malicious.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT - RETALIATION
### (against Defendant Officer Rebecca Hailey - in her individual capacity)

94. Plaintiff hereby incorporates by reference all forgoing allegations as though set forth fully herein.

95. Disagreeing with an officer (as opposed to disobeying), filming an officer in a public place, and requesting an officer's badge number are not crimes, but protected speech/activity.

96. While Plaintiff contends that any reasonable and prudent officer would have found out to whom the property in question—"the library"—was titled before making an arrest for trespassing, regardless of whether or not Defendant Officer Rebecca Hailey had probable cause or arguable probable cause to arrest Plaintiff, Plaintiff's arrest was retaliatory.

97. The exact same circumstances and facts were known to Defendant Officer Rebecca Hailey when she first arrived at the East Hills Library and requested Plaintiff's ID as were known to her when she declared that "We're gonna do this the easy way," and arrested Plaintiff.

98. In between Officer Rebecca Hailey arriving and arresting Plaintiff, the following occurred:

    (a) Defendant Officer Rebecca Hailey requested that Plaintiff get off her phone and Plaintiff got off her phone;

    (b) Defendant Officer Rebecca Hailey asked Plaintiff for her ID, and Plaintiff gave her Plaintiff's ID;

    (c) Defendant Officer Rebecca Hailey asked Plaintiff something to the effect of if she was aware that she could not be at/petition at the library;

    (d) Plaintiff expressed disagreement with Defendant Officer Rebecca Hailey's legal theory regarding the Constitutional question outlined in the first cause of action herein;

    (e) Plaintiff began to record Defendant Officer Rebecca Hailey;

    (f) Plaintiff requested Defendant Officer Rebecca Hailey's badge number and

(g) Plaintiff told Defendant Officer Rebecca Hailey that she would not disobey an order.

99. Defendant Officer Rebecca Hailey arrested Plaintiff after (a) - (g) transpired, as opposed to before they transpired, when the same set of circumstances and facts were known to her. The arrest was in retaliation for (d), (e), and (f)—in retaliation for Plaintiff not cowing to her legal theory, or being bullied into accepting it, in retaliation for Plaintiff recording her, and in retaliation for Plaintiff requesting her badge number (which Defendant Officer Rebecca Hailey never produced).

100. Prior to 97(a) - (f) transpiring, Plaintiff was similarly—indeed identically situated to herself as to after 97(a) - (f) transpired in terms of the facts and circumstances that would be known to any officer at that time. In between the time that Officer Rebecca Hailey arrived and the time that she arrested Plaintiff, Plaintiff was a physical threat to no one, Plaintiff did not ask anyone to sign her petition, and Plaintiff did nothing other than the facts represented in (a) - (g).

101. Defendant Officer Rebecca Hailey's retaliatory arrest of Plaintiff was neither an acceptable use of Defendant Officer Rebecca Hailey's badge of legal authority nor her pink handcuffs.

102. Arrest was not the only form of retaliation. The material misrepresentation on Plaintiff's police report was also retaliatory and a misuse of Defendant Officer Rebecca Hailey's badge of authority.

103. Plaintiff's exercise of her First Amendment rights—to include not cowing to Defendant Officer Rebecca Hailey's legal theory via disagreeing with her (*not* disobeying), recording Defendant Officer Rebecca Hailey, and requesting Defendant Officer Rebecca Hailey's badge

number—was a substantial or motivating factor in Defendant Officer Rebecca Hailey's decision to arrest Plaintiff and subsequently falsify material information on her police report.

104. Retaliatory arrest and false information on a police report which impedes the general course of justice would chill a person of ordinary firmness from exercising their Constitutional rights.

WHEREFORE, Plaintiff respectfully requests that this court:

A.     Grant Plaintiff any and all applicable special, general, compensatory and punitive damages.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court:

A.     Enter judgment declaring that the acts and policies of Defendants as described in this complaint violate the United States Constitution, and may not lawfully be enforced or repeated in the future;

B.     Enter a judgment declaring that petitioning is core political speech that is protected on the exterior grounds of a public library, regardless of title, and that any restrictions must be narrowly tailored;

C.     Enter a judgment declaring that petitioning is core political speech that is protected on interior sidewalks of public buildings used for public purposes, regardless of title, and that any restrictions must be narrowly tailored;

D.     Enter a judgment declaring that the Library policy on petitioning is facially invalid and impermissibly vague;

E.  Issue a permanent injunction enjoining the Defendants, their employees and agents, and all persons acting under their direction, from lawfully repeating the actions complained of herein;

F.  Grant Plaintiff her any reasonable attorney fees incurred and costs pursuant to 42 U.S.C. 1988 and other applicable laws;

G.  Grant Plaintiff any and all applicable special, general and compensatory damages against Defendant Officer Rebecca Hailey, Defendant Roger Clary and Defendant City of St. Joseph;

H.  Against Defendant Officer Rebecca Hailey and Defendant Roger Clary, punitive damages;

I.  Grant any other relief that this Court would deem necessary and proper.

STACY ARNOLD, Plaintiff

 /s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing Amended Complaint was filed electronically with the Clerk of the Court on December 13, 2019, to be served by operation of the Court's electronic filing system upon all attorneys of record, including:

Christopher L. Heigele
Steven F. Coronado
Bay Otto Coronado PC – KCMO
4600 Madison Avenue
Suite 210
Kansas City, MO 64112-3019
cheigele@bayotto.com
scoronado@bayotto.com

Gregory P Goheen
McAnany, Van Cleave & Phillips, PA, - KCKS
10 East Cambridge Circle Drive
Ste. 300
Kansas City, KS 66103
ggoheen@mvplaw.com

Mark C. Beam-Ward
Beam-Ward, Kruse, Wilson & Fletes LLC
8645 College Boulevard
Suite 250
Overland Park, KS 66210
mbeamward@bkwflaw.com

*Attorneys for Defendants*

_/s/ Stacy Arnold_____