4033.46

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STACY ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 19-CV-06137-BP |
| v. | ) ) |
| CITY OF ST. JOSEPH, ET AL., | ) ) |
| Defendants. | ) ) |

## DEFENDANT ST. JOSEPH PUBLIC LIBRARY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**I.  Nature of the Matter.**

Plaintiff alleges that she is a canvasser who was canvassing at, or near, the St. Joseph Public Library (hereinafter "the Library"). She also entered onto private property owned by the East Hills Mall. Mall security intervened and Plaintiff was arrested. The bulk of her First Amended Complaint (ECF No. 19) is directed at actors other than the Library. Plaintiff has alleged that, on its face, the Library's policy on petitioning and distribution of literature violates the First and Fourteenth Amendments of the United States Constitution (ECF No. 19 at pp. 18-22) and that a Library employee engaged in a conspiracy to deprive her of her First Amendment rights (ECF No. 19 at pp. 25-26). Plaintiff's claims regarding the Library's policies should be held to be moot and as an attempt to obtain an advisory opinion. As a result, those claims should be dismissed for a lack of subject matter jurisdiction under Fed.R.Civ.Proc. 12(b)(1). Her conspiracy claim should be dismissed for failure to sufficiently plead facts supporting her allegations. Fed.R.Civ.P. 12(b)(6).

**II.  Statements of Material Facts.**

Because this is a motion to dismiss, the facts are generally limited to those actual, non-

1

conclusory facts set forth in the First Amended Complaint (ECF No. 19).[1]

1. ECF No. 19, ¶ 7: Plaintiff Stacy Arnold frequently works as a canvasser. Canvassing involves talking with people about matters of public concern and often also involves facilitating the collective action of people who share the same values, to the end that those values may be reflected in the society in which we find ourselves. While Plaintiff has worked for many causes she believes in, no cause is closer to her than her belief that people who are working hard and playing by the rules deserve a fair playing field and should not be living in poverty. Plaintiff has experienced economic insecurity herself and has worked in restaurants alongside hard-working people who frequently had to make decisions between paying for rent, healthcare and childcare—decisions that no human being should ever have to make. While Plaintiff was "on-the-clock" when the incident described herein occurred, she chose the position, consistent with her work record over the last six years, because it allowed her a structured and meaningful opportunity to discuss public questions and affect change.

2. ECF No. 19, ¶ 9: Defendant St. Joseph Public Library was and still is a political subdivision of Missouri and a public entity that provides library facilities and library services to the St. Joseph area.

3. ECF No. 19, ¶ 12: On or around noon on January 30, 2018, Plaintiff was circulating a petition in front of the East Hills Library, a library within the St. Joseph Public Library branch.

4. ECF No. 19, ¶ 13: Plaintiff was positioned on the exterior grounds of the East Hills Library, and was circulating a petition registered with the state of Missouri to raise the minimum wage. Plaintiff asked patrons entering and exiting the library if they would like to sign her petition,

---

[1] To the extent necessary to preserve any such defenses, Defendant raises the same herein. These facts are admitted solely for purposes of this motion and should not be deemed admissions for purposes of trial. Wright, Miller & Kane, Fed. Prac. & Proc. § 2722 at 48.

while not positioning herself as to block the ingress or egress of patrons. Plaintiff was petitioning the way that she always does: she would smile and greet people when she saw them, and then would approach them, casually but non-threateningly—as though she were approaching a friend—and tell them about the petition. If anyone indicated that they were not a registered voter, had already signed the petition, did not support the petition, or wanted Plaintiff to go away, Plaintiff smiled at them and told them to have a good day.

5. ECF No. 19, ¶ 15: As foot traffic was fairly limited, Plaintiff did ask some individuals in their cars in the single-row parking lot facing the library. Plaintiff did this by positioning herself about five (5) feet from people in vehicles and smiling, holding up the petition, and making eye contact. If the occupant of a vehicle rolled their window down, Plaintiff would ask him or her to sign her petition. At no time did Plaintiff block or impede vehicular traffic.

