IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| STACY ARNOLD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19-06137-CV-SJ-BP |
| CITY OF ST. JOSEPH, ST. JOSEPH PUBLIC LIBRARY, OFFICER REBECCA HAILEY (IN HER PERSONAL AND PROFESSIONAL CAPACITY) AND ROGER CLARY | ) |
| Defendants | ) |

**PLAINTIFF'S SUGGESTONS IN OPPOSITION TO THE LIBRARY'S MOTION TO DISMISS PARTY**

**INTRODUCTION**

Defendant St. Joseph Public Library argues that Plaintiff lacks standing to challenge the Library policy. To support its argument, the Library alleges that 1) the Library policy in effect on January 30, 2018 is no longer in effect, 2) the current policy was not in effect on January 30, 2018, 3) that the cause for which Plaintiff was petitioning passed, 4) that Plaintiff does not provide substantive facts supporting her claim that she would like to return to the Library, 5) that Plaintiff resides in North Carolina,  6) that Plaintiff did not allege that she reached out to any Library employee regarding her ability to canvass at the Library, and finally 7) that the Library policy was never applied to Plaintiff. As the controversy between Plaintiff and the Library is

1

ongoing, real and unnegated by the above allegations, this memorandum will address each of the Library's contentions that Plaintiff does not have standing.

**ARGUMENT**

   **I.    THE CHALLEGED ELEMENTS OF THE LIBRARY POLICY ARE COMMON TO BOTH THE POLICY THAT WAS IN EFFECT ON 1/30/2018 AND THE CURRENT POLICY**

Plaintiff agrees with the Library's contentions that the Library policy, as written (although perhaps not as applied) in effect on January 30, 2018 is no longer in effect and that the current policy was not in effect on January 30, 2018. Citing Turning Point USA at Arkansas State Univ. v. Rhodes, 409 F. Supp. 3d 677 (E.D. Ark. 2019), the Library attempts to use the repeal of the old policy to render Plaintiff's claims moot. Turning Point, like Plaintiff's case, also involved a challenge to a designated area. Unlike Plaintiff's case, however, the policy restricting First Amendment activity in Turning Point was repealed due to a state law prohibiting "state-supported universities from limiting expressive activities to only designated areas," and was not subsequently replaced with another policy reinstating a designated area. *Id.* at 684. The facts in Turning Point are inapposite to Plaintiff's situation.  To begin, after the Library policy in question was repealed, a new policy was enacted which maintained the questioned elements of the old policy (the designated area and the "pursue patrons" language).  Moreover, since January 30, 2018, the state of Missouri has enacted no law prohibiting the limitation of expressive activities to designated areas on the exterior grounds of public libraries or public buildings in general.   The controversy between Plaintiff and the Library has not been resolved by the semantic revision of the Library's policy: it is live, and Plaintiff has a legally cognizable interest in the outcome.

In Count I of Plaintiff's *First Amended Complaint,* she alleges that the library policy is/was facially invalid and impermissibly vague. Count I of Plaintiff's *First Amended Complaint* seeks not declaratory and injunctive relief against the outdated policy as such, but rather seeks declaratory and injunctive relief against common elements of both policies—elements of the old policy that were specified by Plaintiff, are still in effect today, and continue to burden the First Amendment activities of Plaintiff and others—the designated area and the "pursue patrons" language:

> The library policy on petitioning was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable. Specifically, confining human communication to a box on the external grounds of a public library is unnecessary to achieve any cognizable government interest and moreover it places a substantial burden on speech—it elevates perceived public inconvenience above our rights as citizens to speak freely and naturally with other citizens about public questions. Furthermore, the library policy also contained/s a clause—"must not pursue patrons"—that is impermissibly vague in that it covers over multiple distinctions and affords unbridled discretion to city officials and employees in its interpretation, affording Defendants ample opportunity to enforce the policy in an *ad hoc*, arbitrary and/or discriminatory manner. (ECF No. 19 ¶ 54).

