**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| STACY ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:19-CV-06137-BP |
| CITY OF ST. JOSEPH, ST. JOSEPH | ) | |
| PUBLIC LIBRARY, OFFICER REBECCA | ) | |
| HAILEY in her personal and professional | ) | |
| capacity and, ROGER CLARY, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>SUGGESTIONS IN SUPPORT OF DEFENDANT ROGER CLARY'S MOTION FOR SUMMARY JUDGMENT.</u>

COMES NOW, Defendant Roger Clary ("Mr. Clary"), by and through his attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submit these Suggestions in Support of his Motion for Summary Judgment on Plaintiff's claim of conspiracy between Mr. Clary and the City of St. Joseph Public Library (hereinafter the "Library") as alleged in Count IV of Plaintiff's *First Amended Complaint*. (Doc. # 43)

1

## <u>TABLE OF CONTENTS</u>

STATEMENT OF UNCONTROVERTED MATERIAL FACTS……………………………….4

ARGUMENTS AND AUTHORITIES………………………………………………………...7

    a.  Standard of Review…………………………………………………………………..7

    b.  There is no evidence that Mr. Clary and the Library reached a meeting of the minds as required to form a conspiracy…………………………………………………..8

    c.  Assuming *arguendo* that a meeting of the minds occurred between Mr. Clary and the Library, there is no evidence that it was directed toward an unconstitutional action……………………………………………………………………………...10

CONCLUSION………………………………………………………………………….14

## <u>TABLE OF AUTHORITIES</u>

*Williams v. City of St. Louis*
783 F.2d 114, 115 (8th Cir. 1986)……………………………………………………………7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 586-90 (1986)…………………………………………………………………..7

*Nelson v. City of McGhee*
876 F.2d 56, 57 (8th Cir. 1989)……………………………………………………………..7

*Torgerson v. City of Rochester*
643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)……………………………………………..7

*White v. McKinley*
519 F.3d 806, 814 (8th Cir. 2008)…………………………………………………………..8

*Reasonover v. St. Louis Cnty., Mo.*
447 F.3d 569, 582 (8th Cir. 2006)………………………………………………………....8-9

*Stewart v. Speiser*
No. 16-6117-CV-SJ-BP, 2018 WL 614968, at *7 (W.D.Mo. Jan. 29, 2018)……………………8

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 152 (1970)……………………………………………………………………8

*Mershon v. Beasley*
994 F.2d 449, 452 (8th Cir. 1993)………………………………………………………...8-10

*Kelly v. City of Omaha*
813 F.3d 1070, 1078 (8th Cir. 2016)………………………………………………………10

*Smith v. Bacon*
 699 F.2d 434, 436 (8th Cir. 1983)………………………………………………………10

*Riverside–Quindaro Bend Levee Dist. v. Missouri American Water Co.*
117 S.W.3d 140, 149 (Mo.App. W.D.2003)……………………………………………11

*Cottrell v. Am. Family Mutual Ins. Co., S.I.,*
930 F.3d 969, 972 (8th Cir. 2019)………………………………………………………11-12

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Mr. Clary submits the following statement of uncontroverted material facts (hereinafter, "S.O.F.") in support of his Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.

1. Plaintiff Stacy Arnold frequently works as a canvasser and facilitates collective action regarding matters of public concern. (*Pl.'s First Am. Compl.*, Doc. #19, at ⁋ 7, attached as **Exhibit A**.)

2. Mr. Clary is an individual who provides security services for his employer, East Hills Mall. (*Id*. at ⁋ 11.)

3. The East Hills Mall maintains a Code of Conduct that prohibits any form of soliciting without prior written permission of mall management. (East Hills Mall Code of Conduct, Bates No. Clary003, attached as **Exhibit B**; *Def. Roger Clary's Answers to Pl. Stacy Arnold's First Interrog. To Def. Clary*, pp.1 at Interrog. #1, attached as **Exhibit I**.)

4. On January 30, 2018, the Library had established guidelines for petitioning on Library District Property that permitted petitioners to stand outside library buildings on Library District property in areas designated by staff but prohibited petitioners from pursuing patrons. (Guidelines for Petitioning and Distribution of Literature on Library District Property, Bates No. SJPL000003, attached as **Exhibit C**; *see also* Ex. Q to *Pl.'s First Am. Compl*, Doc. #19.)

5. On January 30, 2018, a valid License Agreement[1] existed between the property owner of the East Hills Mall (Dillard's, Inc.) and the Library that granted the Library a license to install a bronze statute and related landscaping on five parking spaces on a portion of the property

---

[1] As provided by the Plaintiff, the Agreement was received through a request submitted to Mary Beth Revels, a Director of the St. Joseph Public Library. (*See* **Ex. A**, pp. 14 at ⁋ 38; see also **Ex. E** (email thread identifying Mary Beth Revels as a Director of the St. Joseph Public Library)).

owned by the owner of the East Hills Mall. (Ex. P to *Pl.'s First Am. Compl*., Doc. #19, attached as **Exhibit D**.)

6.     The License Agreement did not transfer any property interest to the Library. (*Id*. at pp. 2.)

7.     Around 12:00 p.m. on January 30, 2018, Plaintiff was circulating a petition registered with the state of Missouri to raise the minimum wage. (**Ex. A** at ⁋ 12.)

8.     Plaintiff acknowledges that she moved back and forth between Library and Mall property. (*Id*. at ⁋ 40.)

9.     Maryann Knorr, an employee of the Library, called Mall security regarding the Plaintiff. (*Id*. at ⁋ 18; Library Emails, Bates No. SJPL000001, attached as **Exhibit E**.; East Hills Security Department Incident Report, pp. 2, attached as **Exhibit F**.)

10.     Mr. Clary and another security officer, Zachary Langford, arrived at the location where Plaintiff was petitioning. (**Ex. A** at ⁋ 17.)

11.     Mr. Clary told Plaintiff that a librarian had called to complain about Plaintiff's petitioning and asked Plaintiff to leave. (*Id*. at ⁋ 18; **Ex. F**.)

12.     Plaintiff stated that she would not leave and instructed Mr. Clary that he would need to call the police and have them decide if she had a right to petition at that location before she would leave. (**Ex. A** at ⁋ 19.)

13.     Around 12:10 pm, Mr. Clary called the St. Joseph Police Department regarding the Plaintiff. (**Ex. A** at ⁋ 21; **Ex. F**.)

14.     Mr. Clary went inside the Library and Maryann stated that the Library did not approve Plaintiff's soliciting. (**Ex. F**.)

15.	Plaintiff did not witness the conversation that occurred between Maryann and Mr. Clary. (*Def. Roger Clary's First Interrog. to Pl.*, pp. 3-4, Interrog. #3-11, at Interrog. #10, attached as **Exhibit G.**)

16.	Plaintiff was unaware of the location where the conversation between Maryann and Mr. Clary took place. (**Ex. G** at Interrog. #4.)

17.	Plaintiff was unaware of the date and time the conversation between Maryann and Mr. Clary occurred. (**Ex. G** at Interrog. #5.)

18.	Plaintiff was unaware of any statements made during the conversation between Mr. Clary and Maryann. (**Ex. G** at Interrog.'s #7-9.)

19.	Plaintiff was unaware if there were any witnesses to the conversation between Mr. Clary and Maryann. (**Ex. G** at Interrog. #6.)

20.	Plaintiff admits that she inferred that an agreement was made between Maryann and Mr. Clary. (**Ex. G** at Interrog. #11.)

21.	 Two St. Joseph police officers arrived on the scene, including Defendant Officer Rebecca Hailey. (**Ex. A** at ℙ 25; **Ex. F.**)

22.	Defendant Officer Hailey informed Plaintiff that she was trespassing because Mr. Clary had already asked her to leave. (**Ex. A** at ℙ 27.)

23.	When Defendant Officer Hailey asked Mr. Clary if he wanted to prosecute Plaintiff for trespassing, Mr. Clary said "yeah." (**Ex. A** at ℙ 29; **Ex. F.**)

24.	Plaintiff was arrested while standing in the area that was subject to the License Agreement. (**Ex. A** at ℙ 38; **Ex. D**.)

## III.   ARGUMENTS AND AUTHORITIES

### a.   Standard of Review.

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgement as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. *Id.* at 586-90. "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly preclude the entry of summary judgment." *Nelson v. City of McGhee*, 876 F.2d 56, 57 (8th Cir. 1989).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the … pleadings, but … by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party

> must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

**b.     There is no evidence that Mr. Clary and the Library reached a meeting of the minds as required to form a conspiracy.**

In order to prevail on a conspiracy claim pursuant to 42 U.S.C. § 1983, the plaintiff must establish:

> (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

*White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir.1999)). "To advance past the summary judgment stage, [a plaintiff] must 'allege with particularity and specifically demonstrate material facts that the defendants reached an agreement.'" *Reasonover v. St. Louis Cnty., Mo*., 447 F.3d 569, 582 (8th Cir. 2006) (internal citations omitted).

"The first element requires proof that there was a meeting of the minds among the alleged conspirators, and this element cannot be established with mere speculation." *Stewart v. Speiser,* No. 16-6117-CV-SJ-BP, 2018 WL 614968, at *7 (W.D.Mo. Jan. 29, 2018) (internal citations omitted) (citing *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010); *Johnson v. City of Shorewood, MN*, 360 F.3d 810, 817 (8th Cir. 2004); *Mahaney v. Warren County*, 206 F.3d 770, 771-72 (8th Cir. 2000)). A meeting of the minds requires at least some facts suggesting the defendants "reached an understanding" to violate a person's rights. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970). Absent additional evidence, some contact between a private individual and a state actor does not permit an inference of a conspiracy between the two parties. *Mershon v. Beasley*, 994 F.2d 449, 452 (8th Cir. 1993).

Here, there is no evidence of any agreement or a meeting of the minds that occurred between Mr. Clary and the Library to deprive Plaintiff of a constitutional right. In her *First Amended Complaint*, Plaintiff's only support that a meeting of the minds took place included that,

> 85. Defendant Roger Clary's call to the St. Joseph police department—Exhibit A— indicating that "the library called to complain about it [presumably Plaintiff's petitioning]" lends referential support to an already reasonable inference that the aforementioned meeting of the minds did indeed take place.

(**Ex. A**, pp. 27 at ⸿ 85). It has also been established through the course of discovery that the Plaintiff is unaware of: (1) where the meeting occurred between the librarian and Mr. Clary, (2) the date and time of the meeting, (3) whether there were any witnesses to the meeting, (4) the content of the agreement made during this meeting, or (5) the statements made by either Mr. Clary or the librarian during this meeting. (*See* S.O.F. ⸿⸿ 15-19; **Ex. G**). Plaintiff did not witness the making of the alleged agreement. (S.O.F. ⸿ 15; **Ex. G** at Interrog. #10). Further, when asked how Plaintiff was made aware of any such agreement between Mr. Clary and the librarian, she stated,

> **ANSWER:** This is the inference that I drew from Defendant Clary telling me that the Library had called to complain about my petitioning, that I had to leave the library, and that no one had ever been allowed to petition there.

(S.O.F. ⸿ 20; **Ex. G** at Interrog. #11). Through her own statement, Plaintiff admitted that she is speculating that an agreement ever occurred between Mr. Clary and the Library.

