**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

STACY ARNOLD,

       Plaintiff,

vs.               CASE NO. 5:19-CV-06137-BP

CITY OF ST. JOSEPH, ST. JOSEPH
PUBLIC LIBRARY, OFFICER REBECCA
HAILEY (in her personal and professional
Capacity) and ROGER CLARY,

       Defendants.

## DEFENDANTS CITY OF ST. JOSEPH AND REBECCA HAILEY'S FIRST INTERROGATORIES TO PLAINTIFF

COMES NOW, Defendants City of St. Joseph and Rebecca Hailey (hereinafter the "Defendants") by and through undersigned counsel, pursuant to Fed. R. Civ. P. 33, and propounds the following First Interrogatories to Plaintiff Stacy Arnold, to be responded to personally, under oath, all in accordance with the Federal Rules of Civil Procedure[1]:

**INTERROGATORY NO. 1**:

State your full name, date and place of birth, Social Security Number, driver's license number (if different) and the issuing State for your driver's license.

**ANSWER**: Stacy Kaye Arnold. 06/10/1985, South Carolina, 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 – 011428658, SC.

---

[1] Combined Interrogatories are served for convenience and economy. If objection is made as to exceeding numerical limits, these requests are withdrawn, and separate sets of Interrogatories from the City and Officer Hailey will be submitted.

EXHIBIT K

**INTERROGATORY NO. 2**:

State your present residence address and the period during which you have resided at said address and list all other addresses at which you have resided during the past ten (10) years and the date of the residence at each.

**ANSWER**: Plaintiff objects to providing a more detailed analysis (to include any documentation) than what follows below as further details are excessively burdensome and in many cases not known to Plaintiff, who did not keep records regarding this matter in case it should one day be the subject of an interrogatory. However, if there is something additional and specific that Defendants want, Plaintiff, without waiving her right to object, invites Defendants to request anything specific they think is relevant. That stated, what follows is a good faith effort to accurately communicate where Plaintiff has been physically located over the past ten years. 01/21/2020 – present: 5000 Emery Avenue, Kansas City, MO. 64136; December 26, 2019 – January 15, 2020: 50 Barberton Road, Lake Worth, FL 33467. December 24, 2019 – December 26, 2019: 1589 Raccoon Road, Mayesville, SC 29104. December 18, 2019 – December 23, 2019: Days Inn & Suites. 1853 Mccoy Road, Orlando, FL. November 3, 2019 – December 18, 2019: 3501 S Atlantic Ave, Daytona Beach, FL 32118. September 25, 2019 – November 3, 2019: 701 S Atlantic Ave, Daytona Beach Shores, FL 32118. July 20, 2019 – September 25, 2019: 925 South Atlantic Ave Daytona Beach, FL 32118. Early & Mid-July, 2019: Maroon Snowmass Wilderness, CO & 1589 Raccoon Road Mayesville, SC 29104; June 8 2019 – June 29, 2019: 5000 Emery Avenue, Kansas City, MO . 64136. May 7, 2019 – June 7, 2019: 2030 W 43rd Avenue, Denver CO 80211. April 14, 2019 – May 7, 2019: 1375 Garfield Street, Denver, CO 80206; April 4 – April 14: Los Padres National Forest (do not remember exactly where or exact travel dates); April 1, 2019 – April 4, 2019: 517 N Soldano Ave, Azusa, CA 91702; February 4, 2019 – April 4, 2019: Joshua Tree National Park,

2

BLM land surrounding Joshua Tree National Park and Eagle Mountain; January 3, 2019 – February 4, 2019: 2725 Lincoln Park Ave, Los Angeles, CA; Early November 2018 – January 1, 2018: Big Bend National Park, TX (Nine Point Draw) & Gila National Forest, New Mexico & 1589 Raccoon Road, Mayesville, SC 29104; Approximately October 9, 2018 – November 6, 2018: Reno, Nevada (mostly Wyndham hotels); Approximately May 13, 2018 – October 8, 2018: 4919 Lima Road, Fort Wayne, IN 46808. Approximately May 1 – May 13: Moab, UT and the surrounding wilderness areas. Approximately March 9 – April 31: Pocatello, ID (mostly if not exclusively Wyndham hotels); January 31 2018– March 8, 2018: 3003 South Vermont Avenue, Independence, MO 64052. January 2, 2018 – January 31, 2018: Kansas City area, address unremembered, same landlord as 2015, different address though; Approximately Mid-December 2017 – January 1, 2018: 1589 Raccoon Road, Mayesville, SC 29104. Early November – Mid-December 2017: Xela, Guatemala, Zona 5. Address Unremembered. Approximately September 2017 – November 2017: National Forest areas surrounding Roanoke and Chantilly, VA. Approximately Mid-June 2017 – August 2017: Appalachian Trail, Georgia, North Carolina, Tennessee; Approximately late February 2017 – Mid June 2017: Quetzaltenango (Xela) Guatemala, Zona 5 ; January 28, February 26, 2017: 4a Calle D12-41, Quetzaltenango, Guatemala. Early January 2017 – Late January 2017: Lake Atitlan, Guatemala. Approximately November 2016 – December 2016: 1589 Raccoon Road Mayesville, SC 29104; Early November 2016: Super 8 in or surrounding Pittsburgh Pennsylvania; Approximately October 2016: Columbia, MO, in an off-brand extended stay, most likely Welcome Inn, 1612 N Providence Rd, Columbia, MO 65292. Approximately Early September 2016 – Early October 2016: Harrisburg, Pennsylvania, Plaintiff is relatively sure she stayed at the HoJo: 473 Eisenhower Boulevard, 1-83, Harrisburg, PA 17111. Approximately Mid-June – Late August, 2016: Denver, CO, Extended Stay America. Early June

