IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STACY ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-CV-06137-BP ) ) |
| CITY OF ST. JOSEPH, ET AL., | ) ) |
| Defendants. | ) ) |

### DEFENDANT ST. JOSEPH PUBLIC LIBRARY'S SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I.  Nature of the Matter.**  Plaintiff's sole remaining claim in this action against the St. Joseph Public Library (hereinafter "Library") is a challenge to the constitutionality of the Library's Policy for Public Assembly and Petitioning and Distribution of Literature on Library District Property (hereinafter "the 2019 Policy") that the Library enacted on July 23, 2019.  See Order and Opinion Granting In Part and Denying In Part Defendant St. Joseph Public Library's Motion to Dismiss (ECF No. 50), p. 10.  Specifically, Plaintiff alleges that the Policy "is/was not narrowly tailored to serve a cognizable, much less compelling/significant government interest, nor is it reasonable" and that the policy is "impermissibly vague" by stating that petitioners "must not pursue patrons".  First Amended Complaint (ECF No. 19), p. 19, ¶ 54.  For the reasons set forth herein below, the Library is entitled to summary judgment on Plaintiff's sole claim for declaratory and injunctive relief based upon Plaintiff's allegation that the Library's Policy for Public Assembly and Petitioning and Distribution of Literature on Library District Property violates the First and Fourteenth Amendments to the United States Constitution.

**II.  Statement of Uncontroverted Material Facts.**

Pursuant to Fed.R.Civ.P. 56 and L.R. 56.1, the Library states that the following facts are

1

uncontroverted based upon the pleadings, discovery responses, and affidavits[1]:

1. The St. Joseph Public Library is a government subdivision of the State of Missouri. R.S.Mo. § 70.210; First Amended Complaint (ECF No. 19), p. 3, ¶ 9.

2. The Library is governed by its duly elected Board of Trustees. R.S.Mo. § 182.010, *et seq*.; see also Exhibit 1 to the Affidavit of Mary Beth Revels, p. 1, ¶ 3, attached hereto as Exhibit A.

3. The Library's Board of Trustees adopted its current Policy for Public Assembly and Petitioning and Distribution of Literature on Library District Property on July 23, 2019. See Exhibit 2 to the Affidavit of Mary Beth Revels, p. 1, ¶¶ 4 & 5.[2]

4. The 2019 Policy states, "those engaged in … Petitioning, shall be required to stand outside library buildings on SJPL property in areas designated by staff, away from entrances, and must not impede traffic or pursue patrons." See Exhibit 2 to the Affidavit of Mary Beth Revels, p. 1.[3]

5. The 2019 Policy states, that "[i]f an individual engaged in…Petitioning…pursues patrons, he or she will be asked to follow the guidelines contained in this policy. If the guidelines are not followed, the individual will be asked to leave the premises." Exhibit 2 to the Affidavit of Mary Beth Revels, p. 1.[4]

---

1 These facts are admitted solely for purposes of summary judgment and should not be deemed admissions for purposes of trial. Wright, Miller & Kane, Fed. Prac. & Proc. ' 2722 at 48.
2 Plaintiff attached the 2019 version of the Library's Policy for Public Assembly and Petitioning and Distribution of Literature on Library District Property as Exhibit R to her First Amended Complaint (ECF No. 19-18). Thus, the Court may take judicial notice of the policy as well as any information contained therein that is not subject to a reasonable dispute. See Fed.R.Evid. 201; Lustgraaf v. Behrens, 619 F.3d 867, 885 (8th Cir. 2010); Podraza v. Whiting, 790 F.3d 898, 837 (8th Cir. 2015).
3 Id.
4 Id.

