# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| STACY ARNOLD,              ) | |
|                         ) | |
|         Plaintiff,         ) | |
|                         ) | |
| v.                          ) | |
|                         ) | Case No. 19-06137-CV-SJ-BP |
| CITY OF ST. JOSEPH,       ) | |
| ST. JOSEPH PUBLIC LIBRARY,   ) | |
| OFFICER REBECCA HAILEY (IN HER   ) | |
| PERSONAL AND PROFESSIONAL CAPACITY)   ) | |
|                         ) | |
|                         ) | |
|         Defendants      ) | |

## PLAINTIFF'S SUGGESTION IN OPPOSITION TO THE DEFENDANTS' CITY OF ST. JOSEPH'S AND REBECCA HAILEY'S MOTION FOR SUMMARY JUDGMENT.

"The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." <u>Meyer v. Grant</u>, 486 U.S. 414, 421 (1988) (internal quotations and citations omitted).

"The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." <u>Citizens United</u>, 558 U.S. 310, 339 (2010).

"The vitality of civil and political institutions in our society depends on free discussion...it is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected." <u>Terminiello v. Chicago</u>, 337 U.S. 1,4 (1949).

Defendants City of St. Joseph and Rebecca Hailey now move the Court for summary

judgment in their favor on all counts. On January 30, 2018, Plaintiff, who was petitioning to raise

the minimum wage on the external grounds of the East Hills Library, was arrested and ticketed

1

for trespassing, the details of the incident being described with particularity in Plaintiff's complaint. Plaintiff noted at the beginning of her complaint that she was arrested, intimidated and prosecuted for petitioning to raise the minimum wage on a sidewalk and the external grounds of a public library, the most profoundly compatible place imaginable with discussing public questions. Now, Defendants City of St. Joseph and Rebecca Hailey continue with their attempts to intimidate: they have repeated their original fabrications, added new ones, and sought to paint Plaintiff as someone who woke up on January 30, 2018 with no canvassing skills whatsoever and a secret mission to accost library patrons.

The logical consequence of the argument set forth by Defendants is the allowance of a trespassing complainant to *misidentify property without identifying themselves* to someone who is engaged in core political speech and an officer to subsequently *make an arrest and make up a narrative on a police report without identifying themselves or the complainant,* without consequence. At the same time, Defendants advance literally no argument whatsoever to counter Plaintiff's as-applied challenge to the St. Joseph Municipal Code ordinance in question. Defendants cite not one single case that they purport shields their ordinance from Plaintiff's as-applied challenge to the publicly or privately owned sidewalk in question or the exterior grounds of the Library. For the reasons set forth in this memorandum, summary judgment on behalf of Defendants is not warranted, and Defendants motion should be denied.

## CONCISE LISTING OF GENUINE ISSUES OF MATERIAL FACT

1. Whether or not Plaintiff disobeyed Defendant Hailey.

2. Whether or not Defendant Hailey asked Plaintiff to leave the Library.

3. Whether or not Defendant Hailey wrote lies on Plaintiff's police report.

4. Whether or not Roger Clary is a credible witness.

2

5.  Whether or not Plaintiff was petitioning primarily on the sidewalk.

6.  Whether or not Defendant Hailey's animus was retaliatory in arresting Plaintiff.

7.  Whether or not Defendant Hailey's animus was retaliatory in fabricating evidence.

8.  Whether the totality of the circumstances demonstrates that a prudent person would believe that Plaintiff had committed or was committing a crime.

9.  Whether, given the totality of the circumstances, there was evidence that tended to negate the possibility that Plaintiff had committed a crime.

10. Whether a minimal further investigation would have exonerated Plaintiff from her alleged "crime."

## PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.  The East Hills Mall (the "Mall") maintains a Code of Conduct that prohibits any form of soliciting without prior written permission of mall management.

    Plaintiff's response: Admitted.

2.  On January 30, 2018 the East Hill Library, a branch within the St. Joseph Public Library, had established guidelines for petitioning on Library District Property that permitted petitioners to stand outside library buildings on Library District property in areas designated by staff but prohibited petitioners from pursing patrons.

    Plaintiff's response: Admitted. Adding that the areas designated by staff were then unspecified.

3.  Around 12:00 p.m. on January 30, 2018, Plaintiff was "on-the-clock" canvassing for her employer, [redacted], seeking signatures on a petition registered with the state of Missouri to raise the minimum wage. Plaintiff's pay was based on the number of signatures gathered, the more she turned in, the more she made.

3

Plaintiff's response: Controverted slightly. Plaintiff admits that she was on the clock around 12:00 p.m. on January 30, 2018, and that she was seeking signatures on a petition registered with the state of Missouri to raise the minimum wage. Plaintiff further admits that the name of the employer listed by Defendants resembles her employer at the time of the incident on January 30, 2018. Plaintiff also notes that said employer's name is one word, not two, and that the "W" is capitalized. Plaintiff admits that, to the best of her recollection, pay for this particular project had different tiers based on the number of signatures collected. However, the number of tiers was finite (three or four). Collecting significantly more signatures than the top tier did not result in additional compensation. *See Plaintiff Deposition, pp. 163, 3 – 23,* **attached hereto as Exhibit A.**

4. Sara Whitten, a Senior Library Assistant for the Library, was working at the front desk the Library on January 30, 2018.

Plaintiff's response: Admitted.

5. Ms. Whitten received multiple complaints from library patrons being "accosted" by Ms. Arnold as they were getting into or out of their vehicles in the parking lot.