6. ECF No. 19, ¶ 17: Shortly after Plaintiff had begun petitioning on January 30, 2018, a mall security vehicle arrived. Two individuals were inside of the vehicle. One individual (later identified via Sunshine request as Defendant Roger Clary) told Plaintiff that she could not petition at the library. Upon information and belief, these individuals arrived per the complaint of a librarian.

7. ECF No. 19, ¶ 18: Neither Defendant Roger Clary nor the individual accompanying him expressed any complaint or concern about the way Plaintiff was petitioning. Neither or them asked Plaintiff to acquiesce to any type of petitioning restriction. Neither of them informed Plaintiff that there was a designated area or asked her to remain in or move to said area. Neither of them asked Plaintiff to stop talking to people in their cars. Neither or them referred Plaintiff to the library director or her designee. Neither of them mentioned any adequate, alternative locations from which Plaintiff could petition. Neither of them differentiated property belonging to the library

and property belonging to the mall. On the contrary, Defendant Roger Clary told Plaintiff that the librarian had called to complain about Plaintiff's petitioning, that the mall owned the entire library grounds and that no one had ever been allowed to petition there.

8. ECF No. 19, ¶ 19: Before the incident complained of herein transpired, Plaintiff had googled, "Can I petition in front of a public library?" and the first result linked her to Groene v. Seng[2] 2006 WL 5680261 (D. Neb. June 29, 2006), which she had read. Like any reasonable person reading that decision, Plaintiff rightfully believed that she had a right to petition in front of the library. She rightfully pointed out to the then-nameless security guard—Defendant Roger Clary—that she had a First Amendment right to petition in front of the library. She told him that if he thought otherwise that he would need to call the police and have them make a determination. She also told him that if the police agreed with him that she would get the badge number of the officer and leave.

9. ECF No. 19, ¶ 35: The "victim" that was listed on Plaintiff's police report was none other than society. While the freedom of speech does not depend upon the popularity of said speech, or the likelihood that said speech will result in social change, if "society" can reasonably be defined to include the electorate of Missouri, 62% of them, like Plaintiff, also believed that working people deserve more, and voted to approve the measure; and, partially because of the petitioning of Plaintiff and others, the government was responsive to the people, and a change that was desired by the people was secured by peaceful means. Yet this same "society" is listed as a victim on Plaintiff's police report, even though Plaintiff was engaging in core political speech in front of a public library, the most profoundly compatible place imaginable with discussing such important public questions.

---

2   As of June 18, 2019, this is still the first result on google for "Can I petition in front of a public library?" https://blog.librarylaw.com/librarylaw/2006/07/can_you_prohibi.html

4

10. ECF No. 19, ¶ 39: The library had a published policy on petitioning and the distribution of literature at the time of Plaintiff's arrest. This policy indicated that petitioning was allowed in undifferentiated "areas designated by staff." It also indicated that petitioners were "not to pursue patrons." Plaintiff obtained a copy of this policy via informal request to Mary Beth Revels; it is attached hereto as Exhibit Q. Another similar, but more detailed policy adopted on 3/27/18 included specific locations of designated areas as well as a picture of the designated area in front of the East Hills Library. The policy was once again revised/edited on July 8/23/2019. Among the edits are the inclusion of "public assembly" and a shift in the location of the designated area at the East Hills Library. A copy of the library policy on petitioning as of 12/12/2019 is attached hereto as Exhibit R.

11. ECF No. 19, ¶ 40: 40. Neither Defendant Roger Clary nor Zachary Langford made Plaintiff aware of any distinction in property ownership. Nor did either of them ask Plaintiff to move to a designated area; Defendant Roger Clary claimed that the mall owned everything and told Plaintiff that no one had ever been allowed to petition at the library. To the best of Plaintiff's recollection—and certainly unbeknownst to her at the time—she moved back and forth several times between the publicly owned sidewalk that served a public purpose and the physically indistinguishable privately owned sidewalk that served a public purpose/easement. Once, as Plaintiff traversed from the public property to the private property/easement, Defendant Roger Clary gave her the following "command": "you just stay right there," he said smugly. In between the arrival of mall security and the police, Plaintiff recalls asking two people/parties to sign her petition. To the best of Plaintiff's recollection, both of these asks were made on library property (on the publicly owned sidewalk), and at least one of them resulted in a citizen signing the petition. As stated in paragraph 24, the only recollection that Plaintiff has of stepping onto the parking lot

5

after the arrival of mall security was to accept the card of Zachary Langford.