Neither the confining of speech to a designated area nor the "pursue patrons" language was washed away with subsequent revisions of the library policy—they were in effect on 1/30/2018, remain in effect as of 1/29/2020, and are applicable to Plaintiff and anyone else who may wish to petition in front of the library. For comparison:

> Petitioners may stand outside library buildings on Library District property in **areas designated by staff**, away from entrances, but **must not** impede traffic, or **pursue patrons**. (ECF 19, Exhibit Q) (OLD POLICY, emphasis added)

> [T]hose engaged in Assembly and/or Petitioning, shall be required to stand outside library buildings on SJPL property in **areas designated by staff**, away from entrances, and **must not** impede traffic or **pursue patrons**. (ECF 19, Exhibit R) (CURRENT POLICY, emphasis added)

3

## II. PLAINTIFF PETITIONS FOR MULTIPLE CAUSES AND MOREOVER IT IS WELL ESTABLISHED THAT ELECTION WORK IS EXCEPTED FROM THE MOOTNESS DOCTRINE IN THAT IS IT CAPABLE OF REPETITION YET EVADING REVIEW

While Plaintiff feels very strongly about raising the minimum wage, it is certainly not the only cause that she believes in, nor is it the only cause she has campaigned or worked on behalf of. Plaintiff has worked on behalf of paid sick days for workers, electing Obama, regulating fracking, and ending sexual violence, among other issues. Elections always run their course, and the facts surrounding them are repeated with various levels of specificity, although they are never repeated with a sufficient level of specificity to preclude distinctions.

That stated, any such distinctions that may be drawn by no means doom a cause of action arising in an election dispute into mootness: the Supreme Court has "recognized that the 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." Federal Election Comm'n. v. Wisconsin Right to Life, Inc., 551 U.S. 449, 463 (2007) (internal citations omitted). "Controversies that arise in election campaigns are unquestionably among those saved from mootness under the exception for matters 'capable of repetition, yet evading review.'" Branch v. FCC, 824 F.2d 37, 41 n. 2 (D.C. Cir. 1987) (internal citations omitted). This exception is applied by federal courts in election related challenges. See Davis v. Federal Election Comm'n., 554 U.S. 724, 735-6; Federal Election Comm'n. v. Wisconsin Right to Life, Inc., 551 U.S. 449, 463 (2007); Norman v. Reed, 502 U.S. 279, 287–88 (1992); Meyer v. Grant, 486 U.S. 414, 417 n. 2 (1988); First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978); Cal. Pro–Life Council v. Getman, 328 F.3d 1088, 1095 n. 4 (9th Cir. 2003); Majors v. Abell, 317 F.3d 719, 722 (7th Cir. 2003); Fla. Right to Life, Inc. v. Lamar, 273 F.3d 1318, 1324

n. 6 (11th Cir. 2001); Stewart v. Taylor, 104 F.3d 965, 969–71 (7th Cir. 1997); N.H. Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 18 (1st Cir. 1996); Kansans for Life, Inc. v. Gaede, 38 F.Supp.2d 928, 932 (D. Kan. 1999). In this particular case, "Plaintiff would like to return to the external grounds of the East Hills Library to petition for another cause she cares about in the future, both because it is an area wholly and profoundly compatible with petitioning, and also because Plaintiff wishes to lift the chill that Defendants have shadowed before the First Amendment rights of Plaintiff and those not before this court." (ECF 19 ¶ 52). Plaintiff wanted to petition on the external grounds of the library before and wants to return to the external ground of the library to petition in the future. The fact that this controversy involves an election necessarily precludes replication of one particular to the controversy: the cause (i.e. there will not be another petition raising the minimum wage to the level in which it was raised in 2018, because that initiative has already passed). But requiring this level of replication would "effectively overrule this statement [that the capable of repetition yet evading review doctrine is appropriate in the context of elections] by making this exception unavailable for virtually all…challenges." Federal Election Comm'n. v. Wisconsin Right to Life, Inc., 551 U.S. 449, 463 (2007). Even if Plaintiff were an all-star attorney, instead of a pro se litigant who by necessity spent an inordinate amount of time searching for resources and mulling over "forum analysis" prior to filing with this Court, it is still highly unlikely, if not strictly impossible, that this matter could have been fully litigated between the time of Plaintiff's arrest and the time that the initiative qualified for the ballot. Moreover, given the current library policy, it is likely that Plaintiff will be subject to the same threat of criminal prosecution should she return to the external grounds of the East Hills Library to petition and not confine herself to the designated area. Although the cause Plaintiff will petition for will be different, Plaintiff's desire to effect

5

change via petitioning (to include actively approaching people) will be the *same as before*, as will the threat of criminal prosecution. Thus, Plaintiff has satisfied both elements of the "capable of repetition, yet evading review" doctrine: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer. v. Kemra, 523 U.S. 1, 17 (1998).