Thus, the Plaintiff has not "allege[d] with particularity" nor "specifically demonstrate[d] any material facts" that Mr. Clary and the Library reached an agreement to deprive Plaintiff of her constitutional rights. *See, e.g. Reasonover*, 447 F.3d at 582. Plaintiff's entire conspiracy claim relies on some contact between Mr. Clary and the Library to which Plaintiff has been wholly unable to point to or produce any material facts that support her claim. As prohibited by *Mershon*, Plaintiff cannot base her entire claim on some contact between Mr. Clary and the Library to create an inference of a conspiracy. 994 F.2d at 452. "A party may not cry 'conspiracy' and throw

h[er]self on the jury's mercy." *Id*. Due to the fact that Plaintiff's claim is founded only on speculation, Mr. Clary is entitled to judgement as a matter of law on this claim.

      **c.**      **Assuming *arguendo* that a meeting of the minds occurred between Mr. Clary and the Library, there is no evidence that it was directed toward an unconstitutional action.**

As provided in the above section, Mr. Clary disputes that a meeting of the minds ever occurred between Mr. Clary and the Library, however, assuming *arguendo* that such a meeting of the minds did occur, it was not directed toward an unconstitutional action. Rather, the facts clearly display that the actions taken by Mr. Clary were consistent with an inquiry into possible trespassing.

The allegations of conspiracy must "suggest a meeting of the minds directed toward an unconstitutional action." *Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016); *see also Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983). In her *First Amended Complaint* Plaintiff alleges,

> 83. Upon information and belief, on or around noon on January 30, 2018, [A] librarian of Defendant East Hills Library contacted Defendant Roger Clary and requested that he eject Plaintiff from the external library grounds—including the clearly established designated area—in violation of Plaintiff's First Amendment rights.

(**Ex. A**, pp. 26 at ⁋ 83.) Through the course of discovery and as further provided in *Plaintiff's First Amended Complaint*; (1) the area where Plaintiff was located is East Hills Mall's property; and (2) Mr. Clary and the Library's alleged actions on the day in question were derived out of a legitimate motive to enforce the respective policies of both the Library and East Hills Malls that prohibited Plaintiff's actions. Thus, Plaintiff's claims that the parties' actions were directed toward an unconstitutional action are erroneous as no reasonable fact finder could find in favor of the Plaintiff.

### i. The area where Plaintiff was located is East Hills Mall property.

First, Plaintiff admits in her *First Amended Complaint*,

> (b) The East Hills Mall owns the parking spaces. (c) An area where five parking spaces used to be is owned by the mall with an easement granted to the library for the purpose of the installation of a statute and related landscaping. A copy of the easement, obtained via informal request to Mary Beth Revels, is attached hereto as Exhibit P. (d) Plaintiff was standing in the easement area when she was arrested.

(**Ex. A**, pp. 14 at ¶ 38.) *Plaintiff's First Amended Complaint* incorrectly uses the term "easement" rather than the proper characterization of the nature of the Library's use as a "license" as clearly indicated in Plaintiff's Exhibit P to her *Amended Complaint*. (*See* S.O.F. ¶ 5; **Ex. D**.) Plaintiff's misunderstanding of the characterization of a license is the exact point where the crux of the Plaintiff's claim must fail.

"A license creates, moreover, no title, interest, or estate in the licensee." *Riverside–Quindaro Bend Levee Dist. v. Missouri American Water Co.*, 117 S.W.3d 140, 149 (Mo.App. W.D.2003). The fact that a license creates no interest in the property to the licensee is further supported by the language of the License Agreement. The license agreement specifically states,

> This agreement is a license. The relationship between Licensor and Licensee is not one of landlord and tenant, but rather one of licensor and licensee. Licensee's activities upon the Premises or the incurring of other costs with respect to the Premises by Licensee, **shall in no way operate to confer upon Licensee any interest, status or estate of any kind other than licensee**.

(*See* S.O.F. ¶¶ 5-6; **Ex. D**)(emphasis added). Thus, "the area where five parking spaces used to be" is owned by the East Hills Mall as the Library maintains only a license to the property, which creates no property interest. (S.O.F. ¶¶ 5-6; *Id.*)

Plaintiff's mischaracterization of the license in her *First Amended Complaint* does not create a genuine issue of material fact as she has presented absolutely no evidence that would be sufficient for a reasonable jury to find that the License Agreement provided a property interest to

the Library. *See Cottrell v. Am. Family Mutual Ins. Co., S.I.,* 930 F.3d 969, 972 (8th Cir. 2019) ("A material fact dispute is 'genuine' if each party has supplied some evidence that is sufficient for a reasonable jury to return a verdict for the nonmoving party.")

Additionally, as provided in full above, Plaintiff in her *First Amended Complaint* stated, "Plaintiff was standing in the easement[2] area when she was arrested." (S.O.F. ⁋ 24; **Ex. A**, pp. 14 at ⁋ 38**.**) The fact that Plaintiff was in the area owned by the East Hills Mall is further evidenced by information gathered during discovery. In Defendant Hailey's Responses to Plaintiff's Interrogatories, when asked where Plaintiff was standing when Defendant Hailey arrived at the scene of the incident, Defendant Hailey answered, "In the parking lot of the East Hill Mall property." (*Def. Hailey's Obj. and Resp. to Pl. Stacy Arnold's First Interrog.'s to Def. Hailey*, pp. 2 at Interrog. #3, attached as **Exhibit H**). Lastly, Plaintiff admitted that "she moved back and forth several times" between the mall property and the library property. (S.O.F. ⁋ 8; **Ex. A**, pp. 14 at ⁋ 40**.**) Therefore, through Plaintiff's own admission and additional evidence gathered through discovery, Plaintiff was located on East Hills Mall property.

        ii.        **Mr. Clary and the Library's alleged actions on the day in question were derived out of a legitimate motive to enforce the respective policies of both the Library and East Hills Malls that prohibited Plaintiff's actions.**

Plaintiff attempts to argue that the actions taken that day by the Library and Mr. Clary were driven by a joint motive to deprive Plaintiff of her First Amendment rights. (**Ex. A**, pp. 26 at ⁋ 83.) Besides mere speculation, Plaintiff has been unable to point to or otherwise provide any material facts that support such a finding. Rather, the facts provided clearly display that the motives behind

---

[2] As argued above, Plaintiff has mischaracterized this property owned by the East Hills Mall as an easement.

12

the parties' actions on the day in question arose solely out of a desire to enforce the respective policies of each party and pursuing an inquiry into a possible trespass.

The East Hills Mall's Code of Conduct specifically prohibits, "[a]ny form of solicitation without prior written permission of mall management." (S.O.F. ⁋ 3; **Ex. B**.) The Code of Conduct also provides, "East Hills Shopping Center is a private property and no rights shall accrue to the public by virtue of the public's entry into the center or on mall property." (**Ex. B.**) The Library provides "Guidelines for Petitioning and distribution of Literature on Library District Property." (S.O.F. ⁋ 4; **Ex. C**; *see also* Ex. Q to *Pl.'s First Am. Compl*, Doc. #19.) The Library Guidelines provide, "Petitioners may stand outside library buildings **on Library District property** in areas designated by staff … **but must not … pursue patrons**." (*Id*.) (emphasis added). Thus, the respective policies of the Library and the East Hills Mall prohibit (1) solicitation of any kind without prior permission on Mall property, and (2) pursuing patrons of the Library. (*Id*.)

The facts established through discovery clearly show that the motivations of Mr. Clary and the Library on the day in question was to enforce their respective policies as provided above. Mr. Clary stated in his Incident Report, that he "approached the petitioner and asked her to leave as we did not allow soliciting on Mall property without management approval." (*See* S.O.F. ⁋ 3; **Ex. F**.) The Incident Report also states that, "[Mr. Clary] went back inside Library and [the librarian] again said they did not approve her to be doing the soliciting." *Id*.

Further, emails produced during discovery between members of the Library staff describe that the librarian called Mall security (Mr. Clary) on the day in question to "see what the Mall rules are on signature getter people" because library patrons were complaining about Plaintiff. (**Ex. E**.) The email enforces the position of the Mall that it did not allow solicitors, and that Mall security would "be right over." *Id*. The email also displays that the librarian was inquiring about the proper

procedure to handle the situation as she knew petitioners did not have a right "to accost our patrons." (*Id*.; S.O.F. ¶ 4.)

Lastly, in response to Plaintiff's Interrogatory inquiring about Mr. Clary's specific objections to the way Plaintiff was petitioning, Mr. Clary stated that the location was "private property and soliciting is not permitted." (S.O.F. ¶ 3; **Ex. I**.) Thus, the evidence that has been established through discovery displays that the librarian and Mr. Clary maintained similar lawful motives of enforcing the respective policies of the Mall and the Library.

Therefore, assuming *arguendo* that a meeting of the minds did occur between Mr. Clary and the Library, the facts discovered support a finding that the motivations behind the actions of Mr. Clary on the day in question were directed toward the lawful action of enforcing the East Hills Mall's policy by pursuing a possible trespasser. This is consistent with the recent finding by this Court that the "First Amended Complaint also pleads facts that could be consistent with an inquiry into a possible trespassing." (Doc. # 50, pp. 10.) It is clear that Mr. Clary's actions were not driven by a desire to deprive Plaintiff of her First Amendment right. Plaintiff cannot establish that a meeting of the minds occurred between Mr. Clary and the librarian directed toward an unconstitutional action. Thus, Mr. Clary is entitled to judgement as a matter of law these grounds.

## IV.    CONCLUSION

As set forth above, Plaintiff is unable to point to or produce any evidence that supports her conspiracy claim against Mr. Clary as alleged in Count IV between Mr. Clary and the Library. Therefore, this Court should grant summary judgment in favor of Mr. Clary

Respectfully Submitted,

**BEAM-WARD, KRUSE,**
**WILSON & FLETES, LLC.**

_____/s/ Mark Beam-Ward_____
Mark Beam-Ward, KS #10071
8645 College Blvd., Ste. 250
Overland Park, KS 66210
P: (913) 339-688; F:(913) 339-9653
mbeamward@bkwflaw.com
ATTORNEYS FOR ROGER CLARY.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed with the Court via ECF filing

system on March 13, 2020, and a copy of the foregoing was sent via electronic mail to:

Stacy Arnold
500 Westover Dr. #11589
Sanford, North Carolina 27330
Stacy.kaye.arnold@gmail.com
*Pro Se Plaintiff*

_/s/Mark Beam-Ward_____
Attorneys for Roger Clary.

Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| STACY ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **RELIEF, INJUNCTIVE RELIEF** |
| CITY OF ST. JOSEPH, | ) | **AND DAMAGES** |
| ST. JOSEPH PUBLIC LIBRARY, | ) | |
| OFFICER REBECCA HAILEY (IN HER | ) | |
| PERSONAL AND PROFESSIONAL CAPACITY) | ) | |
| AND ROGER CLARY | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## PRELIMINARY STATEMENT

[I]mperative is the need to preserve inviolate the constitutional rights of free speech, free press, and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the people, and that changes, if desired, may be obtained by peaceful means. Charles Evans Hughes, De Jonge v. Oregon, 229 U.S. 353, 365 (1937).

1. Plaintiff Stacy Arnold presents this complaint under the United States Constitution to

resolve her unlawful detention, charge, and chilling violations of her First Amendment right to

petition on a sidewalk as well as the external grounds of a public library. Plaintiff seeks

declaratory and injunctive relief from Defendant St. Joseph Public Library, due to actions and a

policy that violate that the First Amendment. Due to Defendants' City of St. Joseph's, Officer

Rebecca Haley's and Roger Clary's willful and egregious Constitutional violations, Plaintiff

**EXHIBIT**

tabbies

A

seeks not only declaratory and injunctive relief, but also damages, including, but not limited to, the costs she has incurred and continues to incur in the vindication of her civil rights. The Constitution is a living document that forms the foundation of our democracy, and Plaintiff was arrested, intimidated, and prosecuted for engaging in core political speech in the most appropriate and profoundly compatible place imaginable with discussing matters of public concern. While Plaintiff seeks multiple forms of relief, she will not be made whole absent a holding declaring and vindicating her rights, subsequently lifting the chill that Defendants have placed on the core political speech of Plaintiff and others not before this Court.