2016: Las Vegas, NV, Motel 6; May 2016: Moab, UT & Zion, UT. March – Late April, 2016: Idaho Falls, ID (hotels, most of which Plaintiff believes was spent at 665 Pancheri Drive, Idaho Falls, ID 83402. Mid-November 2015 – Early February 2016, Extended Stay America. 6541 E Frontage Road Merriam KS 66020; Early November 2015: Seattle, WA; Mid to late October 2015: Brinnon, WA; Mid-February 2015 – Mid-October 2015: Eugene Oregon, to include 400 E 32nd Ave, Eugene, OR 97405, 4300 Goodpasture Loop Eugene, OR 97401, and 708 W 6th Alley Eugene Or, 97402; Jan 4  2015 – Mid-February 2015: 3209 East 95th Terrace, KCMO; Late December 2014 & Early January 2015: 1589 Raccoon Road Mayesville, SC 29104 & Welcome Inn Belton, MO. Approximately August 2014 – December 2014: 1217 Needlewood Loop Oviedo, FL 32765; Approximately September 2012 – July 2014: Denver/Aurora, CO, to include 2220 Dallas Street Apt, 12, Aurora, CO 80010, 122 S Joliet Circle, Apartment 207, Aurora, CO 80012, and 761 S Tejon Street Denver, CO 80207; Approximately September 2011 – August 2012: 1217 Needlewood Loop, Oviedo, FL 32765; Approximately 2010 – August 2011: Columbia, SC, 3500 Fernandina Road, Columbia, SC 29210.

**INTERROGATORY NO. 3**:

Were you married at the time of the occurrences as mentioned in your Complaint?  No  If your answer is "Yes," provide your spouse's full name, maiden name and present address.

**ANSWER**: No.

**INTERROGATORY NO. 4**:

For each of your employers during the past ten (10) years, state:

      a.      The name, address and phone number of each employer.

      b.      The date of commencement and termination of employment.

c.    The title of the position which you held and the nature of the work being performed.

d.    If you will do so without an Order, sign the attached authorization which should be attached to the service copy of your Answers to these Interrogatories.

**ANSWER**: Objection to (d) in its entirety. This request asks that Plaintiff give authorization for multiple past employers to produce information that Plaintiff has never seen. It is overly broad and not targeted at specified information. Neither Plaintiff nor Defendants know the contents of Plaintiff's employment records and files.  As such, Defendant's request amounts more to more of a fishing expedition than a request for material that is reasonably calculated to produce admissible evidence. Defendants are welcome to reply with specific things they may be looking for in a personnel record as well as why they feel that information is reasonably calculated to produce admissible evidence and Plaintiff will, without waiving her right to raise any objections, consider any potential relevance of those requests as well as possible alternative means of obtaining the information.

In general, Plaintiff notes that she has included links where possible for job descriptions. Plaintiff is not sure that the same exact description was in effect at the time in which Plaintiff worked for the companies below, but notes that any included descriptions seem more or less accurate to her.

-   December 26 2019 – January 10, 2020: Campaign Director –  FieldWorks LLC. P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

5

- December 18, 2019 – December 25, 2019: Campaign Director – FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- July 17, 2019 – December 18, 2019: Campaign Director – FieldWorks LLC P.O. Box 9897, Washington DC, 20016; P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- Approximately April 2019 – Early June 2019: Canvasser – Ground Organizing for Latinos. 3960 West 44th Ave. Denver, CO 80212. groundcolorado@gmail.com. The only number that Plaintiff has is a personal number of someone who works there, which she objects to giving on the basis of relevance, in addition to the fact that she has provided other valid contact info for the company (address & email address).

- Approximately October 11, 2018 – November 7, 2018: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- Approximately May 14, 2018 – October 10, 2018: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- Approximately March 10 , 2018 – May 1, 2018: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

6

- Approximately January 2, 2018 – March 7, 2018: Canvasser - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldwork.com/jobs/; https://apply.fieldworks.com/; 202-667-4400

- Approximately mid-September 2017 – Early November 2017: Canvasser – Working America – 815 16th Street NW, Washington DC 20016; info@workingamerica.com; 202-637-5137; https://www.workingamerica.org/canvassjobs (Plaintiff notes that she was not fundraising)

- Approximately October 2017: Canvasser – Community Outreach Group - https://www.knockdoors.org/cog-home; 1110 Vermont Avenue W. #300, Washington DC. 20005. 202-742-5878.