2

6. The 2019 Policy states that "[t]his policy…shall be enforced without prejudice or arbitrary distinctions between individuals, classes of individuals, or the opinions being expressed". Exhibit 2 to the Affidavit of Mary Beth Revels, p. 1.[5]

7. The 2019 Policy states "the following locations may be used by individuals or groups who desire to engage in … Petitioning on SJPL property…An area of eight squares of concrete halfway between the statue garden and the front door. The nine squares are between the pillars. Petitioners…should not be on the sidewalk in front of the pillars or the ten squares of concrete directly in front of the entrance. Petitioners…may not impede entrance into the library. Please see picture before for clarification. The green area is the area where petitioners should stand." Exhibit 2 to the Affidavit of Mary Beth Revels, p. 2.[6]

8. The 2019 Policy provides a colorized color-coded image depicting the area in which petitioners may and may not stand. Exhibit 2 to the Affidavit of Mary Beth Revels, p. 2.[7]

9. Plaintiff's only alleged concrete injury stems from events that occurred prior to the enactment of the 2019 Policy. See generally, First Amended Complaint (ECF No. 19); Plaintiff's Answer to Interrogatory No. 22 of Defendants City of St. Joseph and Rebecca Hailey's First Interrogatories to Plaintiff, pp. 19-26, attached hereto as Exhibit B.

10. Plaintiff testified that to the best of her recollection, the only occasions she has canvassed for petitions at the Library was in 2018 and 2020. Deposition of Stacy Arnold, p. 93, ll. 9-12 attached hereto as Exhibit C.

11. Plaintiff testified that when she returned to the Library to canvas for petition in February of 2020, she was able to canvass for petitions. Deposition of Stacy Arnold, p. 97, l. 23 –

---

5 Id.
6 Id.
7 Id.

3

p. 98, l. 2.

12. Plaintiff testified that when she returned to the Library in 2020, she was able to have people sign petitions. Deposition of Stacy Arnold, p. 98, ll. 9-13.

13. Plaintiff testified that on the first day she was at the Library to petition in February of 2020, a Library employee initially indicated a more restrictive area for petitioning outside the Library than what is provided for in the policy, but hat later that day the employee came back out and told Plaintiff that she had made a mistake. Deposition of Stacy Arnold, p. 98, l. 14 – p. 99, l. 25; p. 100, ll. 11-19.

14. Plaintiff testified that on the second or third day she was at the Library to petition in February of 2020, she asked a Library employee named Jacob to show her the area where she was allowed to petition and then she showed him her interpretation of the area. Deposition of Stacy Arnold, p. 100, l. 11 – p. 101 l. 5.

15. Plaintiff testified that there were only two interactions with Library employees in which she was told a different designated spot to petition. Deposition of Stacy Arnold, p. 104, l. 24 – p. 105, l. 3.

16. Plaintiff testified Jacob did not come outside while she was canvassing for petitions and tell her she was in the wrong spot. Deposition of Stacy Arnold, p. 109, ll. 16-19.

17. Plaintiff testified that Jacob did not interfere with her efforts to get people to sign the petition. Deposition of Stacy Arnold, p. 109, ll. 20-23.

18. Plaintiff testified that the second day she was out canvassing in front of the Library in February of 2020, nobody came out and bothered her or interfered with her ability to petitions. Deposition of Stacy Arnold, p. 105, ll. 4-10.

19. Plaintiff testified that the last day she was out canvassing in front of the Library in

February of 2020, nobody bothered her for being in her interpretation of the designated area for petitioning. Deposition of Stacy Arnold, p. 104, ll. 1-8.

20. Plaintiff testified that nobody ever told her that she had to stay in the designated area because of the topic for which she was petitioning. Deposition of Stacy Arnold, p. 110, l. 23 – p. 111, l. 2.

21. Plaintiff testified that she never filed a grievance or complaint or appealed to have the Library's policy on petitioning changed. Deposition of Stacy Arnold, p. 112, ll. 11-16.

22. Plaintiff testified that other than counsel for the Library, she has not had any conversations or interactions with anybody at the Library since February of 2020. Deposition of Stacy Arnold, p. 42, ll. 1-7.

23. Plaintiff testified that she has not returned to the Library since the dates indicated in her sur-reply, which were February 4, 2020; February 6, 2020; February 8, 2020; February 9, 2020; and February 11, 2020. Deposition of Stacy Arnold, p. 44, ll. 1-3; Affidavit of Stacy Arnold (ECF No. 45-1), p. 7, ¶ 23.

24. Plaintiff testified that whether she returns to Kansas City is up in the air. Deposition of Stacy Arnold, p. 69, l. 23 – p. 70, l. 1.