Plaintiff's response: Plaintiff admits the declaration says what it says, but controverts the contents and impressions therein. Plaintiff did not accost anyone, as they were getting into or out of their vehicles or otherwise. *See First Declaration of Stacy Arnold, a copy of which is attached hereto as* **Exhibit B**.

6. Maryann Knorr, currently a Technical Services Specialist for the Library, was also working at the front desk of the Library as a Senior Library Assistant on January 30, 2018.

Plaintiff's response: Admitted.

7. Ms. Knorr also received multiple complaints from library patrons being solicited by Ms.

4

Arnold as they were getting out of their vehicles. The patrons reported that Ms. Arnold would approach their vehicles and follow them after they exited their vehicle in the parking lot.

> Plaintiff's response: Controverted. Plaintiff asked the Library for the content of any complaints in an interrogatory. There were simply no reports of complaints of Plaintiff following patrons in the parking lot after they exited their vehicles or following patrons in general. *See Defendant St. Joseph Public Library's Responses to Plaintiff's Interrogatories at Interrog. No. 6, **attached hereto as Exhibit C.*** Moreover, should "in the parking lot" refer to the location where Plaintiff allegedly followed people, Plaintiff notes that she would have had to have either walked past them to situate herself behind them or forgone smiling and waving to walk around their vehicle in order to strategically situate herself behind a patron's car – Plaintiff did neither of these things and they are not good petitioning strategies. Plaintiff further controverts the content of the declaration and/or complaints in question. *See First Declaration of Stacy Arnold, **attached hereto as Exhibit B** for a description of how she was petitioning.*

8. Maryann Knorr, after receiving several complaints, called Mall Security regarding the Plaintiff to have Mall security handle and assess the situation. Mall Security informed Ms. Knorr that the Mall does not allow solicitors on its property, including individuals gathering signatures for any petition.

> Plaintiff's response: Controverted. When mall security arrived, Roger Clary told Plaintiff that *a librarian* had called to complain about Plaintiff's petitioning, which does not seem entirely consistent with having "Mall security handle and assess the situation." *See Second Declaration of Stacy Arnold, **attached hereto as Exhibit D.*** Nor is letting mall security handle and assess the situation consistent with the *Mall Security*

5

*Incident Report,* **attached hereto as Exhibit E,** which was written by Roger Clary and

states that "R/O [perhaps R/C] went back inside the Library and Maryann again said they

did not approve her to be doing the soliticing [sic]." Plaintiff admits that Ms. Knorr's

declaration says what it says. However, due to the aforementioned inconsistencies,

Plaintiff is unable to admit this paragraph.

9. Mall Security Officers Roger Clary and Zachary Langford arrived near the Library to

address the Library's concerns related to the Plaintiff. When Mall security officers Clary and

Langford arrived, Ms. Arnold was soliciting persons on Mall property in the parking lot.

Plaintiff's response: Controverted. This is simply not true. When mall security arrived,

Plaintiff was not selling anything. She was also not actively petitioning, as there was no

foot traffic at that time. Plaintiff watched mall security drive up as she was standing all

by herself, on the sidewalk, to the left of the statue (when facing the mall). This area of

the sidewalk, while part of the easement, is not on library property. *See Second*

*Declaration of Stacy Arnold,*

**attached hereto as Exhibit D.**

10. Mall Security Officers Clary and Langford approached Ms. Arnold and asked her to leave

the property, as soliciting on Mall property without permission was not allowed.

Plaintiff's response: Controverted. The property that the then-nameless security guard

(Roger Clary) asked Plaintiff to leave was not "the property" but "the library," as,

according to Clary, a librarian had called to complain about Plaintiff's petitioning, the

mall owned the entire library, and no one had ever been allowed to petition there. *See*

*Second Declaration of Stacy Arnold,* **attached hereto as Exhibit D.** *See also Roger*

6

*Clary's Responses to Plaintiff's Interrogatories at Interrog. 6 & 7, **attached hereto as Exhibit F.***

11. Prior to the January 30, 2018 incident, Plaintiff did not obtain deeds or drawings showing property boundaries of the Library and Mall property.

   Plaintiff's response: Admitted.

12. On January 30, 2018, Plaintiff did not know the ownership and boundaries of the Mall and Library property.

   Plaintiff's response: Admitted.

13. On January 30, 2018, Plaintiff was informed by Mr. Clary that she was on property owned by the Mall.

   Plaintiff's response: Plaintiff admits that Mr. Clary told her that she was on property that was owned by the mall. However, she was misinformed rather than informed, as Mr. Clary told her that the mall owned the entire Library grounds and that no one had ever been allowed to petition there. *See Second Declaration of Stacy Arnold, **attached hereto as Exhibit D.** See also Roger Clary's Responses to Plaintiff's Interrogatories at Interrog 6 & 7, **attached hereto as Exhibit F.***

14. On January 30, 2018, Plaintiff had no knowledge of the Library's guidelines for petitioning; Plaintiff believed she had the right to petition anywhere as long as she was not blocking the entrance to the library; Plaintiff believed and believes she should be able to pursue or follow patrons on the external grounds around the Library, *regardless of title,* and require them to tell her they are not interested in her solicitation.

   Plaintiff's response: Controverted in part. Plaintiff admits that, prior to her arrest on January 30, 2018, Plaintiff had no knowledge of the Library's guidelines for petitioning.

7

Plaintiff did and does believe that she had a right to petition anywhere on the external

library grounds, but not the right to block the doors or stand close enough to them to

impede the ingress or egress of patrons. Plaintiff also does not believe that she has a right

to block the ingress or egress of folks from their automobiles, and she did not do this.