12. ECF No. 19, ¶ 52: Plaintiff would like to return to the external grounds of the East Hills Library to petition for another cause she cares about in the future, both because it is an area wholly and profoundly compatible with petitioning, and also because Plaintiff wishes to lift the chill that Defendants have shadowed before the First Amendment rights of Plaintiff and those not before this court.

13. ECF No. 19, ¶ 54: The library policy on petitioning was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable. Specifically, confining human communication to a box on the external grounds of a public library is unnecessary to achieve any cognizable government interest and moreover it places a substantial burden on speech—it elevates perceived public inconvenience above our rights as citizens to speak freely and naturally with other citizens about public questions. Furthermore, the library policy also contained/s a clause—"must not pursue patrons"—that is impermissibly vague in that it covers over multiple distinctions and affords unbridled discretion to city officials and employees in its interpretation, affording Defendants ample opportunity to enforce the policy in an *ad hoc*, arbitrary and/or discriminatory manner.[3]

---

[3] The policy in effect on January 30, 2018, the date when Plaintiff was arrested, did not specify where the designated areas were located, allowing further unbridled discretion to library staff to enforce the policy in an ad hoc manner. Plaintiff seeks no monetary relief from this because: 1) Defendant St. Joseph Public Library enacted a different/revised policy specifying the locations of the designated areas and 2) while Plaintiff maintains that the policy itself is facially invalid, she greatly appreciated the revision.

14. ECF No. 19, ¶ 58: Even if the private property in question (which serves the same public purpose as the public property and is physically indistinguishable from the same) is not subject to First Amendment protection, the library policy on petitioning as applied to the publicly owned exterior grounds of the East Hills Library was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable.

15. ECF No. 19, ¶ 62: Plaintiff would like to return to both the publicly and privately owned external grounds of East Hills Library to petition about causes that she cares about in the future and to lift the chill that Defendants have placed on core political speech.

16. ECF No. 19, ¶ 68: The call for service report—Exhibit C—indicating that Plaintiff was "in front of the library," coupled with Defendant Roger Clary's call to the non-emergency line—Exhibit A—in which he states that Plaintiff is "right here in front of the library" and that the "library did call to complain about it," provides referential support to an already reasonable inference that Defendant Roger Clary, indeed, asked Plaintiff to leave the entire library grounds without differentiating the public and the private property. Moreover, Defendant Roger Clary's other "command"/smug suggestion to Plaintiff that she "just stay right there" when, unbeknownst to Plaintiff, she traversed from the publicly owned sidewalk serving a public purpose to the physically indistinguishable privately owned sidewalk serving a public purpose—if accepted as true—supports a reasonable inference that Defendant Roger Clary's misrepresentation of the ownership of the exterior grounds of the library was malicious.

17. ECF No. 19, ¶ 83: Upon information and belief, on or around noon on January 30, 2018, a librarian of Defendant St. Joseph Public Library contacted Defendant Roger Clary and complained about Plaintiff's petitioning. The librarian and Defendant Roger Clary then reached

an agreement to have Plaintiff ejected from the external library grounds—including the clearly established designated area—in violation of Plaintiff's First Amendment rights.

18. ECF No. 19, ¶ 84: The joint conspiratorial enterprise referenced in the preceding paragraph involved a meeting of the minds.

### III. Questions Presented.

A. Courts do not issue advisory opinions. Here, Plaintiff requests that the Court invalidate: (1) a Library policy that was not applied to her; (2) a Library policy that is no longer in effect; and (3) a Library policy that was effective July 23, 2019, approximately 18 months after the events relevant to this matter. Should the Court dismiss Plaintiff's claims attacking the Library's policies for lack of subject matter jurisdiction?

B. To prevail on a Section 1983 conspiracy claim, Plaintiff must show that two or more individuals conspired for the purpose of depriving her of a constitutional right, and that an action was performed by at least one of the alleged co-conspirators in furtherance of the conspiracy, causing an injury or deprivation. Here, Plaintiff has failed to provide factual support for her conspiracy claim. Should the Court dismiss Plaintiff's claim that the Library conspired to violate her First Amendment rights for failure to state a claim?