### III. PLAINTIFF DOES NOT RESIDE IN NORTH CAROLINA, AND, EVEN IF SHE DID, THIS IN AND OF ITSELF WOULD NOT PRECLUDE STANDING IN PLAINTIFF'S CIRCUMSTANCES

Plaintiff never alleged that she resides in North Carolina. The North Carolina address listed in Plaintiff's signature on her pleadings and motions is a mailing address; just as represented litigants do not reside at the address of their attorneys' offices, and attorneys do not reside at their office addresses, Plaintiff does not reside at her mailing address. Plaintiff travels frequently for work, and when she is not traveling for work, she can most often be found hiking and camping on public lands. As Plaintiff wanted to make 100% sure that she received **all** correspondence from the Court and Defendants, regardless of whether or not they were also sent electronically, and regardless of where she is located, she enlisted the aid of Traveling Mailbox LLC https://travelingmailbox.com, which allows Plaintiff the ability to read her snail mail over the internet as a PDF. With this online service, Plaintiff can rest assured that she will have timely access to her snail mail, even if she needs to move multiple times with short notice.

As it turns out, during the duration of time since Plaintiff filed the Complaint, she has been located in five different places. While the distance of most of these places is likely farther than the distance between North Carolina and the East Hills Library, in Plaintiff's situation, the distance in and of itself does not preclude her having standing. First, Plaintiff likes KC, the

6

people, the environment and the culture. Second, while Plaintiff does not currently have an apartment lease or own property in any location, the only storage unit that she has is currently located in Kansas City, MO. Extra Space Storage. 9435 Holmes Rd. Kansas City, MO 64131. Third, Plaintiff has had three separate work assignments around the Kansas City area. Plaintiff worked in KC in Winter 2015, Winter 2016, and again in Winter 2018, when the incident in the Complaint occurred. Given this record, it is likely that sometime in the future, Plaintiff will have another work assignment in KC. Fourth, Plaintiff has returned to the area three times after the incident: once in January of 2019 to take pictures of the Library, again in June of 2019, for several weeks (here Plaintiff spent some time observing the Court and lots of time using PACER in the clerk's office – it is likely that the clerks will remember Plaintiff), and once again on 01/21/2020. Plaintiff returned to KC on January 01/21/2020 because when Plaintiff alleged in the complaint that she wanted to return to the Library in order to lift the chill that Defendants have shadowed before the First Amendment rights of Plaintiff and those not before this court, Plaintiff was absolutely sincere. Moreover, Plaintiff does not want to live in a world where people do not have access to the healthcare they need, and also feels strongly about facilitating the collective action of people who share the same values, to the end that those values may be reflected in the society in which we find ourselves. To that end, Plaintiff is volunteering to circulate the Medicaid expansion petition, and she would like to circulate this petition in a place that she feels is profoundly compatible with discussing public questions—in front of the East Hills Library.

## IV. THE LIBRARY'S ARGUMENT THAT THE LIBRARY POLICY WAS NEVER APPLIED TO PLAINTIFF IS DIFFICULT TO FOLLOW, BUT, REGARDLESS OF WHETHER OR NOT THIS COURT FINDS THAT THE POLICY WAS APPLIED TO PLAINTIFF AND THE SIGNIFICANCE THAT IT ATTACHES TO THIS FINDING, PLAINTIFF STILL HAS STANDING

From the Library's argument in its suggestions supporting dismissal (ECF No. 22), it is a little unclear to Plaintiff how the library is alleging that one would be subject to the library policy in question or any other policy. While the Library did not directly allege that *if* 1) Plaintiff was aware of the policy in advance, 2) had sought out the policy in advance, 3) had reached out to a library employee regarding her "ability to canvass at the library," and 4) that the library policy played a role in the librarians actions *then* the policy would have been applied to Plaintiff, this is the interpretive inference that Plaintiff has drawn from the Library's suggestions in support of its dismissal motion. Moreover, the interpretive inference that Plaintiff has drawn from the Library's suggestions in support of dismissal is that it is alleging that in order for Plaintiff to have standing because she was "subject to the library policy," she would have needed to allege 1-4 in the Complaint. The Library's discussion regarding the application of the Library policy to Plaintiff can be found on ECF No. 22, p. 10, 15.