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

3. This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. As this Complaint involves a question of actual controversy, this Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

5. Venue is proper in the District of Western Missouri under 28 U.S.C. § 1391.

6. This Court has the authority to grant Plaintiff's prayer for costs, including any attorney fees which Plaintiff may incur, under 42 U.S.C. § 1988.

## PARTIES

7.  Plaintiff Stacy Arnold frequently works as a canvasser. Canvassing involves talking with people about matters of public concern and often also involves facilitating the collective action of people who share the same values, to the end that those values may be reflected in the society in which we find ourselves. While Plaintiff has worked for many causes she believes in, no cause is closer to her than her belief that people who are working hard and playing by the rules deserve a fair playing field and should not be living in poverty. Plaintiff has experienced economic insecurity herself and has worked in restaurants alongside hard-working people who frequently had to make decisions between paying for rent, healthcare and childcare—decisions that no human being should ever have to make. While Plaintiff was "on-the-clock" when the incident described herein occurred, she chose the position, consistent with her work record over the last six years, because it allowed her a structured and meaningful opportunity to discuss public questions and affect change.

8.  Defendant City of St. Joseph was and still is a municipal corporation, organized and existing under the Laws of the State of Missouri.

9.  Defendant St. Joseph Public Library was and still is a public entity that provides library facilities and library services to the St. Joseph area.

10.  Defendant Officer Rebecca Hailey was and still is a police officer for the City of St. Joseph. She is sued in her personal and professional capacity.

11.  Defendant Roger Clary was a security guard for the East Hills Mall. Defendant Roger Clary's contested conduct constituted state action.

## STATEMENTS OF FACT

12.  On or around noon on January 30, 2018, Plaintiff was positioned on the exterior

grounds of the East Hills Library, a library within the St. Joseph Public Library branch. She was circulating a petition registered with the state of Missouri to raise the minimum wage. Plaintiff asked patrons entering and exiting the library if they would like to sign her petition, while not positioning herself as to block the ingress or egress of patrons. Plaintiff was petitioning the way that she always does: she would smile and greet people when she saw them, and then would approach them, casually but non-threateningly—as though she were approaching a friend—and tell them about the petition.

13. If anyone indicated that they were not a registered voter, had already signed the petition, did not support the petition, or wanted Plaintiff to go away, Plaintiff smiled at them and told them to have a good day.

14. At no time did Plaintiff cause crowds to gather.

15. As foot traffic was fairly limited, Plaintiff did ask some individuals in their cars in the single-row parking lot facing the library. Plaintiff did this by positioning herself about five (5) feet from people in vehicles and smiling, holding up the petition, and making eye contact. If the occupant of a vehicle rolled their window down, Plaintiff would ask him or her to sign her petition. At no time did Plaintiff block or impede vehicular traffic.

16. Plaintiff had petitioned in front of the library the preceding Saturday with no problems whatsoever. At no point on the preceding Saturday was she approached by an employee or agent of the Library with a request that she stop petitioning or amend any aspect of how she was petitioning.

17. Shortly after Plaintiff had begun petitioning on January 30, 2018, a mall security vehicle arrived. Two individuals were inside of the vehicle. One individual (later identified via Sunshine request as Defendant Roger Clary) told Plaintiff that she could not petition at the library.

18. Neither Defendant Roger Clary nor the individual accompanying him expressed any complaint or concern about the *way* Plaintiff was petitioning. Neither or them asked Plaintiff to acquiesce to any type of petitioning restriction. Neither of them informed Plaintiff that there was a designated area or asked her to remain in or move to said area. Neither of them asked Plaintiff to stop talking to people in their cars. Neither or them referred Plaintiff to the library director or her designee. Neither of them mentioned any adequate, alternative locations from which Plaintiff could petition. Neither of them differentiated property belonging to the library and property belonging to the mall. On the contrary, Defendant Roger Clary told Plaintiff that the librarian had called to complain about Plaintiff's petitioning, that the mall owned the entire library grounds and that no one had ever been allowed to petition there.

19. Before the incident complained of herein transpired, Plaintiff had googled, "Can I petition in front of a public library?" and the first result linked her to Groene v. Seng[1] WL 5680261 (D. Neb. 2006), which she had read. Like any reasonable person reading that decision, Plaintiff rightfully believed that she had a right to petition in front of the library. She rightfully pointed out to the then-nameless security guard—Defendant Roger Clary—that she had a First Amendment right to petition in front of the library. She told him that if he thought otherwise that he would need to call the police and have them make a determination. She also told him that if the police agreed with him that she would get the badge number of the officer and leave.

20. The then-nameless security guard, Defendant Roger Clary, became irritated. Plaintiff told him that if she were at the mall she would happily leave, to which Defendant Roger Clary argued that the library was no different than the mall. Plaintiff Stacy Arnold and Defendant Roger Clary

---

[1] As of June 18, 2019, this is still the first result on google for "Can I petition in front of a public library?" https://blog.librarylaw.com/librarylaw/2006/07/can_you_prohibi.html

COMPLAINT FOR DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES - 5

verbally disagreed with each other over at least two Constitutional questions: 1) whether or not petitioning in front of a public library is protected by the First Amendment and 2) whether or not petitioning in front of a public library with private ownership is protected by the First Amendment. Notably, Plaintiff Stacy Arnold and Defendant Roger Clary did *not* verbally disagree over whether or not confining petitioning to a designated area in front of a library was a permissible restriction under the First Amendment, as Defendant Roger Clary made Plaintiff aware of no such designated area, claiming, once again, that the mall owned the entire library and that no one had ever been allowed to petition there.

21. Defendant Roger Clary called the police. A recording of this call obtained via a Sunshine request to the St. Joseph PD and redacted by an agent of Plaintiff is attached hereto as Exhibit A; it is accompanied by a transcript written by Plaintiff. Pursuant to Fed. R. Civ. P. 5.2(f), Plaintiff is also filing an unredacted recording of this call under seal.

22. Plaintiff Stacy Arnold then called her boss, who, at Plaintiff's request, also called the police. A recording of this call obtained via a Sunshine request to the St. Joseph PD and redacted by an agent of Plaintiff is attached hereto as Exhibit B; it is accompanied by a transcript written by Plaintiff. Pursuant to Fed. R. Civ. P. 5.2(f), Plaintiff is also filing an unredacted recording of this call under seal. In the recording, the individual who was Plaintiff's boss at the time of the conduct complained of herein says that he wants to "make sure she [Plaintiff] has a right to be at a public library petitioning." The operator did *not* indicate that Plaintiff should leave or stop petitioning but did indicate that an officer was on the way and would make a determination.

23. The call for service report regarding this incident indicates that Defendant Roger Clary placed his call to the police around 12:10 pm and that Plaintiff's boss placed his call to the police around 12:14 pm. Plaintiff obtained a copy of the call for service report via a

Sunshine request. A redacted copy is attached hereto as Exhibit C. Pursuant to Fed. R. Civ. P. 5.2(f), Plaintiff is also filing an unredacted copy of the call for service report under seal.

24. Plaintiff then asked the then-nameless security guard—Defendant Roger Clary—for his name so that she could follow up regarding the incident, as Plaintiff had a suspicion that he was not being truthful, and he refused to tell her his name. Plaintiff recorded the Defendant security guard refusing to tell her his name. A copy of this recording is attached hereto as Exhibit D. The other individual who was in the vehicle—Zachary Langford—who gave no command to leave, gave Plaintiff his card. In fact, the only recollection that Plaintiff has of leaving the sidewalk area and stepping onto the parking lot after mall security arrived was to walk forward in order to accept the card of Zachary Langford.

25. Plaintiff was out of earshot of mall security and on the phone with her boss when two officers arrived. Defendant Officer Rebecca Hailey stepped out of her vehicle. "Get off your phone," she commanded Plaintiff, and Plaintiff got off her phone, without argument and without question. Defendant Officer Rebecca Hailey then dramatically asked Plaintiff "What are you doing, on private property?" and immediately followed this question with a command for Plaintiff to "give me your ID." And Plaintiff walked forward towards Defendant Officer Rebecca Hailey to give her Plaintiff's ID, without argument and without question. The call for service report regarding this incident—Exhibit C—displays Plaintiff's full name and birthdate in the description added at 12:28:06 as well as a number resembling Plaintiff's ID number—one digit is missing—at 12:28:20.

26. Defendant Officer Rebecca Hailey then asked Plaintiff something to the effect of if she was aware that she could not petition at the library, and to this Plaintiff did not agree. Plaintiff then rightfully stated that she was "aware that this a public forum." Plaintiff recorded the

interaction from this point onward until her phone was unlawfully seized. A copy of this recording is attached hereto as Exhibit E. Defendant Officer Rebecca Hailey then responded with "it's actually not," at which point Plaintiff vocalized that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the defendant officer's badge number, and indicated that she, Plaintiff, would not disobey an order.

27. Defendant Officer Rebecca Hailey then alleged that Plaintiff was trespassing because the security guard had already asked her to leave. Plaintiff repeated her request for the badge number of the defendant officer.

28. Defendant Officer Rebecca Hailey did not provide Plaintiff with her badge number.

29. Instead, she said, "we're gonna do this the easy way." She then turned directly to Defendant Roger Clary and asked him if he wanted to prosecute for trespassing. Defendant Roger Clary said "yeah," and Defendant Officer Rebecca Hailey said "perfect," and then she proceeded to put Plaintiff in pink handcuffs that resembled a sex toy.

30. Plaintiff did not resist arrest, and excessive force was not used.

31. Defendant Officer Rebecca Hailey did not, at any time, distinguish between property belonging to the library and property belonging to the mall. She did not make Plaintiff aware of any designated area and/or ask Plaintiff to move to or remain in said area. And she certainly did not inform Plaintiff of any adequate, alternative areas in which she could petition or discuss public questions.

32. While Defendant Officer Rebecca Hailey was giving Plaintiff a free ride to the Buchanan County Jail, she raised her voice, and, with a tone of anger, indicated that petitioning in St. Joseph was becoming "a really big problem." "Are there more of y'all?" Defendant Officer

Rebecca Hailey asked the handcuffed Plaintiff, as though the Constitution were a dead letter, and petitioning were an act of civil disobedience. But all of this was not enough for Defendant.

33. Instead of reporting the facts of the incident thus far complained of herein as they transpired, Defendant Officer Rebecca Hailey cooked up her own alternative version of events. Plaintiff's police report, a copy of which is attached hereto as Exhibit F, contains at least two counts of material misrepresentation.

(a): Defendant Officer Rebecca Hailey wrote that Plaintiff "immediately became verbally combative with officers and said she didn't have to leave because it was her First Amendment right." While Plaintiff indeed *expressed disagreement* with the Defendant Officer over the library's status as a public forum, she *obeyed* the Defendant Officer's every command. Plaintiff did *not* tell Defendant Officer Rebecca Hailey that she didn't have to leave, nor did Plaintiff think that would have been a good strategy to help her cause. As stated above in paragraph 26, Plaintiff made it clear that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the badge number of Defendant, and said that she would not disobey Defendant's order. Moreover, far from "immediately becom[ing] verbally combative with officers," Plaintiff *obeyed* the orders of the responding officer: she got off of her phone when told to do so by Defendant Officer Rebecca Hailey and she gave Defendant Officer Rebecca Hailey her identification as instructed, without argument and without question.