- Approximately early November 2016: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldwork.com/jobs/director.asp; 202-667-4400

- Approximately October 2016: Canvasser - Community Outreach Group - https://www.knockdoors.org/cog-home; 1110 Vermont Avenue W. #300, Washington DC. 20005. 202-742-5878.

- Approximately early September 2016 – October 2016: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldwork.com/jobs/director.asp; 202-667-4400

- Approximately early June – late August, 2016: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- Approximately March 3, 2016 – May 1, 2016: Campaign Director - FieldWorks , LLC, P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/director.asp; 202-667-4400

- Approximately November 17, 2015 – February 3, 2016: Affordable Care Act Organizer; Brass Tactics – 1140 Connecticut Ave. NW Suite 800, Washington DC, 20036 – 202-331-1311. Plaintiff notes that the last time (specifics not remembered) she looked on their website, there was a message indicating that the organization was closing its doors.

- Early November 2015: Canvasser; Working America - 815 16th Street NW, Washington DC 20016; info@workingamerica.com; 202-637-5137; https://www.workingamerica.org/canvassjobs (Plaintiff notes that she was not fundraising)

- Late February 2015 – Mid-October 2015: Organizer, SEIU Local 503, 1730 Commercial Street SE, PO Box 12159, Salem, OR 97309. 1-844-503-7348

- Approximately December 19, 2014 – February 15, 2015: Affordable Care Act Organizer – Brass Tactics, 1140 Connecticut Ave. NW Suite 800, Washington DC, 20036 – 202-331-1311.

Plaintiff notes that the last time (specifics not remembered) looked on their website, there was a message indicating that the organization was closing its doors.

- Approximately August 19, 2014 – November 5, 2014. Florida Democratic Party – Field Organizer. Charlie Crist for Governor – Field Organizer PO Box 1067, St. Petersburg FL 33731; 201 S Monroe Street Ste 300 Tallahassee, FL 32301

- Approximately July 2014: Democracy Resources. Canvasser. info@democracyresources.org

- Approximately January 2013 – July 2014. The Blue Bench (formally RAAP). Canvasser and Field Manager. P.O. Box 18951, Denver, CO 80218, 303-329-9922. https://thebluebench.org/about-us/join-our-team.html; position listed at bottom of page. See also https://thebluebench.org/about-us/door-to-door-canvassing.html.

- Approximately October & November 2013. Canvasser. FieldWorks, LLC. P.O. Box 9897, Washington DC, 20016; http://fieldworks.com/jobs/; https://apply.fieldworks.com/; 202-667-4400

- Approximately November 2012 – January 2013 – Fundraiser. Telefund. 1543 Wazee Street, Ste 300 Denver, CO 80202. 303-894-0456. https://www.telefund.com/jobs

- Approximately September 2012 – November 2012. Canvasser. Working America - 815 16th Street NW, Washington DC 20016; info@workingamerica.com; 202-637-5137; https://www.workingamerica.org/canvassjobs (Plaintiff notes that she was not fundraising)
- June 2012 – September 2012: Canvasser. Organize Florida, formerly Organize Now. 134 W Colonial Drive, Orlando, FL 32801. 321-800-2095.

- Plaintiff objects to providing any employment history prior to June 2012 on the basis of relevance (there's no more canvassing/organizing positions).

**INTERROGATORY NO. 5**:

Please identify the name of your employer on January 30, 2018, including its corporate headquarters address and phone number.

**ANSWER**: FieldWorks, LLC. PO Box 9897 Washington DC, 20016-8897. (202) 667-4400. http://fieldworks.com/contact/

**INTERROGATORY NO. 6**:

Please list the name of your immediate supervisor on January 30, 2018 and provide their address and phone number.

**ANSWER**: Alex Fowler. The only phone number Plaintiff has was listed on the unredacted call for service report that was served upon Defendants along with Plaintiff's complaint. (503) 799-7190. Plaintiff does not know his address.

**INTERROGATORY NO. 7**:

Please list your job description on January 30, 2018. If your job description is a written document, please produce a copy.

**ANSWER**: Plaintiff would characterize her job on January 20, 2018 as canvassing, petitioning, collecting signatures. There are current job descriptions for field staff on the FieldWorks, LLC website. While Plaintiff does not know whether or not this description was in effect for her specific position on January 30, 2018, it seems relatively accurate to Plaintiff. http://fieldworks.com/jobs/ & https://apply.fieldworks.com/. FieldWorks, LLC was Plaintiff's employer on January 30, 2018 and their contact information was provided above.

**INTERROGATORY NO. 8**:

Have you lost any time from any employment which you attribute to the incident referred to in the Complaint? If your answer is "Yes," state:

      a.     The cause of such loss of time.

      b.     The number of days lost and the dates.