25. Plaintiff testified that she does not have a date scheduled to return to the St. Joseph Public Library to petition, nor does she have a topic or cause to return to the Library to petition for. Deposition of Stacy Arnold, p. 75, ll. 19-25.

26. Plaintiff testified that is not aware of any plans for her employer to send her to Kansas City to petition at the St. Joseph Public Library. Deposition of Stacy Arnold, p. 76, ll. 1-8.

27. Plaintiff testified that the only limitation which she believes is constitutionally

5

permissible in terms of limiting canvassing for petitions is that it must take place a reasonable distance away from the doors. Deposition of Stacy Arnold, p. 138, ll. 10-23.

28. Plaintiff testified that she believes the word "pursue" to mean "follow". Deposition of Stacy Arnold, p. 140, ll. 21-25.

**III. Questions Presented.**

A. Whether Plaintiff's claim against the Library is moot?

B. Whether the Library's 2019 Policy is a content-neutral time, place or manner restriction that is narrowly tailored to serve a legitimate interest?

C. Whether the Library's 2019 Policy is unconstitutionally vague?

**IV. Arguments and Authorities.** The First Amendment does not guarantee access to property simply because it is owned or controlled by the government. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). There are three categories of government property: (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora. Hawkins v. City & County of Denver, 170 F.3d 1281, 1286 (10th Cir.1999). The area at issue in this case is immediately in front of the entrance to the Library and is not a public forum. See United States v. Kokinda, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990)(addressing whether the sidewalk in front of the post office was a traditional public forum). In Kokinda, at 728, 110 S.Ct. 3115, the Court found a sidewalk in front of the entrance to a public building lacked the characteristics of a public sidewalk traditionally open to expressive activity, because it was not a thoroughfare, but a sidewalk constructed "solely to assist public patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." "[T]he location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum." Id. at 728-29, 110

6

S.Ct. 3115. Here, as in Kolinda, the area at issue is directly in front of the front door of the Library.

**A.** **<u>Legal standards applicable to motions for summary judgment.</u>** The primary purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses". <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden to show the absence of a genuine issue of material fact. <u>See</u> <u>Bedford v. Doe</u>, 880 F.3d 993, 996 (8th Cir. 2018). Once the moving party has satisfied its burden, the burden shifts to the nonmoving party who "must do more than raise some metaphysical doubt about the material facts, and cannot rest on mere denials or allegations" <u>Id.</u> (internal citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–248 (1986) (emphasis in original). Here, there is no significant probative evidence tending to support Plaintiff's claims in this case, and summary judgment should therefore be entered in favor of the Library.

**B.** **<u>Plaintiff's claim against the Library is moot because she cannot demonstrate a legitimate personal stake in the outcome.</u>** Article III of the Constitution restricts federal courts' jurisdiction to actual cases and controversies. <u>Chafin v. Chafin</u>, 568 U.S. 165, 171 (2013). Thus, to invoke federal jurisdiction, a plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Id.</u> (internal quotations omitted). "[I]t is not enough that a dispute was very much alive when suit was filed"; the parties must "continue to have a 'personal stake' " in the ultimate disposition of the

7

Case 5:19-cv-06137-BP   Document 89   Filed 10/19/20   Page 7 of 13

lawsuit. Lewis v. Continental Bank Corp., 494 U.S. 472, 477–478 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); some internal quotation marks omitted). To demonstrate a legitimate personal stake in the outcome, the plaintiff must demonstrate that she is immediately in danger of sustaining direct injury that is real and immediate rather than conjectural or hypothetical. Lyons, 461 U.S. at 101. The constitutionality of a statute is evaluated by assessing the manner in which it is implemented and enforced by the governmental officials who administer it. See, e.g., Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."); see also Bronson v. Swensen, 500 F.3d 1099, 1108 (10th Cir.2007) ("[T]he affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute prevents 1020*1020 a `threat' of prosecution from maturing into a `credible' one."); Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192 (3d Cir.1990) ("[T]he current record reflects not only the absence of a threat of enforcement but an express assurance that there will be no enforcement ... of the waived portions of the statute."). Thus, the policy at issue is considered only as it is actually interpreted and applied by the Library.