Plaintiff *absolutely* believes that she has a right to actively approach people, on the

external grounds of a public library, *regardless of title.* While Plaintiff does not believe

that she has a right to continue to engage, walk with, or follow people who have indicated

they are not interested, she *does* believe that she has a right to approach people, engage

them, and walk with them, as distinguished from requiring people to approach her. *See*

*Third Declaration of Stacy Arnold,* **attached hereto as Exhibit G.**

15. Plaintiff refused to leave, arguing with the Mall Security Officers and stating she would

not leave. Plaintiff instructed Mall Security Officer Roger Clary to call the police to decide if

she had a right to petition at that location before she would leave.

Plaintiff's response: Controverted slightly. Plaintiff told the then-nameless security guard

that she had a right to be at the Library petitioning, and if he disagreed with her that he

would need to call the police. Plaintiff attempted to explain to the then-nameless security

guard that she had a right to be at the Library petitioning, but this discussion was not

fruitful. At the same time, Plaintiff told Roger Clary more than once that if the police

agreed with him that she would leave, including one particular instance after he became

extremely irritated. Plaintiff also requested the then-nameless security guard's—Roger

Clary's—name and he did not provide that information. *See Fourth Declaration of Stacy*

*Arnold,* **attached hereto as Exhibit G.**

16. Mall Security Officer Clary called the St. Joseph Police Department regarding the

Plaintiff, seeking Police assistance with the situation.

    Plaintiff's response: Admitted. A call was also placed on Plaintiff's behalf seeking assistance with the same situation. *See Call for Service Report,* **attached hereto as Exhibit I.**

17. Police Dispatch advised officers that a white female was asked to leave the mall property for soliciting and refused to leave.

    Plaintiff's response: Plaintiff admits that is a reasonable inference to be made from the call for service report but controverts for completeness and failure to represent the totality of the circumstances known to the responding officers at that time. The description section of the call for service report also reads the following: "…also received a call from […] with […] and he advised that she is there with a petition that she wants people to sign and she thinks it is public property – his call back number is […]." *See Call for Service Report,* **attached hereto as Exhibit I.**

18. Two St. Joseph police officers responded to the call and arrived on the scene, including Officer Hailey.

    Plaintiff's response: Admitted.

19. When Officer Hailey arrived at the scene and observed Plaintiff, Plaintiff was located on Mall property.

    Plaintiff's response: Controverted. Defendant Hailey is simply not telling the truth; she alleges that Plaintiff was in the parking lot of the East Hills Mall when she, Defendant Hailey arrived. But Plaintiff was on the sidewalk, not petitioning, talking on her phone, and out of earshot of the mall security guards. For the record, the portion of the sidewalk that Plaintiff remembers standing on is part of the designated area from the 2018 & 2019

9

Library policies. But Plaintiff was certainly unaware of the "significance" of this distinction between different portions of the physically indistinguishable sidewalk when Officer Hailey arrived. *See Fifth Declaration of Stacy Arnold, **attached hereto as Exhibit J.*** Plaintiff also notes that she sent two Sunshine requests to the Saint Joseph PD as well as an RPD to the City of St. Joseph requesting dash cam footage. No footage was received.

20. Defendant Officer Hailey informed Plaintiff that she was trespassing based on the complaint of the Library and Mall Security Officers Clary and Langford.

Plaintiff's response: Plaintiff admits that Defendant Hailey said something similar to that. This is the context: Defendant Hailey commanded Plaintiff to get off the phone and plaintiff got off the phone. Then she asked Plaintiff what she was doing on private property. Before Plaintiff could answer, Defendant Hailey requested Plaintiff's ID. And Plaintiff walked forward to give Officer Hailey her ID, without argument and without question. Defendant Hailey then told Plaintiff something to the effect she was not allowed to petition there, and asked Plaintiff if she was aware of that. Plaintiff disagreed, began filming and said she was aware that the area was a public forum. Defendant Hailey did not agree. Plaintiff, not wanting to argue with the officer further, told Defendant Hailey that if she wanted Plaintiff to leave that she would leave, requested her badge number, and told her that she would not disobey an order. "They ask you to leave and you don't, you're trespassing," argued Defendant Hailey. Plaintiff again requested Defendant Hailey's badge number, with the intent of obtaining the information and leaving on her on accord (premising that Defendant Hailey told her she was free to do so), **just as she had previously indicated to Roger Clary that she would do**. *See*

*Fourth Declaration of Stacy Arnold, **attached hereto as Exhibit G.** See also Plaintiff's recording of the incident, **attached hereto as Exhibit K**; Defendants admission of the recording is **attached hereto as Exhibit L.***

21. Plaintiff, again, refused to leave.

Plaintiff's response: Controverted. Plaintiff specifically told Defendant Hailey that if Defendant Hailey wanted her to leave, that she, Plaintiff, would get her badge number and leave, and that she would not disobey an order. *See Fourth Declaration of Stacy Arnold, **attached hereto as Exhibit G.** See also Plaintiff's recording of the incident, **attached hereto as Exhibit K**; Defendant Hailey's admission of the recording is **attached hereto as Exhibit L.*** At no point did Defendant Hailey ask Plaintiff to leave. The questions that Defendant Hailey directed towards Plaintiff seemed were aimed at getting Plaintiff to agree with the idea that she wasn't allowed to petition in front of the Library. And Plaintiff absolutely did not refuse to leave, and did *not* disobey any order. Moreover, Plaintiff had no indication that she was free to leave, as she was interacting with an officer who appeared upset with her. Neither does Plaintiff recall Defendant Hailey returning her ID. *See Fourth Declaration of Stacy Arnold, **attached hereto as Exhibit G..*** Plaintiff's video, during which she was handcuffed, appears to have been named by Plaintiff's phone according to its timestamp: VID_2018_0130_122513939.mp4. The call for service report contains a number that is very similar to Plaintiff's ID number—one digit is missing—at 12:28:20. *See Call for Service Report, **attached hereto as Exhibit I.***

22. When Officer Hailey asked Mall Security Officer Clary if the Mall wanted to prosecute Plaintiff for trespassing, Clary indicated that the Mall would.