C. Under Section 1983, municipalities cannot be held liable on a *respondeat superior* theory. Rather, municipalities can only be held liable if a municipal policy or custom caused the constitutional injury. Here, Plaintiff has failed to allege the Library's policy injured her. Should the Court dismiss Plaintiff's claims against the Library for failure to state a claim?

### IV. Arguments and Authorities.

Plaintiff is *pro se*. Defendant acknowledges *pro se* Complaints are construed liberally to help ensure substantial justice is done. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). But *pro*

*se* plaintiffs must still allege sufficient facts to support their claims. Id. Courts will not supply additional factual allegations or construct a legal theory on a plaintiff's behalf. Id. citing Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir.1981). The court's "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).**A.**

**A.     Plaintiff impermissibly seeks an advisory opinion from this court on issues that are moot and her claims should be dismissed for lack of Subject matter jurisdiction.**

      **1.     Standard of Review.** "[F]ederal courts established pursuant to Article III of the Constitution do not render advisory opinions." Golden v. Zwickler, 394 U.S. 103, 108, 89 S. Ct. 956, 959, 22 L. Ed. 2d 113 (1969). The Declaratory Judgment Act limits the issuance of declaratory judgments to cases involving an "actual controversy." 28 U.S.C. § 2201(a). Cases of actual controversy are the types "justiciable under Article III." Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 687 F.3d 1076, 1081 (8th Cir. 2012) quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). An actual controversy requires a "concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. There is not a bright line test for determining whether an actual controversy exists. But a court should evaluate "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maytag, 687 F.3d at 1081 quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The burden of establishing the existence of an actual controversy rests with the party

seeking a declaratory judgment. Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). Plaintiff has not met that burden.

    **2.**   **Arguments.** Plaintiff does not have an actual controversy with the Library for the following reasons: 1) Plaintiff was never subject to the Library policy in effect on January 30, 2018; 2) The Library policy in effect on January 30, 2018, is no longer in effect; and 3) The current policy was not in effect until July 23, 2019, and has never been applied to Plaintiff.

    ***a.***   ***Plaintiff was Never Subject to the Library Policy in Effect on January 30, 2018.*** The Library's Guidelines for Petitioning and Distribution of Literature on Library District Property (effective March 8, 2010 and in effect on January 30, 2018) (ECF No. 19, Exhibit Q) was never applied to Plaintiff. Plaintiff has admitted she was a professional canvasser. (ECF No. 19, ¶ 7). She also has admitted she researched her ability to petition in front of a public library in advance of her canvassing at the Library. (ECF No. 19, ¶ 19). She failed to allege she reached out to any Library employee regarding her ability to canvas at the Library or that she had any contact with Library employees once she began canvassing. Rather, her only allegations against a Library actor were allegations Defendant Clary told her that a librarian complained to him (ECF No. 19, ¶¶ 17, 18) and that he told police dispatch that a librarian called him to complain. (ECF No. 19, ¶ 68). She has made no allegation the Library policy was applied to her. She has made no allegation the Library's policy played any role in the librarian's actions. She has made no allegation she was aware of the policy in advance or that she sought out the policy in advance to determine where canvassing was permitted. Accordingly, her claim for relief should be denied for a lack of subject matter jurisdiction.

***b.    The Library Policy in Effect on January 30, 2018, is No Longer in Effect.*** Here, the Court must decide whether it will issue an advisory opinion on a policy that is no longer in effect. As noted above, a Plaintiff has to seek more than "an opinion advising what the law would be upon a hypothetical state of facts." Maytag, at 1081. Additionally, in at least one instance, a court has found when a policy has been repealed, a facial challenge remedies nothing and is therefore moot. Turning Point USA at Arkansas State Univ. v. Rhodes, No. 3:17CV00327 JLH, 2019 WL 3917529, at *3 (E.D. Ark. Aug. 19, 2019) (appeal filed on September 18, 2019) citing Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 687 (8th Cir. 2012). In another case, a court dismissed a case as moot where the underlying Agreement in dispute expired before the court could render a decision. Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 781 (6th Cir. 2007). There, the court explained that granting the requested relief would have no impact on the party's current legal interests nor had the party made any factual allegation that they may be subjected to a similar agreement in the future. Id. Similarly, in W. Power Trading Forum v. F.E.R.C., 245 F.3d 798, 801 (D.C. Cir. 2001), the court found review of an order directing termination of a Power Exchange moot because the Power Exchange was in the process of winding down and going out of business and only 20 days remained between the date of the court's decision and the completion of the winding-down process.