The Library asks too much. Nowhere in the old Library policy or the current Library policy on petitioning is there any language to indicate that citizens are only subject to the policy if they seek out the policy in advance, are aware of the policy in advance, or reach out to the Library regarding their "ability to petition" at the Library in advance. Moreover, in general, being aware of a policy in advance and/or seeking out a policy in advance is not a prerequisite for being subject to a policy. For example, the St. Joseph Public Library Behavior Policy indicates that examples of inappropriate behavior include hitting, fighting, not wearing shoes or a

shirt, and bringing bedrolls or other large pieces of luggage into the library. There is no indication that these policies would only apply to individuals who were aware of the policies in advance, sought out the policies in advance, or asked a staff member in advance about their ability to hit, fight, etc. in the library: no reasonable person of ordinary intelligence would assume such an interpretation of the behavior policy and moreover such an interpretation of the behavior policy would effectively render it inapplicable to all except those who asked permission to hit, fight, bring bedrolls into the library, etc before engaging in such an act. Such an interpretation of the applicability of a library policy makes no more sense in Plaintiff's case than it does in the previous examples.

Indeed, for the purposes of standing, it is enough to say that Plaintiff wanted/wants to petition in front of the Library, and that she wanted/wants to do so while actively approaching people, walking with people, and not being confined to a box; that Plaintiff attempted to do the same on January 1/30/2018; that the same was/is contradictory to the Library policy; and that Plaintiff's arrest and the Library policy itself[1] (taken wholly and separately) are enough to chill a reasonable person of ordinary resolve from exercising their First Amendment rights[2]. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

Moreover, Plaintiff has also lodged an as-applied challenge on the City of St. Joseph's trespassing ordinance, alleging that the ordinance is unconstitutional as applied to petitioning on the external ground of a public library and a sidewalk, including all of the sidewalk in front of the east Hills Library. While the Library policy *acknowledges* a clearly established right to

---

[1] That, indeed, Plaintiff did not learn of until *after* her arrest.
[2] Rights which Plaintiff contends include the ability to actively approach people, walk with people, and not be subject to a box.

9

Case 5:19-cv-06137-BP   Document 38   Filed 01/29/20   Page 9 of 11

petition in the designated area, it by no means negates the larger constitutional question at issue in Count I of Plaintiff's *First Amended Complaint* that concerns Plaintiff's ability to peacefully petition on the external grounds of a public library and the sidewalk in question. The controversy as described in Count I of Plaintiff's complaint is against both the Library and the City and the content surrounding the controversy relates to both parties.

## **REQUEST FOR LEAVE TO AMEND IF APPLICABLE**

Should the Court determine that standing is precluded because of any factual statement that is asserted in this memorandum, yet left out of Plaintiff's *First Amended Complaint*, Plaintiff respectfully requests leave to amend.

## **CONCLUSION**

In many ways, Plaintiff identifies with the Library, its efforts, vision and values. "We are always learning. We are constantly exploring new ways of doing things better and doing better things." https://sjpl.lib.mo.us/mission-vision-and-values/. But Plaintiff respectfully (and strongly) disagrees with the restrictions in question in the Library policies on petitioning at issue. To Plaintiff, these restrictions are not a good way of doing things or a good thing to do, and that is why the First Amendment to the Constitution forbids them. While formalism can be used to argue that there is no case or controversy here just as it can be deployed to deprive a petitioner of her rights, the *substance* of this controversy lies not in the fiction section; it is real and ongoing. I respectfully request the opportunity to be heard on the merits.

Respectfully Submitted,

STACY ARNOLD, Plaintiff

/s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on January 29, 2020, to be served by operation of the Court's electronic filing system upon:

Christopher L. Heigele
Steven F. Coronado
Bay Otto Coronado PC – KCMO
4600 Madison Avenue
Suite 210
Kansas City, MO 64112-3019
cheigele@batyotto.com
scoronado@batyotto.com
*Attorneys for Defendants*
*City of St. Joseph, Missouri,*
*Officer Rebecca Hailey*

Mark C. Beam-Ward
Beam-Ward, Kruse, Wilson & Fletes LLC
8645 College Boulevard
Suite 250
Overland Park, KS 66210
mbeamward@bkwflaw.com
*Attorneys for Defendant*
*Roger Clary*

Gregory P Goheen
McAnany, Van Cleave & Phillips, PA-KCKS
10 East Cambridge Circle Drive
Ste. 300
Kansas City, KS 66103
ggoheen@mvplaw.com
*Attorneys for Defendant*
*St. Joseph Public Library*

    _/s/ Stacy Arnold_____