(b): Defendant Officer Rebecca Hailey also wrote that Zachary Langford—not the then-nameless security guard—was the one who made the complaining call to dispatch, as well as the one who said that he wanted to prosecute for trespassing. In actuality, the security guard who refused to tell Plaintiff his name, Defendant Roger Clary, is the one

who called dispatch (a fact evidenced by the call for service report—Exhibit C) as well as the one who indicated that he wanted to prosecute for trespassing. For the court's reference, Plaintiff has also included a snippit of the call for service report below, and has circled the name of the caller.

**Call Log**

| Log Date/Time | Entered By | Action | Description |
|---|---|---|---|
| 01/30/2018 12:10:14 | gnorton | Call Created | New call created. Call Type: ?, Location: , Phone Number: , Name: |
| 01/30/2018 12:10:14 | gnorton | Person Added | Name: |
| 01/30/2018 12:10:20 | gnorton | Location | Location: 3702 FREDERICK AVE, Venue: SJ |
| 01/30/2018 12:10:20 | gnorton | Reset Alarm Level | Fire Alarm Level Reset |
| 01/30/2018 12:10:26 | gnorton | Narrative Added | IN FRONT OF THE LIBRARY |
| 01/30/2018 12:10:30 | gnorton | Narrative Added | SUBJ REFUISNG TO LEAVE MALL LOT |
| 01/30/2018 12:10:45 | gnorton | Narrative Added | WF EARLY 20S |
| 01/30/2018 12:10:49 | gnorton | Call Type | NewCallType: 1402, Status: In Progress, Priority: 2 |
| 01/30/2018 12:11:10 | gnorton | Narrative Added | CALLER IS SECURITY FOR THE MALL |
| 01/30/2018 12:11:25 | gnorton | Narrative Added | LSW BLK COAT WHI TURTLE NECK BLK PANTS AND BLK BOOTS |
| 01/30/2018 12:11:31 | gnorton | Person Updated | Name: CLARY, ROGER, Location: <UNKNOWN> |
| 01/30/2018 12:11:36 | gnorton | Call Updated | Phone Number: (816)248-1889 |
| 01/30/2018 12:11:43 | gnorton | Person Added | Name: EAST HILLS MALL SECURITY,,, |
| 01/30/2018 12:11:49 | gnorton | Narrative Added | CALLER IS OUT WITH HER |
| 01/30/2018 12:12:42 | Andrea Rose | Incident Created | Added Incident Number, ORI: MO0110100, Number: 2018-00007401 |
| 01/30/2018 12:12:42 | Andrea Rose | Unit Status Action | Unit 2X5 Dispatched |
| 01/30/2018 12:12:42 | Andrea Rose | Unit Status Action | Unit 207 Dispatched |

Plaintiff has also included snippits from her police report below for the court's reference. The name of the person who Defendant Officer Rebecca Hailey indicated was the complainant is circled.

# Case Report

## Summary

Print Date/Time: 02/02/2018 10:56
Login ID: aevans
Case Number: 2018-00007401

ORI Number:

St Joseph Police Department
MO0110100

### Case

| | | | |
|---|---|---|---|
| Case Number: | 2018-00007401 | Incident Type: | Trespass |
| Location: | 3702 FREDERICK AVE | Occurred From: | 01/30/2018 12:10 |
| | ST JOSEPH, MO 64506 | Occurred Thru: | 01/30/2018 12:28 |
| Reporting Officer ID: | 34265 - Hailey | Disposition: | |
| | | Disposition Date: | |
| | | Reported Date: | 01/30/2018 12:10 Tuesday |

### Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | MO0110100 | 90J | 20-51 (B) | TRESPASS PUBLIC PLACE | 12 |

### Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Complainant | 1 | LANGFORD, ZACKARY L | 119 S 15TH ST ST JOSEPH, MO 64501 | (785)850-1261 | White | Male | 11/01/1993 24 |
| Other Subject Not Listed | 1 | EASTHILLS MALL | 3702 FREDERICK AVE ST JOSEPH, MO 64506 | (816)279-5667 | | | |
| Suspect | 1 | ARNOLD, STACY KAYE | 1589 RACCOON RD MAYESVILLE, SC 29104-8995 | (803)428-7024 | White | Female | 06/10/1985 32 |
| Victim | 1 | Society | 1605 S BELT HWY ST JOSEPH, MO 64507 | (816)232-1087 | | | |

### OfficerID: Bhailey, Narrative

ON 01-30-2018 AT 1212 HOURS, OFFICER KNEIB AND I, OFFICER HAILEY RESPONDED TO 3702 FREDERICK AVE, IN REFERENCE TO TRESPASSING. CALLER, ZACKARY L. LANGFORD ADVISED A WHITE FEMALE WAS ASKED TO LEAVE THE MALL PROPERTY FOR SOLICITING AND REFUSED TO LEAVE.

OFFICER'S MADE CONTACT WITH STACY KAYE ARNOLD (06-10-1985), WHO IMMEDIATELY BECAME VERBALLY COMBATIVE WITH OFFICER'S. SHE TOLD US IT WAS HER FIRST AMENDMENT RIGHT AND SHE DIDN'T HAVE TO LEAVE BECAUSE IT WAS PUBLIC PLACE.

SECURITY OFFICER ZACKARY L. LANGFORD ADVISED HE WANTED TO PRESS CHARGES FOR TRESPASSING. I PLACED HER UNDER ARREST, SEARCHED HER PERSON, AND TRANSPORTED HER TO BOOKING.

I ISSUED ARNOLD A CITY SUMMONS AND BOOKED HER IN FOR CITY TRESPASS WITH A CASH OR SURETY BOND OF $150.00.

34. Plaintiff was charged with violating the St. Joseph City Code Ordinance 20-51. The ordinance reads as follows: "Trespass. (a) A person commits the offense of trespass if he enters or remains unlawfully upon real property of another. The fact that a person has no intent to enter unlawfully or remain unlawfully is no defense to this section. (b) A person enters unlawfully or

remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. (c) Trespass is a misdemeanor. (Code 1969, § 16-140(b)(5); Gen. Ord. No. 834, § 1(16-48), 11-13-90) State law reference(s)--Similar provisions, RSMo 569.010(8), 569.150."

35. The "victim" that was listed on Plaintiff's police report was none other than society. While the freedom of speech does not depend upon the popularity of said speech, or the likelihood that said speech will result in social change, if "society" can reasonably be defined to include the electorate of Missouri, 62% of them, like Plaintiff, also believed that working people deserve more, and voted to approve the measure; and, partially because of the petitioning of Plaintiff and others, the government was responsive to the people, and a change that was desired by the people was secured by peaceful means. Yet this same "society" is listed as a victim on Plaintiff's police report, even though Plaintiff was engaging in core political speech in front of a public library, the most profoundly compatible place imaginable with discussing such important public questions.

36. The East Hills Library was not listed on the police report. The East Hills Mall and the East Hills Library have separate addresses. The address of the East Hills Mall is 3702 Frederick Ave, St. Joseph, MO 64506. The address of the East Hills Library is 502 N Woodbine Rd, St. Joseph, MO 64506.

37. (a) There is a sidewalk that runs parallel to the entrance of the East Hills Library.

Pictures of this sidewalk are attached hereto as Exhibits G, H, I and J. Although it extends far beyond the front library doors, the sidewalk has a beginning and an end. (b) In front of the sidewalk is a single row of parking spaces, in front of the spaces is a vehicular pass-through that cars must utilize to access the library, and on the other side of the vehicular pass-through sits the mall parking lot. (c) A statue of a girl with a dove surrounded by sidewalk now stands in place of what was once five parking spaces in the single row of spaces in front of the library. A copy of what appears to be a blueprint for trading the parking spaces for the installation of a statue and related landscaping is attached hereto as Exhibit K. This document was provided to Plaintiff by Mary Beth Revels, the library director. (d) The sidewalk surrounding the statue is intertwined with and physically indistinguishable from the sidewalk that is parallel to the library. (e) There are four benches, two to the right and two to the left of the statue. (f) Between the statue and the sidewalk are rocks. (g) There was, at the time of Plaintiff's arrest, and on January 2, 2019, a sign in the rocks that read: "Rock Garden/Take a rock for inspiration/Share one for motivation/or/ Leave a rock to help the garden grow!" A picture of this sign is attached hereto as Exhibit L. (h) Messages as well as artwork were displayed on some of the rocks in the garden. (i) There is a plaque in front of the statue that reads: "Girl With Dove/Artist: Tom Corbin/Generously donated to the St. Joseph Public Library by the Bradley Charitable Trust and the William T. Kemper Foundation Commerce Bank, Trustee." A picture of this plaque is attached hereto as Exhibit M. (j) According to Google maps, public bus stops 13 and 19 are located in front of the statue.

38. Although Defendant Roger Clary told Plaintiff that the East Hills Mall owned the entire library grounds, this was misrepresentation, most likely malicious misrepresentation. Upon information and belief: (a) The public library itself owns the property from and including the parallel sidewalk (not to include the parts of the sidewalk to the front, right and left of the statue).

A copy of the final plat of the library knoll is attached hereto as Exhibit N. This copy was given to Plaintiff by Mary Beth Revels. A copy of the property line for the East Hills Library—502 N Woodbine Ave—obtained from the St. Joseph Department of Public Works and Transportation is attached hereto as Exhibit O. (b) The East Hills Mall owns the parking spaces. (c) An area where five parking spaces used to be is owed by the mall with an easement granted to the library for the purpose of the installation of a statue and related landscaping. A copy of the easement, obtained via informal request to Mary Beth Revels, is attached hereto as Exhibit P. (d) Plaintiff was standing in the easement area when she was arrested.

39. The library had a published policy on petitioning and the distribution of literature at the time of Plaintiff's arrest. This policy indicated that petitioning was allowed in undifferentiated "areas designated by staff." It also indicated that petitioners were "not to pursue patrons." Plaintiff obtained a copy of this policy via informal request to Mary Beth Revels; it is attached hereto as Exhibit Q. Another similar, but more detailed policy adopted on 3/27/18 included specific locations of designated areas as well as a picture of the designated area in front of the East Hills Library. The policy was once again revised/edited on July 8/23/2019. Among the edits are the inclusion of "public assembly" and a shift in the location of the designated area at the East Hills Library. A copy of the library policy on petitioning as of 9/27/2019 is attached hereto as Exhibit R.

40. Neither Defendant Roger Clary nor Zachary Langford made Plaintiff aware of any distinction in property ownership. Nor did either of them ask Plaintiff to move to a designated area; Defendant Roger Clary claimed that the mall owned everything and told Plaintiff that no one had ever been allowed to petition at the library. To the best of Plaintiff's recollection—and certainly unbeknownst to her at the time—she moved back and forth several times between the

publicly owned sidewalk that served a public purpose and the physically indistinguishable privately owned sidewalk that served a public purpose/easement. Once, as Plaintiff traversed from the public property to the private property/easement, Defendant Roger Clary gave her the following "command": "you just stay right there," he said smugly. In between the arrival of mall security and the police, Plaintiff recalls asking two people/parties to sign her petition. To the best of Plaintiff's recollection, both of these asks were made on library property (on the publicly owned sidewalk), and at least one of them resulted in a citizen signing the petition. As stated in paragraph 24, the only recollection that Plaintiff has of stepping onto the parking lot after the arrival of mall security was to accept the card of Zachary Langford.

41. There could not be a place more profoundly compatible with discussing public questions and petitioning than on the external grounds of a public library. Given former Chief Justice Charles Evans Hughes's observation that it is through free discussion that changes may be obtained through peaceful means, the area around the statue itself is also uniquely and profoundly compatible with discussing public questions: according to the sculptor of the statue, it was originally dedicated to the United Nations as a symbol of peace. Moreover, the interactive rock garden, that seems to invite passersby to contemplate meaning, further rings of profound compatibility with discussing public questions.