**ANSWER**: Yes. I did not work on January 31, 2018, February 27, 2018, March 6, 2018, March 7, 2018, for causes attributable to this incident. I think that there were also other dates in early March 2018, but I am uncertain of dates and am not claiming them. On January 31, I did not work as I was in a state of shock and very distressed. I also did not work on February 27, 2018; that is the date that I went to St. Joseph to conduct an investigation as to the title of the property in question. I spent March 6, 2018 in St. Joseph watching the judge in the municipal court and

11

procuring a criminal defense attorney. I missed work on March 7, 2018 due to appearing for my arraignment.

**INTERROGATORY NO. 9**:

If you claim loss of income as a result of the incident described in your Complaint, answer the following:

        a.      State the amount of claimed lost income.

        b.      Explain how the amount is computed.

        c.      Your yearly gross income for the three (3) years prior to the year of the incident referenced in your Complaint, the year of the incident and all subsequent years.

        d.      Attach copies of Federal tax returns for the above years or sign the attached authorization to obtain copies of tax returns, copies of which will be furnished to you.

**ANSWER**: $693.75. My payrate was $18.50/hr for each day that I am claiming. I calculated the income based on 7.5 hour days for simplification purposes, even though I would average and frequently work more than 7.5 hours/day. Not working on January 31, 2018 and February 27, 2018 precluded OT for the hours not worked for a total of $416.25. The wages I lost as a result of not working March 6, 2018 and March 7, 2018 did not preclude overtime wages, for a total of $277.50. As at this time I am only claiming four (4) days of lost wages, I object to providing gross income and/or tax information on the basis of relevance; such a request *may* indeed be reasonably calculated to produce admissible evidence if I had claimed half a year of lost wages, but here I have claimed nothing of the sort.

**INTERROGATORY NO. 10**:

      Itemize any special damages other than lost earnings which you claim:

            a.        Doctor bills.

            b.        Hospital bills.

            c.        Drugs.

            d.        Other special damages.

**ANSWER**: (a), (b) and (c): none at this time. (d) Unfortunately I am uncertain of the category that should be used for other compensation and/or damages that I am requesting. So, without stating that I am sure the appropriate/applicable category is special damages, I claim that I am entitled to compensation for the following:

Westlaw: $828, first year. $885.96, second year, with a third year potentially being necessary depending upon the length of this action

Courier Fees: $450

Fee for Sunshine Request: $42.30

Process Server: $300

Criminal Defense Atty Consultation: $350

Criminal Defense Atty Fees: $1500

Limited Scope Atty Fees (this action):  currently $2250 and expected to increase

Court filing fee: $400

Membership to the LA Law Library: $150

Courtroom 5 Fees (2-year estimate): $600, $900 if a third year is necessary

PACER: currently $315 and expected to increase

Civil Lawsuit Basics Classes & Civil Rights Class at LA Law Library: $50 (receipts), at least $100 (no receipts at this time)

13

**INTERROGATORY NO. 11**:

Are you claiming personal injuries, including psychological or emotional injury, which you allege arose out of the incident described in your Complaint? If your Answer to this Interrogatory is anything other than an unqualified "No," please state the following:

        a.        Describe the injuries which you contend you received.

        b.        Describe those complaints and injuries from which you are presently suffering and describe the complaints and injuries from which you have recovered.

        c.        State the name and address of the persons who have knowledge of your injuries.

**ANSWER**: A) Apprehension, mental distress, inconvenience, anxiety, feeling of unjust treatment, and emotional pain and suffering. B) I am still presently suffering from inconvenience and feelings of unjust treatment. Filing my complaint was helpful to recovering from the other issues. C. Stacy Arnold, Plaintiff. 500 Westover Dr. #11589, Sanford, NC 27330 (mailing address).

**INTERROGATORY NO. 12**:

State the name and address, including street, City and State, of each healthcare provider or healthcare institution, including any mental health care provider or facility, where you have been seen, treated or examined for all injuries for which you are seeking recovery in this action.

**ANSWER**: No such information exists, to any extent that is necessary, I object on that basis.

14

**INTERROGATORY NO. 13**:

Except for this lawsuit, have you within the last ten (10) years made claim or filed suit for damages for compensation for personal injuries? If your answer is "Yes," state for each claim:

> a. Date of claim.
>
> b. Date of injury.
>
> c. Name and address of your attorney, if you had one.
>
> d. Name and address of party against whom the claim was made.
>
> e. Name of other party's insurer.
>
> f. Court or agency where claim or suit was filed, if any.