Here, Plaintiff has never suffered any injury stemming from the 2019 Policy. The Library enacted the 2019 Policy on July 23, 2019. SOF ¶ 3. Plaintiff has not alleged any injuries stemming from activity that occurred after the 2019 Policy was enacted as she able to successfully canvas for petitions in front of the Library in February of 2020. SOF ¶¶ 9-21. Therefore, the uncontroverted material facts demonstrate that Plaintiff has not suffered an actual injury stemming from the 2019 Policy.

Similarly, Plaintiff cannot demonstrate a real and immediate threat of injury stemming

8

from the 2019 Policy. Plaintiff testified that whether she returns to the Library is "up in the air". SOF ¶ 24. Although Plaintiff may have some abstract desire to return one day to petition outside of the Library, Plaintiff testified that she does not have any concrete plans to do so at this time. SOF ¶¶ 25 & 26. Thus, the undisputed material facts demonstrate that Plaintiff has nothing more than a hypothetical possibility of being required to follow the 2019 Policy. This type of conjectural threat of injury is exactly what the mootness doctrine describes as being improper. "[A] plaintiff who challenges a statute on First Amendment grounds may satisfy the injury-in-fact requirement `by showing a credible threat of prosecution or other consequences following from the statute's enforcement.'" Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1182 (10th Cir.2010) (quoting D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir.2004)); see also Salvation Army, at 192 ("[T]he plaintiff must demonstrate that the probability of that future event occurring is real and substantial, `of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting Steffel v. Thompson, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974))). Accordingly, the Library respectfully requests the Court grant summary judgment in its favor on Plaintiff's sole remaining that the Library's Policy is unconstitutional.

**C.     The Library's Policy is a legitimate content-neutral time, place or manner restriction that is narrowly tailored to prevent the impediment of the Library's patrons' ingress and egress.** "Only if the public entity provides 'general access' does the public property become a designated public forum; if access is 'selective,' it is a nonpublic forum." Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School Dist., 640 F.3d 329, 334 (8th Cir. 2011) (citing Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 680 (1998)). A limited public forum may impose restrictions on speech that are reasonable and viewpoint neutral. Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez,

9

561 U.S. 661, 130 S. Ct. 2971, 2975 (2010); see also Snyder v. Phelps, 562 U.S. 443, 456 (2011) (stating that the government can place reasonable and content-neutral time, place, or manner restrictions on First Amendment speech or expression). "The First Amendment ... does not guarantee [speakers] access to every or even the best channels or locations for their expression." Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks, 195 F. Supp. 3d 1065, 1079 (E.D. Mo. 2016), aff'd, 864 F.3d 905 (8th Cir. 2017) quoting Carew–Reid v. Metro. Transp. Auth., 903 F.2d 914, 919 (2d Cir.1990). "A 'time, place, and manner restriction' on speech may be upheld if it 'serves a substantial governmental interest and do[es] not unreasonably limit alternative avenues of communication.'" Rice v. Kempker, 347 F.3d 675, 680 (8th Cir. 2004) (quoting City of Renton v. Playtime Theatres. Inc., 475 U.S. 41, 47 (1986)). Nonetheless, the restriction need not be the least restrictive or intrusive means of accomplishing the legitimate government interest. Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989).

The Library's purpose is to allow its patrons to check out books and other informational resources and materials, not provide an open forum for debate. As a limited public forum, the Library may enact policies that limit the time, place and manner of content-neutral speech. Here, the 2019 Policy provides in pertinent part, "those engaged in … Petitioning, shall be required to stand outside library buildings on SJPL property in areas designated by staff, away from entrances, and must not impede traffic or pursue patrons." SOF ¶ 4. Further, the 2019 Policy provides that "[t]his policy…shall be enforced without prejudice or arbitrary distinctions between individuals, classes of individuals, or the opinions being expressed". SOF ¶ 6.

On its face, the 2019 Policy is content-neutral as it restricts everyone who desires to petition to do so in the designated area—regardless of the opinions being expressed or the subject matter of the petition. Further, the 2019 Policy serves the Library's legitimate significant interest in

10

wanting to restrict individuals from petitioning in a manner that obstructs or reasonably interferes with ingress or egress to the Library.  See Cameron v. Johnson, 390 U.S. 611 (1968) (upholding a statute that prohibited picketing that obstructed or unreasonably interfered with ingress or egress to or from public buildings, including courthouses).