Plaintiff's response:  Plaintiff admits that Roger Clary, not Zachary Langford as indicated

11

on her police report, indicated that he wanted to prosecute for trespassing. Controverted otherwise only in the sense that the mall was not specified. *See Plaintiff's recording of the incident,* **attached hereto as Exhibit K.**

23. Plaintiff was arrested while standing in the area owned by the Mall.

    <u>Plaintiff's response</u>: Admitted. Plaintiff was arrested on the sidewalk that is part of the easement, left of the statue when facing the mall, right of the statue when facing the Library. *See Fifth Declaration of Stacy Arnold,* **attached hereto as Exhibit J.** A footnote here also alleges that "Plaintiff cannot even say for sure whether she was in the parking lot or on the sidewalk when she was arrested." This Plaintiff never indicated. The reference to which opposing counsel is pointing out refers to where Plaintiff was gathering signatures in general. *See Arnold Depo at pp. 179, 4- 17,* **attached hereto as Exhibit A.** Moreover, there is a video which clearly establishes that Plaintiff was arrested on the sidewalk. *See Plaintiff's recording of the incident,* **attached hereto as Exhibit K** *and Defendant Hailey's admission of the recording is* **attached hereto as Exhibit L.**

24. Excessive force was not used during the arrest.

    <u>Plaintiff's response</u>: Admitted.

25. Plaintiff was transported to the police station and issued a City Summons for violation of St. Joseph City Ordinance 20-51(B) Trespass – Public Place.

    <u>Plaintiff's response:</u> Admitted.

26. Officer Rebecca Hailey has never been the subject of any complaint, discipline, claim or lawsuit regarding the performance of her duties in effecting an arrest or investigation of a citizen complaint other than Plaintiff's allegations herein.

12

Plaintiff's response: Admitted.

## **PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS**

1.  On January 30, 2018, Plaintiff was circulating a petition in front of the East Hills Library. *See Call for Service Report,* ***attached hereto as Exhibit I.***

2.  Roger Clary told Plaintiff that a librarian had called to complain about Plaintiff's petitioning, that the mall owned the entire Library and that no one had ever been allowed to petition there. *See Roger Clary's Answers to Plaintiff's Interrogatories at Interrog. 6 & 7,* ***attached hereto as Exhibit F.***

3.  Following the request of Plaintiff, Roger Clary called the police. *See Call for Service Report,* ***attached hereto as Exhibit I.***

4.  Plaintiff told Roger Clary that if the police agreed with him that she would leave. She told him this more than once. *See Fourth Declaration of Stacy Arnold,* ***attached hereto as Exhibit H.***

5.  Plaintiff asked Roger Clary for his name but did not provide that information. *See Second Declaration of Stacy Arnold,* ***attached hereto as Exhibit D.*** *See also a video take by Plaintiff of Roger Clary refusing to tell her his name,* ***attached hereto as Exhibit M.***

6.  Plaintiff found out Roger Clary's name through a Sunshine request. *See Second Declaration of Stacy Arnold,* ***attached hereto as Exhibit D.***

7.  When Officer Hailey arrived, Plaintiff was talking on the phone. She asked Plaintiff to get off the phone and Plaintiff got off the phone. She also asked Plaintiff for her ID, and Plaintiff gave Defendant Hailey her ID. *See Fourth and Fifth Declarations of Stacy Arnold,* ***attached hereto as Exhibits G and I.***

8.  At *no* point did Defendant Hailey ask Plaintiff to leave the Library. *See Fourth*

*Declaration of Stacy Arnold, **attached hereto as Exhibit H.***

9. At *no* point did Defendant Hailey indicate to Plaintiff that she was free to leave. *See Fourth of Stacy Arnold, **attached hereto as Exhibit H.***

10. Plaintiff told Defendant Hailey that if she wanted her to leave that she would leave and that she would not disobey an order. *See Plaintiff's recording of the incident, **attached hereto as Exhibit K** and Defendant Hailey's admission of the recording is **attached hereto as Exhibit L.***

11. Plaintiff requested Defendant Hailey's badge number twice, and Defendant Hailey did not tell Plaintiff her badge number. *See Plaintiff's recording of the incident, **attached hereto as Exhibit K** and Defendant Hailey's admission of the recording is **attached hereto as Exhibit L.***

12. After Plaintiff's second request for Defendant Hailey's badge number, Defendant Hailey, said "Ok. We'll do this the easy way." Then she looked *directly* at Roger Clary and asked if he wanted to prosecute for trespassing. Clary said "yeah." Defendant Hailey said "perfect." Hailey then proceeded to put Plaintiff in pink handcuffs. *See Plaintiff's recording of the incident, **attached hereto as Exhibit K** and Defendant Hailey's admission of the recording, **attached hereto as Exhibit L.** See also Fourth Declaration of Stacy Arnold, **attached hereto as Exhibit H.***