Here, the policy in question is no longer in effect. And according to Plaintiff's allegations, the policy has not been in effect since March 27, 2018. (ECF No. 19, ¶ 39). Plaintiff has asked that this Court issue an advisory opinion on the constitutionality of a policy that is no longer effective. Her claim is moot. Given the strong policy against issue advisory opinions, Plaintiff's request should be denied for lack of subject matter jurisdiction.

***c.    No Actual Controversy Exists Between the Parties Regarding the***

***July 23, 2019, Library Policy Because It Was Not in Effect on the Date Relevant to This Matter and Plaintiff Has Not Demonstrated She Needs This Court's Intervention.*** Plaintiff has lodged a facial attack against the July 23, 2019, Library policy. This attack must fail. First, the policy has never been applied to Plaintiff and the policy was not in effect on the date relevant to this matter. Second, she cannot demonstrate she needs judicial protection from the policy. For example, in Camreta v. Greene, 563 U.S. 692, 710, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011), a dispute arose from the interview of a then 9-year-old girl by State actors—an interview that was eventually held to be a violation of the Fourth Amendment. The State actors appealed. By the time the case reached the United States Supreme Court, the girl was only months away from her 18th birthday and had relocated out of state. There, the Court found the plaintiff was "no longer in need of any protection from the challenged practice." *Id.* at 2033.

Similarly, here Plaintiff resides in North Carolina. (ECF No. 19, p. 31). She states in her First Amended Complaint that she was canvassing at the Library regarding a petition to raise Missouri's minimum wage. (ECF No. 19, ¶ 13). The cause for which she was petitioning passed. (ECF No. 19, ¶ 35). And while Plaintiff claims she would like to return to the library to petition, she doesn't provide any substantive facts supporting that claim. (ECF No. 19, ¶ 52). Nor does she make any substantive allegations as to why the Library's current policy is preventing her from engaging in any First Amendment activities at the Library. She is welcome at the Library.

**B.     Plaintiff has failed to provide factual support for her Section 1983 conspiracy claim and her claims should be dismissed for failure to state a claim for which relief can be granted.**

    **1.     Standard of Review.** To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff "is entitled to relief," under Fed. R. Civ. P. 8(a)(2),

by alleging "'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plausible claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." Id., citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id., quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 (citation omitted). Instead, the facts alleged "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

  **2. Arguments.** To bring a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which, if true, would demonstrate defendants violated her federal constitutional rights while acting under color of law. West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, to prevail on a Section 1983 conspiracy claim, Plaintiff must show that two or more individuals conspired for the purpose of depriving her of a constitutional right, and that an action was performed by at least one of the alleged co-conspirators in furtherance of the conspiracy, causing an injury or deprivation. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir.1999). Conspiracy allegations "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Manis v. Sterling, 862 F.2d 679, 681 (8th Cir.1988) (citation omitted).

  Plaintiff has failed to allege facts that support her claim that the Library conspired with Defendant Clary to deprive her of her First Amendment rights. Instead, she has made speculative