42. Case law, in addition to supporting Plaintiff's right to discuss public questions in public places that are compatible with public discourse, also supports Plaintiff's right to evoke First Amendment concerns on both the public property and the private property that is used for public purposes, Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 801 (noting that "a speaker must seek access to public property **or** to private property dedicated to public use to evoke *First Amendment* concerns" (emphasis added)). While the cases that Plaintiff would

characterize as the closest factual analogues to her situation present only persuasive authority, two courts had specifically considered the question of the public fora status of the external grounds of a public library as of January 30, 2018. One determined that they were public fora. Prigmore v. City of Redding, 211 Cal. App. 4th 1322, 1328, 1340 (2012) (holding that "the trial court correctly determined the area outside the Library to be a public forum" and concluding that "leafletting on the walkways and entrance of the Library must be permitted according to the principle that 'one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion...' (citing Jamison v. Texas, 318 U.S. 413, 416 (1943)). The other determined that they were likely public fora. Deans v. Las Vegas Clark Cnty Library Dist. 220 F. Supp. 3d 1058, 1060 (District of Nevada, 2016)). Moreover, the case referenced in paragraph 19 above, Groene v. Seng, WL 5680261 (D. Neb. 2006), specifically addressed the question of petitioning on the non-perimeter sidewalks of publicly and privately owned government buildings, including libraries, and determined that these sidewalks/walkways were "likely public fora." It is in this context that the City of St. Joseph charged Plaintiff with trespassing.

43. Plaintiff sat in the St. Joseph municipal courtroom on March 6, 2018, a day before her arraignment was scheduled, and watched the judge. She noted a sign in the back of the courtroom that read "you are URGED not to plead guilty if you do not think that you are guilty." Plaintiff hired and paid a criminal defense attorney the morning of March 7, 2018, prior to her arraignment. Plaintiff nevertheless arrived at the municipal court at the time her arraignment was scheduled; she was told that she was still on the docket and was referred to the prosecuting attorney. "You don't have an attorney," the prosecuting attorney said to Plaintiff, in a tone that was menacing and taunting.

44. The trespassing charge against Plaintiff was eventually dismissed; however, this did not occur until July 25, 2018, long after Defendant City of St. Joseph was shown the video of Plaintiff telling Defendant Officer Rebecca Hailey that she would not disobey an order, and five (5) days before Plaintiff was scheduled for trial in the St. Joseph municipal court.

45. All acts alleged herein of the Defendants, and their members, officers, agents, employees or persons acting at their behest or direction, were done under color and pretense of law.

46. Plaintiff paid $350 for a criminal defense attorney to review her case and then $1500 for the defense of the charge. Plaintiff paid a Sunshine request fee in the amount of $42.30 to the St. Joseph Police Department for information related to this incident. Furthermore, she has thus far has incurred courier fees in the amount of $450 related to obtaining information about the incident complained of herein.

47. Plaintiff lost wages for multiple reasons directly attributable to the incident complained of herein. Plaintiff was unable to work on the day following the incident as she was in a state of psychological shock due to the difficulty of reconciling petitioning in front of a public library with getting arrested. Plaintiff also missed work on at least several occasions to perform tasks in St. Joseph directly related to this incident to include: researching the title of the property in question, finding and retaining a criminal defense attorney, watching the judge so that she could make an assessment as to whether or not pleading pursuant to her conscience might land her the maximum penalty (which is six months in jail), and appearing for her arraignment.

48. Plaintiff has since incurred numerous expenses in the furtherance of vindicating her civil rights, including, but not limited to, Plaintiff's Westlaw bill, Plaintiff's PACER bill, Plaintiff's membership to the LA Law Library, Plaintiff's membership to Courtroom 5, Plaintiff's civil lawsuit basics classes and Plaintiff's civil rights class.

49. Plaintiff, who had never before been arrested, found the experience unsettling, and also experienced damages in that she experienced apprehension, mental distress, inconvenience, anxiety, feelings of unjust treatment, and emotional pain and suffering. In fact, Plaintiff experienced feelings of unjust treatment, apprehension, mental distress, inconvenience, anxiety and emotional pain and suffering for which each and every cause of action herein was a moving force. Plaintiff's discovery of the misrepresentation on her police report as well as the fact that Defendant Roger Clary had misrepresented the property ownership in particularly struck Plaintiff as an abomination of ordered liberty, and Plaintiff was overwhelmed with feelings of anxiety, feelings of unjust treatment, and the uncertainty of justice.

50. Plaintiff has been injured by the Constitutional violations complained of herein, and Plaintiff is entitled to equitable relief, costs, and damages.

51. Moreover, Plaintiff has suffered the loss of First Amendment freedoms and irreparable harm. Defendants' policies and actions against Plaintiff and her speech have a chilling effect on the Free Speech rights of Plaintiff and others not before this Court.

52. Plaintiff would like to return to the external grounds of the East Hills Library to petition for another cause she cares about in the future, both because it is an area wholly and profoundly compatible with petitioning, and also because Plaintiff wishes to lift the chill that Defendants have shadowed before the First Amendment rights of Plaintiff and those not before this court.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT
## OF THE UNITED STATES CONSTITUTION
## FREEDOM OF SPEECH - CONSTITUTIONAL QUESTION
### (against Defendants City of St. Joseph, Defendant Officer Rebecca Hailey in her Official Capacity[2] and St. Joseph Public Library)

---

[2] Plaintiff has no interest in arguing that the City of St. Joseph and Officer Rebecca Hailey in her official capacity do not function as the same suable entity; they are listed separately here to as accurately as possible describe who did what to whom.

53. Plaintiff hereby incorporates by reference all foregoing allegations as if set forth fully herein.

54. The library policy on petitioning was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable. Specifically, confining human communication to a box on the external grounds of a public library is unnecessary to achieve any cognizable government interest and moreover it places a substantial burden on speech—it elevates perceived public inconvenience above our rights as citizens to speak freely and naturally with other citizens about public questions. Furthermore, the library policy also contained/s a clause—"must not pursue patrons"—that is impermissibly vague in that it covers over multiple distinctions and affords unbridled discretion to city officials and employees in its interpretation, affording Defendants ample opportunity to enforce the policy in an *ad hoc*, arbitrary and/or discriminatory manner.[3]

55. A library is a forum for information and ideas.

56. Wherever the title of a public library may rest, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on its exterior grounds.

57. Moreover, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on a public sidewalk, including **all** of the public sidewalk surrounding the East Hills Library.

58. Even if the private property in question (which serves the same public purpose as the

---

[3] The policy in effect on January 30, 2018, the date when Plaintiff was arrested, did not specify where the designated areas were located, allowing further unbridled discretion to library staff to enforce the policy in an ad hoc manner. Plaintiff seeks no monetary relief from this because: 1) Defendant St. Joseph Public Library enacted a different/revised policy specifying the locations of the designated areas and 2) while Plaintiff maintains that the policy itself is facially invalid, she greatly appreciated the revision.

public property and is physically indistinguishable from the same) is not subject to First Amendment protection, the library policy on petitioning as applied to the publicly owned exterior grounds of the East Hills Library was and is facially invalid; it is/was not narrowly tailored to serve a cognizable, much less a compelling/significant government interest, nor is it reasonable.

59. Defendant Officer Rebecca Hailey, in her official capacity, did not inform Plaintiff of any adequate alternative locations from which Plaintiff could petition, and even asserted that petitioning itself was becoming "a really big problem," chilling and preventing the effective *exercise* of Plaintiff's First Amendment rights.

60. In the event that case law surrounding this Constitutional question presents unique interpretive challenges (e.g. a "method of analysis" that contains dispositive "categories" in which the Justices of the Supreme Court have not come to a binding agreement concerning the content and significance of the same, and somewhat of a 50/50 split amongst Supreme Court Justices as to what constitutes a "sidewalk,") Defendant City of St. Joseph did not—at any stage of its involvement—adhere to the First Amendment requirement to "give the benefit of any doubt to protecting rather than stifling [Plaintiff's] speech," Citizens United v. Federal Election Com'n, 558 U.S. 310, 327 (2010) (citing Federal Election Com'n v. Wisconsin Right to Life, Inc, 551 U.S. 449, 469 (2007) (citing New York Times Co. v . Sullivan, 376 U.S. 254, 269-270 (1964)). Defendant City of St. Joseph—by and through Defendant Officer Rebecca Hailey in her official capacity—did not give the benefit of the doubt to protecting Plaintiff's speech by allowing her to remain on the entire exterior library grounds[4] and Defendant City of St. Joseph

---

[4] She also did not allow Plaintiff to remain in the designated area, the existence—though not the location—of which was clearly established beyond doubt on January 30, 2018. This matter is discussed in a subsequent cause of action.

did not give the benefit of the doubt to protecting Plaintiff's speech when it decided to press charges. But perhaps the most egregious and apparent violation of the First Amendment's requirement that the benefit of the doubt is given to protecting speech lies in Defendant Officer Rebecca Hailey not giving Plaintiff the benefit of the doubt from the time that the police were called on her behalf to make a determination to the time that she arrested Plaintiff *after* Plaintiff told her that she would not disobey an order: arresting someone who has requested a determination from law enforcement concerning her ability to peacefully petition in front of a public library, who is willing to comply with a determination that she disagrees with, places a deathly chill on speech that goes far beyond simply ordering Plaintiff to leave the library. Equally chilling and oozing of repugnance to the First Amendment is the fact that the City of St. Joseph chose to continue prosecuting Plaintiff after being shown the video in which Plaintiff indicates that she would not disobey an order.

61.  Plaintiff's arrest, charge and prosecution were not passive.

62.  Plaintiff would like to return to both the publicly and privately owned external grounds of East Hills Library to petition about causes that she cares about in the future and to lift the chill that Defendants have placed on core political speech.

**WHEREFORE,** Plaintiff respectfully prays that this court:

A.  Enter a judgment of declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT
## OF THE UNITED STATES CONSTITUTION
## FREEDOM OF SPEECH -
## VIOLATION OF A CLEARLY ESTABLISHED RIGHT
### (against Defendants Roger Clary, Officer Rebecca Hailey—in her personal capacity—and City of St. Joseph)

63. Plaintiff hereby incorporates by reference all forgoing allegations as if set forth fully herein.

64. In their enthusiasm to sock it to Plaintiff (re: the Constitutional question at issue in the preceding cause of action), Defendants swept a violation of Plaintiff's clearly established rights under the umbrella of said enthusiasm.

65. The ability of petitioners to "stand outside library buildings on library district property in areas designated by staff" had been clearly established since 3/8/2010 on what was then the published guidelines on petitioning and the distribution of literature. See Exhibit Q. It was also clearly established, on January 30, 2018, that the First Amendment activity is protected in designated areas. Moreover, on January 30, 2018, it was clearly established that the East Hills Mall did *not* own the entire library grounds. See Exhibits N and O.

66. Even assuming, arguendo, that Defendant Roger Clary, who refused to identify himself, was an authorized person within the meaning of the St. Joseph Code Ordinance 20-51, his command that Plaintiff leave the "mall property"/entire undifferentiated library swept within its ambit property titled to the library, including the nominally clearly established "area[] designated by staff."

67. The notion that a lawful command to leave the real property of another can include both *the real property of the party in question + more real property that does not actually belong to the party in question* defies ordered liberty. Defendant Roger Clary's command maliciously misidentified the ownership of the premises in question (the library), and as such it was not a lawful command.