**ANSWER**: The answer is I do not know. To elaborate, if there was a claim for damages for compensation for personal injury, it was only one, and related to a car accident that occurred in Florida. Based on emails that I have, that I object to producing due to attorney client privilege, and the fact that I am instructed not to forward the communication in the emails themselves, I was represented by Morgan & Morgan. I do not remember or have records of the date of the claim or the date of the injury, although, based on the date of emails, it would have occurred before Friday April 27, 2012. C Douglas Green was the name of the attorney. 20 N. Orange Ave., Suite 1600 Orlando, FL 3280. Phone: 407-420-1414. The name of the party against whom the claim may or may not have been made was Jose Fortes. I do not have records of his address or his insurance company. 1574967 is a number for the case that I found in my emails. I do not think anything was filed with a court, but I am not 100% certain.

**INTERROGATORY NO. 14**:

If you have a statement or statements:

a. Attach a copy of any recital or statement that you have from these Defendants (or anyone believed to be an agent, servant, employee or representative of these parties), whether it be in writing, reduced to writing, stenotype, recorded or otherwise. (If these Interrogatories are served on behalf of more than one party, please answer as to each.) In the case of a court reporter's transcript, Defendant must advance fifty percent (50%) of the cost of same.

Do you have a statement?    Yes ☐  No ☐

Attached?    Yes ☐  No ☐

b. State what, if anything, Defendants (or anyone believed to be an agent, servant, employee or representative of these parties) said to you or any other persons in your presence about the occurrences mentioned in Plaintiff's Complaint.

**ANSWER**: At this time, I do not have a statement (a formal affidavit depicting events) and therefore it is not attached. I am honestly trying to figure out if there is a distinction between things like a police report and written affidavits regarding events when answering this question. To any means that it may be necessary, I incorporate by reference the documents produced in RPD 3 and RPD 10.  If and when I do write a statement I will forward. All things that Defendants have said to me regarding the occurrences in my complaint are referenced in the complaint itself, and incorporated herein.

**INTERROGATORY NO. 15**:

Please list and identify each non-retained expert witness whom you expect to call at trial to provide expert witness opinion testimony, stating as to each such expert their name, address, field of expertise, place of employment, qualifications to give an opinion (if such information is

16

available on the expert's Curriculum Vitae, you may attach a copy thereof), the subject matter on which the expert is expected to testify and the expert's hourly deposition fee.

**ANSWER**: N/A at this time.


**INTERROGATORY NO. 16**:

Please identify by name and address each person from whom you have obtained a statement regarding any of the allegations made in Plaintiff's Complaint. In addition, please state:

      a.    The date of the statement.

      b.    The person who took the statement.

      c.    The form and location of the statement.

      d.    The person presently having custody or control of the statement.

**ANSWER**: No one at this time.

**INTERROGATORY NO. 17**:

State the full names and last known addresses and phone numbers of each person who (do not include yourself or your attorney):

      a.    Witnessed or claims to have witnessed the events of January 30, 2018, as specifically alleged in your Complaint.

      b.    Has personal knowledge or claims to have personal knowledge of the nature and extent of any alleged injury to you as a result of the event on January 30, 2018, as specifically alleged in your Complaint.

**ANSWER**: A. Stacy Arnold. 500 Westover Dr. #11589, Sanford, NC 27330 (mailing address) 803-428-7024; Rebecca Hailey, 1100 Frederick Avenue, St. Joseph, MO; 3702 Frederick Avenue, St. Joseph, MO; Zachary Langford, 3702 Frederick Avenue, St. Joseph, MO; Officer Kneib, 1100

Frederick Avenue St. Joseph, MO. In addition, the following individuals may have witnessed the events of January 30, 2018, based on SJPL's disclosures: Maryann Knorr and Sara Whitten: SJPL 502 N Woodbine Rd, St. Joseph, MO 64506, (816) 236-2136. B. Stacy Arnold. 500 Westover Dr. #11589, Sanford, NC 27330 (mailing address) 803-428-7024

**INTERROGATORY NO. 18**:

Have you ever pled guilty to or been convicted of a felony, misdemeanor and/or municipal ordinance violation?   No  If your answer is "Yes," for each plea or conviction, state:

      a.      The nature of the offense.

      b.      The date and jurisdiction or court in which you pled guilty or were convicted, including the applicable case number.

**ANSWER**: No, premising that traffic violations are not municipal ordinance violations.

**INTERROGATORY NO. 19**:

Other than Uniform Citation number 150081960 referred to in your Complaint, have you ever been arrested or charged with or plead guilty or been convicted of a felony, misdemeanor and/or municipal ordinance violation? No  If your answer is "Yes," for each arrest or charge, state:

      a.      The nature of the offense.

      b.      The date and jurisdiction or court in which you were charged, and/or pleaded guilty or were convicted, including the applicable case number.

**ANSWER**: No

**INTERROGATORY NO. 20**:

Did you consume any alcoholic beverage of any type, or any sedative, tranquilizer or other drug, medicine or pill at any time on January 29 or January 30, 2018? No If your answer is "Yes," then identify the beverage or drug consumed, the quantity consumed, the time when consumed and the location where consumed.