Moreover, the Policy does not substantially prohibit more speech than is necessary to effectuate the Library's interest.  The Policy is clear that those who wish to petition may do so in front of the Library and even provides an image depicting the area in which a petitioner may stand. SOF ¶¶ 7 & 8.  A cursory review of the 2019 Policy's language and the image demonstrates that petitioners may stand within mere feet of the front door—they just cannot stand directly in front of the columns or the door which would impede patrons' ability to access the Library.  See Exhibit 2 to the Affidavit of Mary Beth Revels, p. 2.  Petitioners are more than capable of interacting with the Library's patrons without impeding their ingress and egress to the Library.  Although Plaintiff has a much more limited view on what is constitutionally permissible, the Library does not have to enact a policy that is the absolute least restrictive or intrusive means of prohibiting petitioners from impeding ingress and egress to the Library.  See Ward, 491 U.S. at 798.  Based upon the uncontroverted material facts of this case, the 2019 Policy is not unconstitutional because it is a legitimate content-neutral time, place or manner restriction that is narrowly tailored to prevent the impediment of the Library's patrons' ingress and egress.  Accordingly, the Library respectfully requests the Court grant summary judgment in its favor on Plaintiff's sole remaining that the Library's Policy is unconstitutional.

**D.     The 2019 Policy is not unconstitutionally vague because it states that petitioners "must not … pursue patrons".**  A policy is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

11

prohibits" or it "encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000); Crum v. Vincent, 493 F.3d 988, 994 (8th Cir. 2007).

Plaintiff alleges that the Library's 2019 Policy is unconstitutionally vague because the clause that states that petitioners must not pursue patrons "affords unbridled discretion to city officials and employees in its interpretation". First Amended Complaint (ECF No. 19), p. 19 ¶ 54. Plaintiff's argument is unfounded. The term "pursue" is a common term that is reasonably understood to mean "to follow in an effort to overtake; chase". Webster's New Reference Library (1984), p. 339. In her deposition, Plaintiff even stated that she understood "pursue" to mean "follow". SOF ¶ 28. Any reasonable person of ordinary intelligence should be able to understand that the 2019 Policy prohibits petitioners from following the Library's patrons. There is simply nothing vague about the conduct which the 2019 Policy intends to prohibit. Furthermore, the 2019 Policy does not encourage arbitrary or discriminatory enforcement. The 2019 Policy provides that "[i]f an individual engaged in…Petitioning…pursues patrons, he or she will be asked to follow the guidelines contained in this policy. If the guidelines are not followed, the individual will be asked to leave the premises." SOF ¶ 5. Based upon the foregoing, the 2019 Policy is not unconstitutionally vague. Accordingly, the Library respectfully requests the Court grant summary judgment in its favor on Plaintiff's sole remaining that the Library's Policy is unconstitutional.

**V.     Conclusion.** "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). Based upon the foregoing, the Library is entitled to, and would respectfully request entry of, summary judgment on Plaintiff's sole remaining claim for declaratory and injunctive relief based upon her allegation that the Library's Policy for Public

Assembly and Petitioning and Distribution of Literature on Library District Property violates the First and Fourteenth Amendments to the United States Constitution.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, 300
Kansas City, Kansas 66103
Telephone: (913) 371-3838
Facsimile: (913) 371-4722
E-mail:ggoheen@mvplaw.com


By: /s/ Gregory P. Goheen
    Gregory P. Goheen    #58119

Attorneys for Defendant St. Joseph Public Library

## CERTIFICATE OF SERVICE

    I hereby certify that on the 19th day of October, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Stacy Arnold
500 Westover Drive #11589
Sanford, NC 27330
Plaintiff, *pro se*

Christopher L. Heigele
Steven F. Coronado
Baty Otto Coronado, PC
4600 Madison Avenue, Suite 210
Kansas City, MO 64112
Attorneys for Defendants City of St. Joseph and Rebecca Hailey

/s/ Gregory P. Goheen