13. Plaintiff's police report indicates that Zachary Langford was the one who indicated that he wanted to press charges for trespassing and the one who called the police. *See Plaintiff's police report, **copies of which are attached hereto as Exhibit N.***

14. The actual person who indicated that he wanted to press charges for trespassing and the one who called the police was Roger Clary, who did not tell Plaintiff his name. *See Defendants City of St. Joseph and Rebeca Hailey's motion for summary judgment at SOF 16 and*

14

*22, **attached hereto as Exhibit O**. See also Fourth Declaration of Stacy Arnold, **attached hereto as Exhibit H.***

**ARGUMENT**

**I.** **EVEN IF THE COURT FINDS THAT DEFENDANT HAILEY HAD PROBABLE CAUSE TO ARREST PLAINTIFF, THIS DOES NOT SHEILD HER FROM LIABILITY FROM COUNT III OR THE TOTALITY OF COUNT V.**

Plaintiff was arrested for a non-violent misdemeanor in which she was no threat to any party. This happened after a call was placed on Plaintiff's behalf to the non-emergency line of the police department asking for their take on the situation, a note about said call was made on the call for service report related to the incident noting that Plaintiff thought the area in question was public property,[1] and Plaintiff indicating to Defendant Hailey that if she wanted Plaintiff to leave that she, Plaintiff, would leave. Finding out who owned the property in question is not tantamount to conducting a mini-trial, and probable cause "does not exist when minimal further investigation would have exonerated the suspect." Kuehl v. Burtis, 173F.3d 646, 650 (8th Cir. 1999). Plaintiff has made no claim whatsoever that an officer's lot is so unlucky as to have to research, decipher and apply "forum analysis" or First Amendment caselaw, and Officer Hailey, in her personal capacity, was not included in Count I, which addresses the constitutional question. But, in the backdrop of *another complaint* made to the police department on behalf of

---

[1] In actuality, Plaintiff herself thought that she could petition on the external grounds of a library, regardless of title. Moreover, the recording Plaintiff obtained of the individual who called the non-emergency line on Plaintiff's behalf did not mention anything about the title of the property. He simply said that he just wanted to make sure Plaintiff was allowed to be at a public library petitioning. *See the phone call on behalf of Plaintiff to the non-emergency line, **attached hereto as Exhibit R.*** This seems to have been interpreted by the non-emergency line operator as a disagreement regarding title.

15

Plaintiff which was interpreted as Plaintiff thinking the library was public property, which was *not* followed up upon, the totality of the circumstances simply does not point to the existence of probable cause. Moreover, as Plaintiff was not a danger to anyone, and there was no assertion from any party that she was, Defendant Hailey, while being in an optimal position to make a retaliatory decision, would certainly not have been unduly hampered by making a minimal further investigation and was certainly not in any kind of position where she would have needed to make a split second decision to ensure anyone's safety.

But, even if Defendant Hailey is found to have had probable cause or arguable probable cause, this does not shield her from Count III or from the totality of Count V (which clearly alleges more than retaliatory arrest). Probable cause does not shield officers from causes of action concerning the fabrication of evidence. Garnett. V. Undercover Officer C0039, 838 F.3d 265 (2nd Cir. 2016). Nor can probable cause shield Officer Hailey from a First Amendment retaliation claim as it pertains to fabricating evidence.

## II.  DEFENDANT HAILEY IS LIABLE FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE FROM RETALIATION FOR EXERCISING HER FIRST AMENDMENT RIGHTS.

"Criticism of public officials lies at the very core of speech protected by the First Amendment. Retaliation by a government actor in response to such an exercise of First Amendment rights forms a basis of § 1983 liability." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002) (internal citations omitted).

The simple fact that the interaction on January 30, 2018 involved an arrest does not preclude a cause of action for retaliating against Plaintiff in another way. See Peterson v. Kopp, 754 F. 3d 594 (8th Cir. 2015) (finding that an officer was entitled to immunity for a retaliatory arrest claim but not a claim for retaliatory use of pepper spray).

Again, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out."

16

Hartman v. Moore, 547 U.S. 250, 256 (2006). This Plaintiff did after Defendant Hailey told Plaintiff something to the effect that Plaintiff wasn't allowed to petition at the Library, and asked Plaintiff if she was aware of that. Plaintiff disagreed. Plaintiff responded that she was "aware that this is a public forum." Plaintiff also requested the officer's badge number and recorded her. And this did not make Officer Hailey very happy. Consequently, it was with a retaliatory animus that Officer Hailey wrote falsehoods on Plaintiff's police report. The fabrications therein were in retaliation for Plaintiff's not cowing to Officer Hailey's legal theory, disagreeing with her, recording her, and requesting her badge number.

The elements of a First Amendment Retaliation claim are as follows: "(1) [that Plaintiff]…engaged in a protected activity, (2) [that Hailey] took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) [that] the adverse action was motivated at least in part by the protected activity." Gonzalez v. Bendt, 971 F.3d 742, 745 (8th Cir. 2020) (internal citations omitted). Disagreeing with an officer, recording an officer, and requesting an officer's badge number are protected activities. False statements on a police report that impede the normal course of justice would chill a person of ordinary firmness from participating in said activities. And Hailey's fabricated statements on Plaintiff's police report were motivated by Plaintiff's speaking out.