13

allegations in direct contrast to the Twombly standard. Facts she has alleged that support her claim include: 1. She believes the librarian complained to and summoned Defendant Clary (ECF No. 19, ¶ 17); 2. She alleges Defendant Clary told her the librarian called to complain about her petitioning (ECF No. 19, ¶ 18); 3. Defendant Clary told police dispatch that a librarian called him to complain. (ECF No. 19, ¶ 68); 4. She believes the librarian and Defendant Clary reached some agreement regarding her ejections from the library grounds while on the telephone (ECF No. 19, ¶ 83); and 5. She concludes there was a "meeting of the minds." (ECF No. 19, ¶ 84). The only facts she has alleged that are not based on speculation is that Defendant Clary made a statement to her and that he made a statement to police dispatch. All other "facts" are speculation. There are no alleged facts that the librarian did anything but call Defendant Clary about a potential trespasser. And Plaintiff admits that to the best of her recollection she moved back and forth several times between mall property and Library property. (ECF No. 19, ¶ 40). Meaning, she has alleged facts that demonstrate the librarian's call was justified. Additionally, there are no allegations the librarian asked Defendant Clary to remove or silence Plaintiff. There are no allegations the librarian asked Defendant Clary to take any actions towards Plaintiff. And other than her conclusory allegation that there was a "meeting of the minds" there's no allegation the librarian did anything more than alert Defendant Clary to Plaintiff's presence. Plaintiff has not met her burden and her First Amended Complaint should be dismissed for failure to state a claim.

**C. Missouri Libraries are Municipalities and Therefore Cannot be Held Liable for Plaintiff's Claims.**

    **1.**    **Standard of Review.** Please see Section B, above for the applicable standard of review.

    **2.**    **Arguments.** A municipality may be liable under Section 1983, "but it

cannot be held liable on a respondeat superior theory." Hunter v. City of Salem, Mo., No. 4:12CV00004 ERW, 2012 WL 1205137, at *3 (E.D. Mo. Apr. 11, 2012) citing Monell v. Dep't of Soc. Servs. of New York City, 436 U.S. 658, 690–91 (1978). Meaning, a municipality "cannot be held liable unless a municipal policy or custom caused the constitutional injury." Hunter, quoting Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993); see also Mettler v. Whitledge, 165 F.3d 1197 (8th Cir.1999). For a municipal policy to cause "the constitutional injury, it must be 'the moving force of the constitutional violation.'" Hunter, quoting Monell, 436 U.S. at 694.

Here, the library should be considered a municipality under Missouri law. R.S.Mo. § 70.210 relates to the powers of political subdivisions to cooperate and contact. It defines a library as a political subdivision, which is included in its definition of municipality. Id. Additionally, Missouri libraries are entitled to participate in the same public entity risk management fund as cities, counties, and other municipal corporations. R.S.Mo. §537.700. Black's Law Dictionary also defines municipality as "A city, town, or other local political entity with the powers of self-government." Black's Law Dictionary, 11th Edition, 2019. Defendant has powers of self-government under Missouri law. See generally, R.S.Mo. § 182.010, *et seq*.

Therefore, Plaintiff, in order to bring a claim against the Library, needs to allege it was the Library's policies that caused her constitutional injury. She has not done so. Instead, she simply argues both the policy in place at the time of the incident and the policy in place now are unconstitutional. She makes no allegations the policies were applied to her. She made no allegation the Library's policy played any role in the librarian's actions. There is no evidence she was aware of the policy in advance or that she sought out the policy in advance to determine where canvassing was permitted. Because the policies were not applied to her and it was not the cause of her injury,

15

she has no standing to argue the policy injured her.

## V.     Conclusion.

Defendant Library respectfully requests that this Court dismiss Plaintiff's claims against it for a lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and that Defendant be granted costs, including reasonable attorneys' fees, incurred in defending against the claims asserted against it by Plaintiff in this action

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, 300
Kansas City, Kansas 66103
Telephone:   (913) 371-3838
Facsimile:     (913) 371-4722
E-mail:ggoheen@mvplaw.com


By: /s/ Gregory P. Goheen
       Gregory P. Goheen          #58119

Attorneys for Defendant St. Joseph Public Library

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th of December, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent a copy via U.S. mail, postage prepaid to the following:

Stacy Arnold
500 Westover Drive #11589
Sanford, NC 27330
Plaintiff, *pro se*

Mark Beam-Ward
Beam-Ward, Kruse, Wilson & Fletes, LLC
8645 College Boulevard, Suite 250
Overland Park, KS 66210
Attorneys for Defendant Roger Clary

Christopher L. Heigele
Steven F. Coronado
Baty Otto Coronado, PC
4600 Madison Avenue, Suite 210
Kansas City, MO 64112
Attorneys for Defendants City of St. Joseph and Rebecca Hailey

/s/ Gregory P. Goheen