68. The call for service report—Exhibit C—indicating that Plaintiff was "in front of the

library," coupled with Defendant Roger Clary's call to the non-emergency line—Exhibit A—in which he states that Plaintiff is "right here in front of the library" and that the "library did call to complain about it," provides referential support to an already reasonable inference that Defendant Roger Clary, indeed, asked Plaintiff to leave the entire library grounds without differentiating the public and the private property. Moreover, Defendant Roger Clary's other "command"/smug suggestion to Plaintiff that she "just stay right there" when, unbeknownst to Plaintiff, she traversed from the publicly owned sidewalk serving a public purpose to the physically indistinguishable privately owned sidewalk serving a public purpose—if accepted as true—supports a reasonable inference that Defendant Roger Clary's misrepresentation of the ownership of the exterior grounds of the library was malicious.

69. Defendant Officer Rebecca Hailey—and indeed, any reasonable officer responding to the call—should have been aware that the area in question was "the library;" it is described as such on the call for service report (Exhibit C).

70. Either Defendant Officer Rebecca Hailey made no effort to decipher 1) to whom the external grounds of the library were titled and 2) if petitioning was allowed under the First Amendment on the external grounds of the library (in a designated area or otherwise), or, alternatively, already knew the answers to 1) and 2) and willfully discarded this knowledge.

71. Plaintiff was not a danger to anyone; there was no assertion from any party that she was, and, especially given that calls to the non-emergency line had been placed on behalf of both Plaintiff and Defendant Roger Clary outlining a difference of opinion, any reasonable officer would have, at the bare minimum, found out to whom the library grounds were titled as well as if there were a clearly established right to petition there.

72. Defendant Officer Rebecca Hailey denied Plaintiff access to the entire exterior library

grounds—the private property, the easement, and the public property, including the clearly established (at least nominally) designated area—for the purpose of petitioning and discussing public questions with her fellow citizens living in a democratic society in violation of Plaintiff's constitutionally protected right of free speech. The method by which Defendant Officer Rebecca Hailey denied Plaintiff access was not by asking her to leave, but instead by arresting her.

73. The City of St. Joseph charged Plaintiff with violating ordinance 20-51, and did not drop this charge until five (5) days before Plaintiff was scheduled for trial on July 30, 2018, which had a chilling effect on Plaintiff's speech as well as the speech of others not before this Court.

**WHEREFORE,** Plaintiff respectfully prays that this court:

A.    Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages.


### THIRD CAUSE OF ACTION
### VIOLATION OF DUE PROCESS
### FABRICATION OF EVIDENCE
### (against Defendant Officer Rebecca Hailey - in her individual capacity)

74. Plaintiff hereby incorporates by reference all forgoing and subsequent allegations as if set forth fully herein.

75. At the time in which Defendant Officer Rebecca Hailey willfully, deliberately and maliciously wrote lies on Plaintiff's police report, the right to be free from falsified material evidence was—and still is—implicit in any meaningful conceptualization of ordered liberty.

76. Under no circumstances would any objectively reasonable officer think it lawful to make up evidence.

77. Defendant Officer Rebecca Hailey's material misrepresentation on Plaintiff's police

report is conscience-shocking in that it: 1) is consistent with using her badge of authority to protect and serve her own ego as well as the ego of her co-conspirator Defendant Roger Clary, instead of protecting and serving the people and 2) corrupts the truth-seeking function of the trial process.

78. The difference between obeying and disobeying an officer of the law is material. See Exhibit E of Plaintiff telling Defendant Officer Rebecca Hailey that is she wanted her to leave that she, Plaintiff, would leave. Compare to Plaintiff's police report—Exhibit F—which reads that "she [Plaintiff] said that she didn't have to leave because it was a public place." The inconsistency between Plaintiff's video and Plaintiff's police report lends referential support to an already reasonable inference supporting Plaintiff's allegation that Defendant Officer Rebecca Hailey's aforementioned statement on Plaintiff's police report was false.

79. The proper identity of the complaining party is also material and a prerequisite for any factfinder to determine any other factual dispute. Specific to the context here, Plaintiff's allegation that Defendant Roger Clary misrepresented the title of the property in question would have to overcome at least two hurdles before it could be presented to a factfinder: 1) It would be Plaintiff's word against Defendant Officer Rebecca Hailey's word that Zachary Langford was indeed not the complaining party, and 2) Plaintiff had no clue as to who the actual complaining party was.[5] The inconsistency between the complaining party listed on the call for service report—Exhibit C—and the complaining party listed on Plaintiff's police report—Exhibit F—lends referential support to an already reasonable inference supporting Plaintiff's allegation that Defendant Officer Rebecca Hailey misidentified the complainant on Plaintiff's police report.

---

[5] Plaintiff actually found out the identity of Defendant Roger Clary as a by-product of a Sunshine Request that she wrote aiming at obtaining a record of her boss's call to the non-emergency line.

80. Defendant Officer Rebecca Hailey's fabrication of evidence unnecessarily impeded the truth-seeking process, caused Plaintiff an undue burden in working to demonstrate the truth, was a moving force behind Plaintiff's damages (including apprehension, mental distress, inconvenience, anxiety, feelings of unjust treatment, uncertainty, and emotional pain and suffering), and was not fair.

**WHEREFORE,** Plaintiff respectfully prays that this court:

A.     Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages.

## FOURTH CAUSE OF ACTION
## CONSPIRACY TO DEPRIVE PLAINTIFF
## OF HER CONSTITUTIONAL RIGHTS
### (against Defendants St. Joseph Public Library, Roger Clary and Officer Rebecca Hailey - in her individual capacity)

81. Plaintiff hereby incorporates by reference all forgoing and subsequent allegations as if set forth fully herein.

82. At the time of the conduct complained of herein, Plaintiff had a clearly established right to be free from conspiratorial conduct to deprive Plaintiff of her Constitutional rights.

**Defendant St. Joseph Public Library and Defendant Roger Clary conspired to deprive Plaintiff of her First Amendment rights.**

83. Upon information and belief, on or around noon on January 30, 2018, a librarian of Defendant East Hills Library contacted Defendant Roger Clary and requested that he eject Plaintiff from the external library grounds—including the clearly established designated area—in violation of Plaintiff's First Amendment rights.

84. The joint conspiratorial enterprise referenced in the preceding paragraph involved a meeting of the minds.

85. Defendant Roger Clary's call to the St. Joseph police department—Exhibit A—indicating that "the library called to complain about it [presumably Plaintiff's petitioning]" lends referential support to an already reasonable inference that the aforementioned meeting of the minds did indeed take place.

**Defendant Roger Clary and Defendant Officer Rebecca Hailey conspired to deprive Plaintiff of her right to due process and equal protection under the law.**

86. At some point between Plaintiff's arrest and Defendant Officer Rebecca Hailey writing Plaintiff's police report, Defendant Officer Rebecca Hailey and Defendant Roger Clary conspired to conceal the identity of Defendant Roger Clary, the complaining party.

87. The joint conspiratorial enterprise referenced in the preceding paragraph involved a meeting of the minds.

88. The conspiracy between Defendant Roger Clary and Defendant Officer Rebecca Hailey significantly impeded the due course of justice, as described in the preceding cause of action.

89. Defendant Roger Clary and Defendant Officer Rebecca Hailey, in conspiring to conceal the identity of Defendant Roger Clary acted willfully, wantonly and maliciously to deprive Plaintiff of her Constitutional rights and moreover to retaliate against her for exercising her First Amendment rights.

90. The discrepancy between the complaining party as listed on the call for service report—Exhibit C—and the complaining party listed on Plaintiff's police report—Exhibit F—supports a reasonable inference that the aforementioned meeting of the minds did indeed take place.

91. The video from Plaintiff's cell phone taken on January 30, 2018 of Defendant Roger

Clary refusing to tell her his name—Exhibit D—supports a reasonable inference that the aforementioned meeting of the minds was willful, wanton, and malicious.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A.   Grant Plaintiff any and all applicable nominal, compensatory, general and punitive damages.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT - RETALIATION
### (against Defendant Officer Rebecca Hailey - in her individual capacity)

92.   Plaintiff hereby incorporates by reference all forgoing allegations as though set forth fully herein.

93.   Disagreeing with an officer (as opposed to disobeying), filming an officer in a public place, and requesting an officer's badge number are not crimes, but protected speech/activity.

94.   While Plaintiff contends that any reasonable and prudent officer would have found out to whom the property in question—"the library"—was titled before making an arrest for trespassing, regardless of whether or not Defendant Officer Rebecca Hailey had probable cause or arguable probable cause to arrest Plaintiff, Plaintiff's arrest was retaliatory.

95.   The exact same circumstances and facts were known to Defendant Officer Rebecca Hailey when she first arrived at the East Hills Library and requested Plaintiff's ID as were known to her when she declared that "We're gonna do this the easy way," and arrested Plaintiff.

96.   In between Officer Rebecca Hailey arriving and arresting Plaintiff, the following occurred:

(a) Defendant Officer Rebecca Hailey requested that Plaintiff get off her phone and Plaintiff got off her phone;

(b) Defendant Officer Rebecca Hailey asked Plaintiff for her ID, and Plaintiff gave her Plaintiff's ID;

(c) Defendant Officer Rebecca Hailey asked Plaintiff something to the effect of if she was aware that she could not be at/petition at the library;

(d) Plaintiff expressed disagreement with Defendant Officer Rebecca Hailey's legal theory regarding the Constitutional question outlined in the first cause of action herein;

(e) Plaintiff began to record Defendant Officer Rebecca Hailey;

(f) Plaintiff requested Defendant Officer Rebecca Hailey's badge number and

(g) Plaintiff told Defendant Officer Rebecca Hailey that she would not disobey an order.

97. Defendant Officer Rebecca Hailey arrested Plaintiff after (a) - (g) transpired, as opposed to before they transpired, when the same set of circumstances and facts were known to her. The arrest was in retaliation for (d), (e), and (f)—in retaliation for Plaintiff not cowing to her legal theory, or being bullied into accepting it, in retaliation for Plaintiff recording her, and in retaliation for Plaintiff requesting her badge number (which Defendant Officer Rebecca Hailey never produced).

98. Prior to 97(a) - (f) transpiring, Plaintiff was similarly—indeed identically—situated to herself as to after 97(a) - (f) transpired in terms of the facts and circumstances that would be known to any officer at that time. In between the time that Officer Rebecca Hailey arrived and the time that she arrested Plaintiff, Plaintiff was a physical threat to no one, Plaintiff did not ask anyone to sign her petition, and Plaintiff did nothing other than the facts represented in (a) - (g).

99. Defendant Officer Rebecca Hailey's retaliatory arrest of Plaintiff was neither an acceptable use of Defendant Officer Rebecca Hailey's badge of legal authority nor her pink handcuffs.

100. Arrest was not the only form of retaliation. The material misrepresentation on Plaintiff's police report was also retaliatory and a misuse of Defendant Officer Rebecca Hailey's badge of authority.

101. Plaintiff's exercise of her First Amendment rights—to include not cowing to Defendant Officer Rebecca Hailey's legal theory via disagreeing with her (*not* disobeying), recording Defendant Officer Rebecca Hailey, and requesting Defendant Officer Rebecca Hailey's badge number—was a substantial or motivating factor in Defendant Officer Rebecca Hailey's decision to arrest Plaintiff and subsequently falsify material information on her police report.

102. Retaliatory arrest and false information on a police report which impedes the general course of justice would chill a person of ordinary firmness from exercising their Constitutional rights.