**ANSWER**: No

**INTERROGATORY NO. 21**:

Please list any liens or subrogation interests, (including the asserting entity and the current amount) which you believe may be applicable to any recovery that might be received on behalf of the plaintiff in this case. (This interrogatory is intended to include, but not be limited to, ERISA liens, attorney's liens from any other case, hospital or doctor liens, Medicare and Medicaid liens.)

**ANSWER**: Nothing that I am aware of.

**INTERROGATORY NO. 22:**

Please state all factual bases for your contention that "Plaintiff has suffered the loss of First Amendment freedoms and irreparable harm. Defendants' policies and actions against Plaintiff and her speech have a chilling effect on the Free Speech rights of Plaintiff and others not before this Court," as stated in your Complaint, specifically as to Defendant City of St. Joseph or Defendant Rebecca Hailey

**ANSWER:**

On or around noon on January 30, 2018, Plaintiff was positioned on the exterior grounds of the East Hills Library, a library within the St. Joseph Public Library branch. She was

circulating a petition registered with the state of Missouri to raise the minimum wage. Plaintiff asked patrons entering and exiting the library if they would like to sign her petition, while not positioning herself as to block the ingress or egress of patrons. Plaintiff was petitioning the way that she always does: she would smile and greet people when she saw them, and then would approach them, casually but non-threateningly—as though she were approaching a friend—and tell them about the petition.

If anyone indicated that they were not a registered voter, had already signed the petition, did not support the petition, or wanted Plaintiff to go away, Plaintiff smiled at them and told them to have a good day. At no time did Plaintiff cause crowds to gather. As foot traffic was fairly limited, Plaintiff did ask some individuals in their cars in the single-row parking lot facing the library. Plaintiff did this by positioning herself about five (5) feet from people in vehicles and smiling, holding up the petition, and making eye contact. If the occupant of a vehicle rolled their window down, Plaintiff would ask him or her to sign her petition. At no time did Plaintiff block or impede vehicular traffic.

Plaintiff had petitioned in front of the library the preceding Saturday with no problems whatsoever. At no point on the preceding Saturday was she approached by an employee or agent of the Library with a request that she stop petitioning or amend any aspect of how she was petitioning.

Shortly after Plaintiff had begun petitioning on January 30, 2018, a mall security vehicle arrived. Two individuals were inside of the vehicle. One individual (later identified via Sunshine request as Defendant Roger Clary) told Plaintiff that she could not petition at the library. Upon information and belief, these individuals arrived per the complaint of a librarian.

Neither Defendant Roger Clary nor the individual accompanying him expressed any complaint or concern about the way Plaintiff was petitioning. Neither or them asked Plaintiff to acquiesce to any type of petitioning restriction. Neither of them informed Plaintiff that there was a designated area or asked her to remain in or move to said area. Neither of them asked Plaintiff

to stop talking to people in their cars. Neither or them referred Plaintiff to the library director or her designee. Neither of them mentioned any adequate, alternative locations from which Plaintiff could petition. Neither of them differentiated property belonging to the library and property belonging to the mall. On the contrary, Defendant Roger Clary told Plaintiff that the librarian had called to complain about Plaintiff's petitioning, that the mall owned the entire library grounds and that no one had ever been allowed to petition there.

Before the incident complained of herein transpired, Plaintiff had googled, "Can I petition in front of a public library?" and the first result linked her to <u>Groene v. Seng</u>[2] WL 5680261 (D. Neb. 2006), which she had read. Like any reasonable person reading that decision, Plaintiff rightfully believed that she had a right to petition in front of the library.  She rightfully pointed out to the then-nameless security guard—Defendant Roger Clary—that she had a First Amendment right to petition in front of the library. She told him that if he thought otherwise that he would need to call the police and have them make a determination.  She also told him that if the police agreed with him that she would get the badge number of the officer and leave.

The then-nameless security guard, Defendant Roger Clary, became irritated. Plaintiff told him that if she were at the mall she would happily leave, to which Defendant Roger Clary argued that the library was no different than the mall. Plaintiff Stacy Arnold and Defendant Roger Clary verbally disagreed with each other over at least two Constitutional questions: 1) whether or not petitioning in front of a public library is protected by the First Amendment and 2) whether or not petitioning in front of a public library with private ownership is protected by the First Amendment. Notably, Plaintiff Stacy Arnold and Defendant Roger Clary did *not* verbally disagree over whether or not confining petitioning to a designated area in front of a library was a permissible restriction under the First Amendment, as Defendant Roger Clary made Plaintiff aware of no such designated area, claiming, once again, that the mall owned the entire library and that no one had ever been allowed to petition there.