**III.    DEFENDANT HAILEY IS LIABLE FOR FABRICATING EVIDENCE.**

Defendants argue that one of the fabrications on Plaintiff's police report is immaterial. Then they argue that the other fabrication is not a fabrication at all, but the truth. In support of their argument that one of Plaintiff's alleged fabrications is not a fabrication at all, Defendants unabashedly and willfully **admit** the fabrication that they claim is immaterial actually happened (*the fact that Defendant Hailey misrepresented the identity of the individual who called the*

*police and who indicated he wanted to press charges for trespassing, Roger Clary).* Mr. Clary was initially a Defendant in this case, the complaint alleging, inter alia, that he conspired with Defendant Hailey to conceal his identity. While the parties stipulated to Mr. Clary's dismissal from the case, Mr. Clary has, of his own accord, re-emerged in the cast.

*Defendant Hailey's concealment of Roger Clary's name was material.*

In Plaintiff's complaint, she alleged that Defendant Hailey had fabricated evidence on her police report by, inter alia, concealing the identity of the person who called the non-emergency line as well as the identity of the person who indicated that he wanted to place charges for trespassing. Plaintiff's police report, written by Defendant Hailey indicates that Zachary Langford called the non-emergency line and indicated that he wanted to prosecute Plaintiff for trespassing. *See Plaintiff's police report, **attached hereto as Exhibit N.*** Plaintiff pointed out that, in reality, the individual who never told Plaintiff his name, Roger Clary, was the individual who called the police *and* the individual who indicated that he wanted to place charges for trespassing. *See call for service report, **attached hereto as Exhibit I.*** Plaintiff pointed to a discrepancy between who was indicated as the caller on the call for service report (Roger Clary) and who was indicated as the caller on Plaintiff's police report (Zachary Langford). In the City and Rebecca Hailey's answer to Plaintiff's complaint, they *denied* that Roger Clary was indeed the one who made the call to dispatch and the one who indicated that he was wanted to place charges for trespassing. *See City of St. Joseph's and Rebecca Hailey's Answer to Plaintiff's First Amended Complaint at ¶ 17, **attached hereto as Exhibit P.*** Now, however, Defendants have had a complete change of heart, as, in their SOF in their motion for summary judgment, they proudly *admit* that Roger Clary was indeed the individual who made the dispatch call and the individual who indicated he wanted to press charges for trespassing. *See City of St. Joseph 's and Rebecca*

Hailey's motion for summary judgment at SOF 16 and 22, **attached hereto as Exhibit O.** As more icing on the conscience-shocking cake, Defendants proceed to argue, in their motion for summary judgment that "the person who made the call is immaterial," and that the proper identity of the person who made the call "would not have any material bearing affecting Ms. Arnold's guilt or punishment." *Id.*

Plaintiff begs to differ. As Plaintiff pled in her amended complaint:

The proper identity of the complaining party is also material and a prerequisite for any factfinder to determine any other factual dispute. Specific to the context here, Plaintiff's allegation that Defendant Roger Clary misrepresented the title of the property in question would have to overcome at least two hurdles before it could be presented to a factfinder: 1) It would be Plaintiff's word again Defendant Rebecca Hailey's word that Zachary Langford was indeed not the complaining party, and 2) Plaintiff had no clue as to who the actual complaining party actually was. *Plaintiff's First Amended Complaint,* ¶ 79, **attached hereto as Exhibit Q.**

Defendants seem to forget that Plaintiff's case was dismissed only five days before her trial was scheduled. Plaintiff, indeed, spent a great deal of time preparing for the trial that never happened. Part of Plaintiff's non First Amendment defense that she had prepared for said trial is that Roger Clary's command was not authorized within the meaning of St. Joseph Code Ordinance 20-51, as he misrepresented the property of the mall, and that no lawful command to leave can or should consist of *the real property of the party in question + more real property that does not actually belong to the party in question. See Seventh Declaration of Stacy Arnold,* **attached hereto as Exhibit S.** Plaintiff respectfully asserts that there is nothing frivolous or immaterial about that argument. Indeed, Clary has since admitted that he did ask Plaintiff to leave the entire undifferentiated Library. *See Roger Clary's Answers to Plaintiff's First Interrogatories, at Interrog. 6 & 7,* **attached hereto as Exhibit F.**

<u>Disputed facts bar summary judgment on Plaintiff's other allegation of fabrication.</u>

It is with this backdrop that Roger Clary now resurfaces as part of the defense to

Plaintiff's other allegation of fabrication of evidence. Plaintiff's police report states that "[o]fficer's [sic] made contact with Stacy Kaye Arnold …[birthdate], who immediately became verbally combative with officer's [sic]. She told us it was her First Amendment right and she didn't have to leave because it was a public place. Security Officer **Zachary Langford** advised he wanted to press charges for trespassing." (emphasis added). *See Plaintiff's police report,* ***attached hereto as Exhibit N.*** The narrative of Plaintiff's police report simply did not happen. Plaintiff also told Defendant Hailey (while recording) that she would leave if Defendant Hailey wanted her to leave, and that she, Plaintiff would leave and would not disobey an order. *See Fourth Declaration of Stacy Arnold,* ***attached hereto as Exhibit G.*** *See also Plaintiff's recording of the incident,* ***attached hereto as Exhibit K***; *Defendant Hailey's admission of the recording is* ***attached hereto as Exhibit L.*** Moreover, prior to the police arriving, Plaintiff told Roger Clary more than once that if the police agreed with him that she would leave. *See Fourth Declaration of Stacy Arnold,* ***attached hereto as Exhibit G.***