**WHEREFORE**, Plaintiff respectfully requests that this court:

A.    Grant Plaintiff any and all applicable special, general, compensatory and punitive

      damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this court:

A.    Enter judgment declaring that the acts and policies of Defendants as described in this

      complaint violate the United States Constitution, and may not lawfully be enforced or

      repeated in the future;

B.    Enter a judgment declaring that petitioning is core political speech that is protected on the exterior grounds of a public library, regardless of title, and that any restrictions must be narrowly tailored;

C.    Enter a judgment declaring that petitioning is core political speech that is protected on interior sidewalks of public buildings used for public purposes, regardless of title, and that any restrictions must be narrowly tailored;

D.    Enter a judgment declaring that the Library policy on petitioning is facially invalid and impermissibly vague;

E.    Issue a permanent injunction enjoining the Defendants, their employees and agents, and all persons acting under their direction, from lawfully repeating the actions complained of herein;

F.    Grant Plaintiff her any reasonable attorney fees incurred and costs pursuant to 42 U.S.C. 1988 and other applicable laws;

G.    Grant Plaintiff any and all applicable special, general and compensatory damages against Defendant Officer Rebecca Hailey, Defendant Roger Clary and Defendant City of St. Joseph;

H.    Against Defendant Officer Rebecca Hailey and Defendant Roger Clary, punitive damages;

I.    Grant any other relief that this Court would deem necessary and proper.

STACY ARNOLD, Plaintiff

s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com



## East Hills Code of Conduct

In order to ensure a pleasurable shopping experience we ask all visitors to avoid the following:

1. Using obscene or explicit language, gestures and any types of slurs.
2. Threats of violence, fighting and abuse of any kind.
3. Violation of any Federal, State, or City ordinance or law.
4. Wearing clothing which indicates gang membership or to show gang related behavior. Gang related clothing and behavior is determined by information from local Police and Gang Task Force.
5. Possession of any type of weapon or incendiary device, except those carried by law enforcement.
6. Possession of any form of illegal narcotics/drugs or alcohol and/or intoxication.
7. Loitering in groups larger than five (5) persons, sitting on floors, planters, trash receptacles, blocking walkways or storefronts, or congregating in groups in such a way that it impedes traffic flow.
8. Loud or boisterous behavior that would be a disturbance or bothersome to other patrons.
9. Running, horseplay, skating, skateboarding, rollerblading, bicycling or any type of wheeled footwear.
10. Laying on or napping/sleeping within the mall or exterior benches and property.
11. Any form of solicitation without prior written permission of mall management.
12. Failure to wear appropriate clothing and shoes.
13. Damaging, destroying, and removing any real or personal property in or on the property.
14. No pets are allowed with the exception of service animals.
15. Smoking inside the mall or within 15 feet of any building entrance.
16. Parking in fire lanes, designated parking areas, or non-parking sections, erratic or careless driving; parking violators may be subject to tow at vehicle owners expense.
17. Youths 16 years of age and younger must be accompanied by a parent or supervising adult who is at least 21 years of age or older on Friday and Saturday after 5pm.

The above list is not all inclusive and can be modified at any time by East Hills management.

Violation of this code of conduct may result in expulsion from the mall, in addition to any legal solution the center should see fit to exercise.

**East Hills Shopping Center is a private property and no rights shall accrue to the public by virtue of the public's entry into the center or on mall property.**

Revised 1/15



3702 Frederick Avenue St. Joseph, Missouri 64506

Clary003

Approved by the Board of Trustees
of the St. Joseph Public Library on 3/8/2010

## ST. JOSEPH PUBLIC LIBRARY

### Guidelines for Petitioning and Distribution of Literature on Library District Property

Pursuant to the authority granted to the Library District under RSMo § 182.230, this policy establishes reasonable rules and regulations controlling petitioning and distributing literature to employees or patrons on Library District property by individuals herein referred to as Petitioners.

Persons are prohibited from engaging in the personal distribution of literature to library employees and patrons in Library District buildings and grounds except as provided herein. Government agencies that disseminate information in District buildings pursuant to the approval of the Library Director or his/her designee are not engaged in petition or distribution of literature as defined in this policy, and are not subject to the restrictions herein.

Petitioning and distribution of literature is allowed in the following circumstances:

1. Inside a library, petitions are allowed only in the context of scheduled meetings in library meeting rooms. Petitioners may not stand outside the library meeting rooms.
2. Petitioners may stand outside library buildings on Library District property in areas designated by staff, away from entrances, but must not impede traffic, or pursue patrons. Literature may be distributed at locations designated by staff outside library buildings on library property in areas designated by staff, away from entrances, but must be done in a manner that does not impede traffic.

The allowance of any petition or distribution of literature on Library District property as provided hereunder shall not be deemed to constitute an endorsement by the Library District of the content of such petition or distribution of literature.

Any person wishing to appeal or otherwise question the enforcement of a restriction under this policy should be referred to the Library Director or his/her designee.

This policy is not designed to prohibit the initial access of any person to Library District property, and shall be enforced without prejudice or arbitrary distinctions between individuals or classes of individuals.



EXHIBIT
tabbies
C

SJPL000003

# Dillard Store Services, Inc.

1600 Cantrell Road • P.O. Box 486 • Little Rock, Arkansas 72203-0486

**George M. Matteson**
Counsel – Real Estate Department
Telephone (501) 376-5430
Telecopier (501) 399-7502
George.Matteson@Dillards.com

June 7, 2004

**VIA FACSIMILE (816) 279-3953**
**And Regular Mail**

Robert L. Thedinger
3000 Ashland Boulevard
St. Joseph, Missouri 64506

    *Re: East Hills Mall, St. Joseph, Missouri*

Dear Mr. Thedinger:

In accordance with our conversation, enclosed please find two (2) partially executed copies of a License Agreement to permit installation of a statue on Dillard property at the referenced center. If acceptable, please complete the address information for the Licensee and cause the License Agreement to be signed and dated by the appropriate individual and return a fully executed original to me for our files.

If you have any questions or comments, please do not hesitate to call.

Sincerely,

George M. Matteson

GMM/kdm

Enclosure

**EXHIBIT**

D

tabbies®

# LICENSE AGREEMENT

Date:          June 21, 2004

Licensor:      Dillard's, Inc.
               1600 Cantrell Road
               Little Rock, Arkansas  72201
               Attention:  Vice President, Real Estate

Licensee:      St. Joseph Public Library
               927 Felix Street
               St. Joseph, MO  64501

RE:            Five (5) parking spaces on portion of the property owned by Licensor at
               East Hills Mall in Saint Joseph, Missouri, as more particularly shown on
               Exhibit A and Exhibit B attached hereto and made a part hereof (the
               "Premises").

## RECITALS

WHEREAS, Licensee requests permission of Licensor to enter upon the Premises for the sole purpose of installing a bronze statue called "Girl With Dove" (the "Statue") and related first class landscaping to accent the entrance to the St Joseph Public Library at East Hills Mall ("Licensee's Purpose").

NOW THEREFORE, in consideration of the mutual covenants of the parties contained herein, the parties hereto agree as follows:

**1.     Agreement is a License.**  This agreement is a license.  The relationship between Licensor and Licensee is not one of landlord and tenant, but rather one of licensor and licensee.  Licensee's activities upon the Premises or the incurring of other costs with respect to the Premises by Licensee, shall in no way operate to confer upon Licensee any interest, status or estate of any kind other than licensee.  Licensee shall have no recourse against Licensor for any breach hereunder.

**2.     No Additional Purpose.**  Licensee shall not perform any work or use the Premises for any purpose or for any activity other than Licensee's Purpose.

**3.     Compliance with Laws, Rules, and Regulations.**  Licensee will carry out or cause to be carried out Licensee's Purpose at its sole cost and expense and in an orderly

manner in full compliance with all applicable private restrictions and governmental laws, rules, regulations and codes.

**4. Term.** The term of this License Agreement shall commence on the date first written above (the "Commencement Date") and terminate removal of the Statue (the "Termination Date"), unless sooner terminated in accordance with the terms hereof.

**5. Licensee Responsible for Safety and Property.** Licensee's activities on the Premises shall be at its sole risk, and Licensor shall not be responsible for the safety of Licensee, of its agents or employees, or for the condition or loss of any items of personal property stored in the Premises by Licensee (including, without limitation, the Statue).

**6. Maintenance of Premises.** Licensee shall keep and maintain the Premises (including, without limitation, all curbs, walkways, landscaping and the Statue) in a good, clean, first class condition.

**7. Claims of Injury and Damage to Property.** Licensee, by acceptance of the terms hereof, shall be responsible for and shall defend and indemnify Licensor from any and all claims for injury or death of any person or persons and for any and all damage to the Premises or to any other property, arising directly or indirectly from the use or occupancy of the Premises by Licensee, its invitees, agents, contractors, employees or subcontractors.

**8. Indemnification.** Licensee shall defend and indemnify Licensor against any loss, claim, damage, injury or expense arising from any act, omission or failure of Licensee to comply with the terms of this License Agreement or from any act, omission or failure of Licensee to properly carry out its responsibilities and obligations under this License Agreement.

**9. Conditions for Termination of License.** This License Agreement will automatically terminate on the Termination Date. In addition, Licensee or Licensor may terminate this License Agreement at any time by giving the other party 30 days written notice.

**10. Entire Agreement.** This License Agreement contains the entire agreement of the parties and supercedes any prior discussions or negotiations between Licensor and Licensee.

**[Signature Page Follows]**

The parties hereto accept and agree to the terms herein as of the day and year first above written.

**LICENSOR:**

Dillard's, Inc.,
a Delaware corporation

By: _____

James W. Cherry, Jr.
Vice President


**LICENSEE:**

Saint Joseph Public Library

By: _____
Name: Bette L. Tolbert
Title: President, Board of Trustees

**Exhibit A**
(attached)



N.E. CORNER N.W. 1/4
SEC. 11, T57N, R35W

N 89°48'50" E  605.75'
450.82'

184.47'

220.46'

S 44°12'13" W
130.28'

S 45°00'02" E
106.86'

DILLARD DEPARTMENT STORES, INC.
BOOK 2033 PAGE 949

See detail on Exhibit B for Premises

LOT 3
2.26 ACRES±
(98,416 SQ. FT.)

63.92'
N4°20'31"E
98.13'
S45°10'39"E
53.63'

6.41'
N 89°54'26" E

N89°42'02"E
57.49'

LOT LINE IS ALONG BACK
OF EXISTING CURB LINE
S89°54'26"E
208.56'

S00°10'40" W
40.05'

S89°31'02"E
33.95'

180.94'
S 89°55'45" E

STATE PLANE COORD.
MISSOURI WEST ZONE
GRID FACTOR = 0.9996083
N 1,312,811.126
E 2,704,939.184

LOT 2
3.50 ACRES±
(152,659 SQ. FT.)

734·PAGE 625

N00°09'32"E
218.44'

LOT 1
1.51 ACRES±
(65,716 SQ. FT.)

S00°20'37"W
218.14'

BOOK 1734 PAGE 625

LOT LINE IS ALONG BACK
OF EXISTING CURB LINE

S 00°00'24" W  537.04'

C/L WOODBINE  ROAD

233.88'
S89°48'50"W  491.00'

257.12'

TRUE POINT OF
BEGINNING

42.88'
S89°48'50"W

N00°00'24"E
93.50'

FOUND 1/2" REBAR
W/LS #2296 ID CAP

374.75'
S89°48'50"W  414.75'

40.00'

FOUND 1/2" REBAR BENT

FND 1/2" REBAR

R/W

350.00'

**GENERAL NOTES:**

1. THIS SURVEY WAS PERFORMED WITHOUT THE BENEFIT OF A
TITLE REPORT. EASEMENTS AND OTHER CONDITIONS MAY EXIST
AND COULD BE DISCLOSED BY A PROPER TITLE REPORT WHICH
WAS NOT SUPPLIED FOR THIS SURVEY.