_____

Defendant Roger Clary called the police. Plaintiff Stacy Arnold then called her boss, who, at Plaintiff's request, also called the police. Plaintiff then asked the then-nameless security guard—Defendant Roger Clary—for his name so that she could follow up regarding the incident, as Plaintiff had a suspicion that he was not being truthful, and he refused to tell her his name. Plaintiff recorded the Defendant security guard refusing to tell her his name.  Plaintiff was out of earshot of mall security and on the phone with her boss when two officers arrived. Defendant Officer Rebecca Hailey stepped out of her vehicle. "Get off your phone," she commanded Plaintiff, and Plaintiff got off her phone, without argument and without question. Defendant Officer Rebecca Hailey then dramatically asked Plaintiff "What are you doing, on private property?" and immediately followed this question with a command for Plaintiff to "give me your ID."  And Plaintiff walked forward towards Defendant Officer Rebecca Hailey to give her Plaintiff's ID, without argument and without question. Defendant Officer Rebecca Hailey then asked Plaintiff something to the effect of if she was aware that she could not petition at the library, and to this Plaintiff did not agree.  Plaintiff then rightfully stated that she was "aware that this a public forum." Plaintiff recorded the interaction from this point onward until her phone was unlawfully seized. Defendant Officer Rebecca Hailey then responded with "it's actually not," at which point Plaintiff vocalized that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the defendant officer's badge number, and indicated that she, Plaintiff, would not disobey an order.

Defendant Officer Rebecca Hailey then alleged that Plaintiff was trespassing because the security guard had already asked her to leave. Plaintiff repeated her request for the badge number of the defendant officer. Defendant Officer Rebecca Hailey did not provide Plaintiff with her badge number. Instead, she said, "we're gonna do this the easy way." She then turned directly to  Defendant Roger Clary and asked him if he wanted to prosecute for trespassing.  Defendant

22

Roger Clary said "yeah," and Defendant Officer Rebecca Hailey said "perfect," and then she proceeded to put Plaintiff in pink handcuffs that resembled a sex toy.

Defendant Officer Rebecca Hailey did not, at any time, distinguish between property belonging to the library and property belonging to the mall. She did not make Plaintiff aware of any designated area and/or ask Plaintiff to move to or remain in said area. And she certainly did not inform Plaintiff of any adequate, alternative areas in which she could petition or discuss public questions.

While Defendant Officer Rebecca Hailey was giving Plaintiff a free ride to the Buchanan County Jail, she raised her voice, and, with a tone of anger, indicated that petitioning in St. Joseph was becoming "a really big problem." "Are there more of y'all?" Defendant Officer Rebecca Hailey asked the handcuffed Plaintiff, as though the Constitution were a dead letter, and petitioning were an act of civil disobedience. But all of this was not enough for Defendant.

Instead of reporting the facts of the incident thus far complained of herein as they transpired, Defendant Officer Rebecca Hailey cooked up her own alternative version of events. Plaintiff's police report contains at least two counts of material misrepresentation.

(a): Defendant Officer Rebecca Hailey wrote that Plaintiff "immediately became verbally combative with officers and said she didn't have to leave because it was her First Amendment right." While Plaintiff indeed *expressed disagreement* with the Defendant Officer over the library's status as a public forum, she *obeyed* the Defendant Officer's every command. Plaintiff did *not* tell Defendant Officer Rebecca Hailey that she didn't have to leave, nor did Plaintiff think that would have been a good strategy to help her cause. As stated above, Plaintiff made it clear that if Defendant Officer Rebecca Hailey wanted her to leave that she would leave, requested the badge number of Defendant, and said that she would not disobey Defendant's order. Moreover, far from "immediately becom[ing] verbally combative with officers," Plaintiff *obeyed* the orders of the responding officer: she got off of her phone when told to do so by Defendant Officer Rebecca Hailey and she gave Defendant Officer Rebecca Hailey her identification as instructed, without argument and without question.

(b): Defendant Officer Rebecca Hailey also wrote that Zachary Langford—not the then-nameless security guard—was the one who made the complaining call to dispatch, as well as the one who said that he wanted to prosecute for trespassing. In actuality, the security guard who refused to tell Plaintiff his name, Defendant Roger Clary, is the one who called dispatch as well as the one who indicated that he wanted to prosecute for trespassing.

Plaintiff was charged with violating the St. Joseph City Code Ordinance 20-51. The ordinance reads as follows: "Trespass. (a) A person commits the offense of trespass if he enters or remains unlawfully upon real property of another. The fact that a person has no intent to enter unlawfully or remain unlawfully is no defense to this section. (b) A person enters unlawfully or remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. (c) Trespass is a misdemeanor. (Code 1969, § 16-140(b)(5); Gen. Ord. No. 834, § 1(16-48), 11-13-90) State law reference(s)--Similar provisions, RSMo 569.010(8), 569.150."

The "victim" that was listed on Plaintiff's police report was none other than society. While the freedom of speech does not depend upon the popularity of said speech, or the likelihood that said speech will result in social change, if "society" can reasonably be defined to include the electorate of Missouri, 62% of them, like Plaintiff, also believed that working people deserve more, and voted to approve the measure; and, partially because of the petitioning of Plaintiff and others, the government was responsive to the people, and a change that was desired by the people was secured by peaceful means. Yet this same "society" is listed as a victim on Plaintiff's police report, even though Plaintiff was engaging in core political speech in front of a public library, the most profoundly compatible place imaginable with discussing such important public questions.