But here Defendants do not argue that the fabricated evidence is not material; they argue that, after the arrival of Officer Hailey that Plaintiff "refused to leave, disobeying an order," and that the evidence simply is not fabricated. *See Suggestions in Support of Defendants City of St. Joseph and Rebecca Hailey's Motion for Summary Judgment at pp. 20,* ***attached hereto as Exhibit O.*** Defendants make this argument even though Plaintiff told Defendant Officer Hailey that if she wanted her to leave that she would leave, Defendant Hailey had not returned Plaintiff's ID, and the Plaintiff had no indication that she was free to go. *See Fourth Declaration of Stacy Arnold,* ***attached hereto as Exhibit G.*** To support their argument, Defendants point to a declaration and incident report composed not by the other officer who was at the scene, but by *Roger Clary*, the *actual* individual who placed the call to dispatch and who indicated he wanted

20

to prosecute for trespassing, who was not named on Plaintiff's police report. The same individual

who Plaintiff told that if the police agreed with him that she would leave. The same individual

who told Plaintiff that the mall owned the entire Library, that no one had ever been allowed to

petition there, and moreover refused to tell Plaintiff his name. Clary's declaration is controverted

by Plaintiff's own declarations and video evidence.

### *Plaintiff adequately alleged the requisite elements of a fabrication of evidence claim in her complaint.*

Citing <u>McDonough v. Smith</u>, 139 S.Ct. 2149 (2019), Defendants appear to attempt to

persuade the Court of the elements of a claim for fabrication of evidence. However, the holding

of this case related to when the clock starts ticking for the statute of limitations of a fabrication of

evidence claim, *not* the allowable particulars of a deprivation of liberty or the essential elements

of fabrication of evidence claim itself.  As was specifically stated by the Court:

> [W]e have no occasion to consider the proper handling of a fabricated-evidence claim
> founded on an allegation that the use of fabricated evidence was so egregious as to shock
> the conscience, see, *e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct.
> 1708, 140 L.Ed.2d 1043 (1998), or caused harms exclusively to "interests other than the
> interest in freedom from physical restraint," *Albright v. Oliver*, 510 U.S. 266, 283, 114
> S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring in judgment); see also, *e.g.*,
> W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §
> 119, p. 870 (5th ed. 1984) (Prosser & Keeton) ("[O]ne who is wrongfully prosecuted may
> suffer both in reputation and by confinement"). Accordingly, we do not address what the
> accrual rule would be for a claim rooted in other types of harm independent of a liberty
> deprivation, as no such claim is before us. <u>Id</u> at n.2.

> [T]his case provides no occasion to opine of what the elements of a constitutional
> malicious prosecution action under § 1983 are or how they may or may not differ from
> those of a fabricated-evidence claim. Similarly, while noting that only McDonough's
> malicious prosecution claim was barred on absolute-immunity grounds below, we make
> no statement on whether or how the doctrine of absolute immunity would apply to
> McDonough's fabricated-evidence claim. <u>Id.</u> at n.3.

That stated, should this Court interpret a claim for fabricated evidence to require a liberty

deprivation defined in a manner distinct from the freedom to *not* be subjected to fabricated

evidence in a criminal proceeding, Plaintiff respectfully asserts that if an employee's "good name, reputation, honor or integrity" <u>Maccho v. Gee</u>, 24 F.3d 1037, 1039 (8th Cir. 1994) and "compelled appearance at trial" <u>Gunderson v. Schuleter</u>, 904 F.2d 407, n.4 (8th Cir. 1990) are in the running for qualifying as deprivations of liberty, that Plaintiff's general situation, prosecution, and/or general subjection to "evidence" that impeded the truth-seeking process qualify as well. Plaintiff appeared for her arraignment in early March 2018 and moreover spent significant amounts of time and energy that she would have otherwise spent working and/or living her life dealing with a criminal charge based wholly or partially on fabricated evidence, along with the emotional effects thereof, that was not dropped until five (5) days before her scheduled trial. Plaintiff also declined a plea bargain and was faced with the prospect of spending up to six months in jail for pleading the way she felt *was right*, in the face of, inter alia, not knowing the identity of the person who misrepresented the title of the Library and a police report that cooked up a version of events that did not happen. *See Seventh Declaration of Stacy Arnold,* **attached hereto as Exhibit R.** These are restraints and anxieties "not shared by the public generally." <u>Justices of Boston Municipal Court v. Lydon</u>, 466 U.S. 294, 301 (1984), and Plaintiff respectfully requests leave to amend her complaint should the Court find it deficient in that a deprivation of liberty was not pled with sufficient particularity.

But, Plaintiff respectfully asserts that the affront of fabricating evidence to the due process of law depends not upon jail time, conviction, acquittal, the persistence of the accused or the skill of the fabricator. A cause of action for fabricating evidence calls to the forefront very basic and fundamental notions of fairness. Plaintiff cannot understand how any meaningful conceptualization of ordered liberty could possibly allow officers to make up material evidence; indeed this is liberty deprivation for both the accused and the society that officers are supposed

to serve and protect. And case law has validated this sentiment. "Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process'" Black v. Montgomery County 835 F.3d 358, 370 (3rd Cir. 2016) citing United States v. Agurs, 427 U.S. 97, 104 (1976). Moreover, "no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." Halsey v. Pheiffer, 750 F.3d 273, 292 (3rd Cir. 2014). Finally, no officer "with an IQ greater than room temperature in Alaska" would think it lawful to fabricate evidence on a police report. Hardwick v. County of Orange, 844 F.3d 1112, 1118 (9th Cir. 2017).