2. LOTS ONE AND THREE DO NOT HAVE DIRECT ACCESS TO A
PUBLIC STREET.

PLAT & GRID NORTH

N

**LEGEND**

⊙ = FOUND MONUMENT AS NOTED
● = SET 5/8" X 24" REBAR &
L.S. #1959 ID. CAP

0   25   50
SCALE: 1"= 50'

NORTH BASED ON MISSOURI STATE
PLANE COORDINATE SYSTEM, WEST
ZONE GRID BEARINGS FOR THIS PLAT
OF SURVEY

Frederick (US #169)  Avenue

Stone  Road

East
Hills
Shopping
Center

SUBDIVISION

Belt Highway (US #169)

Woodbine

I-29

Faraon Street

VICINITY MAP
NO SCALE

FARAON   STREET

S89°48'50"W

**Exhibit B**
**(attached)**



## Mary Beth Revels

| | |
|---|---|
| **From:** | Mary Beth Revels |
| **Sent:** | Tuesday, January 30, 2018 1:53 PM |
| **To:** | Maryann Knorr |
| **Subject:** | RE: signatures |
| **Attachments:** | Guidelines for Petitioning & Distribution of Literature.doc |

Shirley called me. The library owns the land where we constructed the library. We must and do allow petitioners on library property. We have the policy "Guidelines for Petitioning & Distribution of Literature" that addresses this.

**From:** Maryann Knorr
**Sent:** Tuesday, January 30, 2018 1:46 PM
**To:** Mary Beth Revels <MRevels@sjpl.lib.mo.us>
**Subject:** RE: signatures

I didn't talk to her and Shirley didn't even know she was out there so obviously she didn't check in with anyone. Not sure how we stand if the mall doesn't allow petitioners and it's on their property? I think Shirley is checking it out.

**From:** Mary Beth Revels
**Sent:** Tuesday, January 30, 2018 12:55 PM
**To:** Maryann Knorr; Shirley Blakeney
**Subject:** RE: signatures

Good grief. Did you let her know where we allow petitioners to be?

**From:** Maryann Knorr
**Sent:** Tuesday, January 30, 2018 12:32 PM
**To:** Mary Beth Revels <MRevels@sjpl.lib.mo.us>; Shirley Blakeney <SBlakeney@sjpl.lib.mo.us>
**Subject:** FW: signatures

She refused to leave so Mall pressed charges for trespassing and the police loaded her in the car and took her away. She was videotaping the whole thing and saying they had no right and it was her right to be there etc.
I have no idea what the petition was for

**From:** Maryann Knorr
**Sent:** Tuesday, January 30, 2018 12:26 PM
**To:** Mary Beth Revels <MRevels@sjpl.lib.mo.us>
**Subject:** signatures

Shirley is at lunch.
There is a woman trying to get signatures out front and going up to our patrons as they get out of their cars and they are complaining as would I.
I called Mall security to see what the Mall rules are on signature getter people (I know that's not the official title, ha)
They said they don't allow it and they'd be right over.
They talked to her and she wouldn't leave so they called the police.
Just want to know what the procedure is.

I know they a right to be out front but not to accoust our patrons.


**EXHIBIT**

E

tabbies

SJPL000001

## East Hills Security Department
## Incident Report

| | | |
|---|---|---|
| **1. Incident Type** Tresspass | | **2. Report Number** 18 - 0630 01 |
| **3. Incident Location** Library | **4. Time/Date of Incident** 1205/ 01-30-2018 | **5. Time/Date of Report** 0630/ 01-31-18 |

**Subject Information**

| Last Name: ( Circle: V ,(S), RP , W ) Arnold | First Name: Stacy | | Middle Initial | Sex F | Race C |
|---|---|---|---|---|---|
| Address | City | State | Zip Code | DOB | Age |
| Social Security Number | Phone Number | Arrested: Yes | Hgt 5'6 | Wgt 125 | Hair/Eyes Bro |

| Last Name: ( Circle: V , S , RP , W ) | First Name: | | Middle Initial | Sex | Race |
|---|---|---|---|---|---|
| Address | City | State | Zip Code | DOB | Age |
| Social Security Number | Phone Number | Arrested: | Hgt | Wgt | Hair/Eyes |

| Last Name: ( Circle: V , S , RP , W ) | First Name: | | Middle Initial | Sex | Race |
|---|---|---|---|---|---|
| Address | City | State | Zip Code | DOB | Age |
| Social Security Number | Phone Number | Arrested: | Hgt | Wgt | Hair/Eyes |

| Last Name: ( Circle: V , S , RP , W ) | First Name: | | Middle Initial | Sex | Race |
|---|---|---|---|---|---|
| Address | City | State | Zip Code | DOB | Age |
| Social Security Number | Phone Number | Arrested: | Hgt | Wgt | Hair/Eyes |

**Vehicle Information**

| Vehicle Make/Model | Color | License Number/State | Towed: |
|---|---|---|---|
| VIN | | Tow Company | Tow Company Phone |
| Vehicle Make/Model | Color | License Number/State | Towed: |
| VIN | | Tow Company | Tow Company Phone |

**Tresspass**

| Tresspass Issued/Ban Length Yes / 1 yr | Photos Taken? | Youth Supervision Violation?   Y or N |
|---|---|---|
| Print Name | Signature: | Date: |

V = Victim    S = Subject/Suspect    RP = Reporting Party    W = Witness

**EXHIBIT**
tabbies
F

| Quantity: | Description of Property: | | Value: |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Stolen Property**

**Narrative**

On Jan 30, 2018 R/o was called by Library worker Maryann concerning complaints she had been getting from people coming to the library and being stopped by a person after getting out of their vehicles and the person wanting them to sign a petition. R/o approached the petitioner and asked her to leave as we did not allow soliciting on Mall property without management approval. She began saying the laws have been changed and she has the right on library grounds as they are public. R/o again asked her to leave and when she wanted names, badge numbers and was almost belligerant R/o called SJPD non emergency and asked for an officer. R/o went back inside Library and Maryann again said they did not approve her to be doing the soliciting. When SJPD arrived R/o turned the situation over to Officers B Hailey and M Kneib. When Ms Arnold kept refusing to leave officer Hailey asked if we wanted to prosecute Ms Arnold, R/o said yes as R/o could tell she was not going to leave. Officer Hailey put restraints on Ms Arnold and took her in the police car. - - - E0R - - -

| Officer Name: | Officer Signature: | Date: |
|---|---|---|
| R C Lary | Roger Clary | 1-31-18 |

2. State all facts which you believe establish that Defendant Clary's conduct as a security guard for East Hills Mall constituted state action as alleged in paragraph 11 of the First Amended Complaint.

**ANSWER:** The external grounds of the East Hills Library, regardless of title, serve a public purpose. Conspiring with a state actor can also constitutes state action.

3. Identify the librarian with whom Defendant Clary made an agreement to have Plaintiff ejected from the external library grounds as alleged in paragraph 83 of the First Amended Complaint.

**ANSWER:** I don't have first-hand knowledge; Maryann based upon the 26 (a) disclosures.

4. Where did this meeting occur between a librarian and Defendant Clary?

**ANSWER:** I do not know.

5. State the date and time of this meeting between a librarian and Defendant Clary?

**ANSWER:** I don't know this either.

6. Were there any witnesses to this meeting between a librarian and Defendant Clary?

**ANSWER:** Nor do I know this.

7. Describe in detail the agreement made between a librarian and Defendant Clary?

**ANSWER:** At this time, I am privy to no such detailed description.

8. What did the librarian say to Defendant Clary with regard to any agreement to have Plaintiff ejected from the external library grounds as alleged in paragraph 83 of the First Amended Complaint?

**ANSWER:** I do not know.

9. What did Defendant Clary say to the librarian with regard to any agreement to have Plaintiff ejected from the external library grounds as alleged in paragraph 83 of the First Amended Complaint?

**ANSWER:** I do not know.

3



EXHIBIT

G

10. Did you witness the making of the agreement between a librarian and Defendant Clary to have you ejected from the external library grounds as alleged in paragraph 83 of the First Amended Complaint?

**ANSWER:**    No.

11. How were you made aware of any agreement between a librarian and Defendant Clary to have you ejected from the external library grounds as alleged in paragraph 83 of the First Amended Complaint?

**ANSWER:**    This is the inference that I drew from Defendant Clary telling me that the Library had called to complain about my petitioning, that I had to leave the library, and that no one had ever been allowed to petition there.

12. After you were arrested, state the date and time that Defendant Clary and Defendant Hailey discussed the alleged concealment of Defendant's Clary's identity as alleged in paragraph 87 of the First Amended Complaint.

**ANSWER:**    I do not know.

13. After you were arrested, where did Defendant Clary and Defendant Hailey discuss the alleged concealment of Defendant Clary's identity as alleged in paragraph 87 of the First Amended Complaint?

**ANSWER:**    I do not know.

14. What did Defendant Clary say to Defendant Hailey with regard to any agreement to conceal Defendant Clary's identity as alleged in paragraph 87 of the First Amended Complaint?

**ANSWER:**    I do not know.

15. What did Defendant Hailey say to Defendant Clary with regard to any agreement to conceal Defendant Clary's identity as alleged in paragraph 87 of the First Amended Complaint?

**ANSWER:**    I do not know.

16. Did you witness the making of any agreement between Defendant Clary and Defendant Hailey to conceal Defendant Clary's identity as alleged in paragraph 87 of the First Amended Complaint?

## INTERROGATORY NO. 2:

To the best of your recollection, please list everything that was stated from Plaintiff to you on January 30, 2018.

## ANSWER:

**Objection. This request is overly broad, unduly burdensome and argumentative because it calls for a narrative response.**

**Without waiving said objection, see the incident report and call for service records previously produced and already in the possession of Plaintiff. See also the purported cell phone video taken by Plaintiff which would include statements made by Plaintiff during part of the incident at issue.**

## INTERROGATORY NO. 3:

Where was Plaintiff standing when you arrived at the scene of the incident referenced in Plaintiff's *First Amended Complaint*?

## ANSWER:

**In the parking lot of the East Hill Mall property.**

## INTERROGATORY NO. 4:

When you arrived at the scene of the incident referenced in Plaintiff's *First Amended Complaint*, to the best of your recollection, was Plaintiff across from Defendant Clary, in front him, or behind him?

## ANSWER:

**Objection. This request is vague and calls for speculation.**

**Without waiving said objection, the persons at the scene were changing positions during the encounter and I did not take measurements or draw a map of the scene or the encounter at issue.**

2



the library parking area from the mall parking area, to include, unless otherwise specified, the easement area and the library parking lot area.

**INTERROGATORY NO. 1:**

What specific objection(s) do you contend that you had to the way that Plaintiff was petitioning, in reference to your denial of this part of paragraph 18 in Plaintiff's *First Amended Complaint?*

**ANSWER: The property is private property and soliciting is not permitted.**

**INTERROGATORY NO. 2:**

In paragraph 25 of Plaintiff's *First Amended Complaint*, Plaintiff has indicated that she was on the phone when Defendant Officer Rebecca Hailey arrived at the scene, and you admitted that you heard Defendant Officer Rebecca Hailey tell her to get off her phone. Did you see Plaintiff on her phone or hear the phone conversation?

**ANSWER: Yes, I saw her on the phone, but did not hear any conversation.**

**INTERROGATORY NO. 3:**

Where were you standing when the Officer's arrived at the scene of the incident referenced in Plaintiff's *First Amended Complaint?*

**ANSWER: In front of the library to the side of the doors as far as I remember.**

2