The East Hills Library was not listed on the police report. The East Hills Mall and the East Hills Library have separate addresses. The address of the East Hills Mall is 3702 Frederick Ave, St. Joseph, MO 64506. The address of the East Hills Library is 502 N Woodbine Rd, St. Joseph, MO 64506.

24

There is a sidewalk that runs parallel to the entrance of the East Hills Library.

Although it extends far beyond the front library doors, the sidewalk has a beginning and an end. In front of the sidewalk is a single row of parking spaces, in front of the spaces is a vehicular pass-through that cars must utilize to access the library, and on the other side of the vehicular pass-through sits the mall parking lot. A statue of a girl with a dove surrounded by sidewalk now stands in place of what was once five parking spaces in the single row of spaces in front of the library. The sidewalk surrounding the statue is intertwined with and physically indistinguishable from the sidewalk that is parallel to the library. There are four benches, two to the right and two to the left of the statue. Between the statue and the sidewalk are rocks. There was, at the time of Plaintiff's arrest, and on January 2, 2019, a sign in the rocks that read: "Rock Garden/Take a rock for inspiration/Share one for motivation/or/ Leave a rock to help the garden grow!" Messages as well as artwork were displayed on some of the rocks in the garden. There is a plaque in front of the statue that reads: "Girl With Dove/Artist: Tom Corbin/Generously donated to the St. Joseph Public Library by the Bradley Charitable Trust and the William T. Kemper Foundation Commerce Bank, Trustee." According to Google maps, public bus stops 13 and 19 are located in front of the statue.

Although Defendant Roger Clary told Plaintiff that the East Hills Mall owned the entire library grounds, this was misrepresentation, most likely malicious misrepresentation. Upon information and belief: (a) The public library itself owns the property from and including the parallel sidewalk (not to include the parts of the sidewalk to the front, right and left of the statue).

The East Hills Mall owns the parking spaces. (c) An area where five parking spaces used to be is owed by the mall with an easement granted to the library for the purpose of the installation of a statue and related landscaping. Plaintiff was standing in the easement area when she was arrested.

The library had a published policy on petitioning and the distribution of literature at the time of Plaintiff's arrest. This policy indicated that petitioning was allowed in undifferentiated "areas designated by staff." It also indicated that petitioners were "not to pursue patrons." The policy was once again revised/edited on July 8/23/2019. Among the edits are the inclusion

of "public assembly" and a shift in the location of the designated area at the East Hills Library.

Neither Defendant Roger Clary nor Zachary Langford made Plaintiff aware of any distinction in property ownership. Nor did either of them ask Plaintiff to move to a designated area; Defendant Roger Clary claimed that the mall owned everything and told Plaintiff that no one had ever been allowed to petition at the library. To the best of Plaintiff's recollection—and certainly unbeknownst to her at the time—she moved back and forth several times between the publicly owned sidewalk that served a public purpose and the physically indistinguishable privately owned sidewalk that served a public purpose/easement. Once, as Plaintiff traversed from the public property to the private property/easement, Defendant Roger Clary gave her the following "command": "you just stay right there," he said smugly. In between the arrival of mall security and the police, Plaintiff recalls asking two people/parties to sign her petition. To the best of Plaintiff's recollection, both of these asks were made on library property (on the publicly owned sidewalk), and at least one of them resulted in a citizen signing the petition. As stated in paragraph 24, the only recollection that Plaintiff has of stepping onto the parking lot after the arrival of mall security was to accept the card of Zachary Langford.

There could not be a place more profoundly compatible with discussing public questions and petitioning than on the external grounds of a public library. Given former Chief Justice Charles Evans Hughes's observation that it is through free discussion that changes may be obtained through peaceful means, the area around the statue itself is also uniquely and profoundly compatible with discussing public questions: according to the sculptor of the statue, it was originally dedicated to the United Nations as a symbol of peace. Moreover, the interactive rock garden, that seems to invite passersby to contemplate meaning, further rings of profound compatibility with discussing public questions.

**INTERROGATORY NO. 23:**

Please identify the educational institution's name and physical address where you have attended any legal courses, including but not limited to, the civil lawsuit basics classes and the civil rights class as referenced in your Amended Complaint, and execute the attached Authorization to Release Educational Records.

**<u>ANSWER:</u>** I never claimed to have taken my civil lawsuits basics classes at an educational institution. I took them at the LA public law library. Main Branch: 301 N 1st Street Los Angeles, CA 90012. Torrance Branch: 825 Maple Ave # 110, Torrance, CA 90503. To any extent that is necessary, I object to the producing the authorization to release educational records in that it is inapplicable.

Respectfully Submitted,

STACY ARNOLD, Plaintiff

s/Stacy Arnold

Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

Case 5:19-cv-06137-BP   Document 85-11   Filed 10/19/20   Page 28 of 28