## IV. PROBABLE CAUSE AND IMMUNITY HAVE NO BEARING WHATSOEVER ON PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF.

Plaintiff requested declaratory and injunctive relief in Count I and Count II. While Defendants allege that summary judgment is warranted on Counts I, III, and V and support this theory with an argument that Defendant Hailey had probable cause to arrest Plaintiff, they offer no textual support for their implicit assertion that probable cause and/or qualified immunity trumps a claim of declaratory and injunctive relief. No such textual support exists. Even assuming, arguendo, that Defendants are immune from damages, "immunity from damages does not ordinarily bar equitable relief as well." Wood v. Strickland, 420 U.S. 308, 314-315, n.6. Moreover, just last year the Eighth Circuit concluded that "[q]ualified immunity does not apply to a claim for injunctive relief." Hamner v. Burls, 937 F.3d 1171, 1175 (8th Cir. 2019). This conclusion echoes that of other circuits. See Faith Baptist Church v. Waterford Tp., 522 Fed.Appx. 322, 328 (6th Cir. 2013) ("An official's qualified immunity does not preclude declaratory and injunctive relief."). See also Hydrick v. Hunter 669 F.3d 937, 939-940 (9th Cir.

2012) ("Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory and injunctive relief.").

**V.      ST. JOSEPH CODE ORDINANCE 20-51 IS UNCONSTITUTIONAL AS APPLIED TO PEACEFULLY PETITIONING ON THE SIDEWALK IN FRONT OF THE EAST HILLS LIBRARY AS WELL AS THE LIBRARY'S EXTERIOR GROUNDS.**

A case that is factually analogous to Plaintiff's on many levels is the only case cited in any of Plaintiff's filings that she was familiar with at the time of her arrest: Groene v. Seng, No. 06-cv-3153, 2006, WL 5680261 (D. Neb. June 29, 2006). In this case, bans on petitioning were imposed in public areas, including publicly and privately owned sidewalks[2] adjacent to public buildings, such as libraries and DMVs. In granting a temporary restraining order for Plaintiff petition circulators, the court ordered that the restraining order applied to "streets, sidewalks, and walkways adjacent to government buildings of offices locates in strip malls and…." Groene v. Seng, No. 06-cv-3153, 2006, WL 5680261 (D. Neb. June 29, 2006) (restraining order dissolved upon joint stipulation of dismissal). In this case, like Plaintiff's, petitioning seemed to stir very strong emotions in some folks, including Barbara Derrick, whose affidavit was included as an exhibit to defendants opposition to a restraining order. Derrick states in her affidavit that she "felt intimidated by the presence of the petitioners" who were "approaching people who were leaving the building and asking them to sign petitions." Supplemental Index of Exhibits Opposing Motion for Restraining Order at 22, Groene v. Seng, No. 06-cv-3153, 2006, WL 5680261 (D. Neb. June 29, 2006). Then, Derrick tells of being approached by folks who seemed to be part of a decline to sign campaign in the parking lot prior to encountering a petitioner. For

---

[2] The privately owned sidewalks referenced in Groene were sidewalks adjacent to government buildings in strip malls  as well as a stand-alone facility.  Brief in Support of Temporary Restraining Order at 5, n.11 Groene v. Seng, No. 06-cv-3153, 2006, WL 5680261 (D. Neb. June 29, 2006).

Derrick, who comments that she felt as though she had erred for "failing to bring armed guards….to get through a gauntlet of aggressive petition circulators,"  this was "as close to a war zone as anything… [she had] ever experienced." Id. While there will always likely be perspectives such as these, actively approaching people and asking them to sign a petition is not accosting them. Nor does actively approaching people and asking them to sign a petition create a war zone. Quite the opposite. It is democracy, and "the most effective, fundamental…avenue of political discourse, direct one-on-one communication." Meyer v. Grant, 486, U.S. 414, 424-25 (1988) (internal quotations omitted).

> [I]mperative is the need to preserve inviolate the constitutional rights of free speech, free press, and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the people, and that changes, if desired, may be obtained by peaceful means. De Jonge v. Oregon, 229 U.S. 353, 365 (1937).

For these and other reasons set forth in Plaintiff's motion for summary judgment on Count I, Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment on this cause of action, and grant Plaintiff a declaration that St. Joseph Code Ordinance  20-51 is unconstitutional as applied to peacefully petitioning on the sidewalk in question and the external grounds of the East Hills Library and an injunction enjoining Defendants and their agents from repeating their complained of behavior.


**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants City of St. Joseph's and Rebecca Hailey's motion for summary judgment be denied.

RESPECTFULLY SUBMITTED,

STACY ARNOLD, Plaintiff


 /s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on November 16, 2020, to be served by operation of the Court's electronic filing system upon:

| | |
|---|---|
| Christopher L. Heigele | Gregory P. Goheen |
| Steven F. Coronado | McAnany, Van Cleave & Phillips, PA-KCKS |
| Bay Otto Coronado PC – KCMO | 10 East Cambridge Circle Drive |
| 4600 Madison Avenue | Ste. 300 |
| Suite 210 | Kansas City, KS 66103 |
| Kansas City, MO 64112-3019 | ggoheen@mvplaw.com |
| cheigele@batyotto.com | *Attorneys for Defendant* |
| scoronado@batyotto.com | *St. Joseph Public Library* |
| *Attorneys for Defendants* | |
| *City of St. Joseph, Missouri,* | |
| *Officer Rebecca Hailey* | |

 */s/ Stacy Arnold*