**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| STACY ARNOLD,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ST. JOSEPH,<br>ST. JOSEPH PUBLIC LIBRARY,<br>OFFICER REBECCA HAILEY (IN HER PERSONAL AND PROFESSIONAL CAPACITY)<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19-06137-CV-SJ-BP |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO THE LIBRARY'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Stacy Arnold, *pro se*, and presents these suggestions in opposition to the Library's motion for summary judgment (ECF 88). For the reasons contained herein, as well as those presented in Plaintiff's suggestions supporting her motion for summary judgment (ECF 87), Plaintiff respectfully requests that her motion be granted, and the Library's motion be denied.

**CONCISE LISTING OF GENUINE ISSUES OF MATERIAL FACT**

1. Whether or not Plaintiff is going to return to the Library to petition.

2. Whether or not Plaintiff testified that if she returns to Kansas City is up in the air.

3. Whether Plaintiff testified that "pursue" meant "follow" or whether she testified that "pursue" could mean multiple things.

**PLAINTIFF'S RESPONSE TO DEFENDANT LIBRARY'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. The St. Joseph Public Library is a government subdivision of the State of Missouri.

Plaintiff's response: Admitted.

2. The Library is governed by its duly elected Board of Trustees.

Plaintiff's response: Admitted.

3. The Library's Board of Trustees adopted its current Policy for Public Assembly and Petitioning and Distribution of Literature on Library District Property on July 23, 2019.

Plaintiff's response: Admitted.

4. The 2019 Policy states, "those engaged in … Petitioning, shall be required to stand outside library buildings on SJPL property in areas designated by staff, away from entrances, and must not impede traffic or pursue patrons."

Plaintiff's response: Admitted.

5. The 2019 Policy states, that "[i]f an individual engaged in…Petitioning…pursues patrons, he or she will be asked to follow the guidelines contained in this policy. If the guidelines are not followed, the individual will be asked to leave the premises."

Plaintiff's response: Admitted.

6. The 2019 Policy states that "[t]his policy…shall be enforced without prejudice or arbitrary distinctions between individuals, classes of individuals, or the opinions being expressed".

Plaintiff's response: Admitted. The content of the policy itself is not subject to dispute, only the constitutionality thereof.

7. The 2019 Policy states "the following locations may be used by individuals or groups who desire to engage in … Petitioning on SJPL property…An area of eight squares of concrete halfway between the statue garden and the front door. The nine squares are between the

pillars. Petitioners…should not be on the sidewalk in front of the pillars or the ten squares of concrete directly in front of the entrance. Petitioners…may not impede entrance into the library. Please see picture before for clarification. The green area is the area where petitioners should stand."

Plaintiff's response: Admitted. The discrepancy between eight and nine squares was not challenged in Plaintiff's complaint. To the best of Plaintiff's recollection, the colorized depiction of the 2018 policy had nine squares and the subsequent colorized depiction of the 2019 policy then subtracted a square and shifted the area to the right when facing the mall, left when facing the Library. While Plaintiff reasonably understood this to be an editing error, she notes that someone unfamiliar with the 2018 policy would not necessarily have this understanding. She also notes the similarity between the policies and again asserts that her constitutional challenge applies not to the name of any past, current or future policies, but to the contents therein.

8. The 2019 Policy provides a colorized color-coded image depicting the area in which petitioners may and may not stand.

Plaintiff's response: Controverted. The policy does not depict the entirety—and indeed does not depict *most* of the area where petitioning is not allowed, including the majority of the publicly owned sidewalk. *See pictures of the sidewalk* ***attached hereto as Exhibit A.*** *See also a declaration from Stacy Arnold stating that she took the pictures* ***attached hereto as Exhibit B.***

9. Plaintiff's only alleged concrete injury stems from events that occurred prior to the enactment of the 2019 Policy.

Plaintiff's response: Controverted. While the interrogatory that is cited by Defendant Library specifically referenced Defendants other than the Library, Plaintiff references all her declarations, affidavits, filings, the remainder of her complaint and specifically the *Sixth Declaration of Stacy Arnold*, ***attached hereto as Exhibit C*** into her response to this statement as well as the interrogatory in question, as applied to all parties. Plaintiff was injured by the loss of First Amendment freedoms each time she returned to the Library after January 27, 2018, Plaintiff reasonably fears the same injury regarding her future visits to the Library, and moreover the chill that Defendant Library had shadowed over Plaintiff's First Amendment rights is ongoing.

10. Plaintiff testified that to the best of her recollection, the only occasions she has canvassed for petitions at the Library was in 2018 and 2020.

Plaintiff's response: Admitted.

11. Plaintiff testified that when she returned to the Library to canvas for petition in February of 2020, she was able to canvass for petitions.

Plaintiff's response: Admitted. With the aid of the designated area, however, Plaintiff was able to approach and ask significantly less people. See *Sixth Declaration of Stacy Arnold*, ***attached hereto as Exhibit C.*** Plaintiff did not testify about this during her deposition because counsel for Defendant did not ask.

12. Plaintiff testified that when she returned to the Library in 2020, she was able to have people sign petitions.

Plaintiff's response: Admitted. With the aid of the designated area, however, Plaintiff was able to get significantly less people to sign. See *Sixth Declaration of*

*Stacy Arnold*, ***attached hereto as Exhibit C***. Plaintiff did not testify about this during her deposition because counsel for Defendant did not ask.

13. Plaintiff testified that on the first day she was at the Library to petition in February of 2020, a Library employee initially indicated a more restrictive area for petitioning outside the Library than what is provided for in the policy, but hat later that day the employee came back out and told Plaintiff that she had made a mistake.

Plaintiff's response: Admitted. The employee who told Plaintiff she was canvassing in the wrong area was the manager, who also told Plaintiff that if folks were walking by, she, Plaintiff, needed to "let them pass." She came back out and told Plaintiff she had made a mistake after Plaintiff took pictures. See *Affidavit of Stacy Arnold*, ***attached hereto as Exhibit D.*** Also adding that the manager showed Plaintiff this spot that was more restrictive of movement and told Plaintiff that if folks were walking by that she would need to "let them pass" six (6) days after Plaintiff had emailed counsel for Defendants and told them that she would be returning to the Library, noting that she was reaching out because she did not wish to return to the St. Joseph slammer. One of the things Plaintiff specifically mentioned that she would like to do was actively approach people, verbally and physically. See *Plaintiff's email to Defendants' counsel,* ***attached hereto as Exhibit E.***

14. Plaintiff testified that on the second or third day she was at the Library to petition in February of 2020, she asked a Library employee named Jacob to show her the area where she was allowed to petition and then she showed him her interpretation of the area.

Plaintiff's response: Controverted slightly. Plaintiff showed Jacob her

interpretation of the area prior to Jacob pointing to a spot. Jacob then indicated that he thought the area was somewhere else and went inside for longer than a brief moment, after which he came back out and pointed to five squares. All five of which appear to be included in the 2019 Library policy, which also contains three other squares. *See Deposition of Stacy Arnold, p. 100, 11 – p. 101, 14,* ***attached hereto as Exhibit F****. See also Affidavit of Stacy Arnold,* ***attached hereto as Exhibit D.***

15. Plaintiff testified that there were only two interactions with Library employees in which she was told a different designated spot to petition.

Plaintiff's response: Admitted. Plaintiff further notes that in 2020, two out of the five days she came to petition, that she was shown a different spot than what, from Plaintiff's interpretation, was indicated by the designated area. *See Affidavit of Stacy Arnold,* ***attached hereto as Exhibit D.*** This happened approximately 196 days after the policy in question was adopted, 118 days after Plaintiff filed this action, and six (6) days after Plaintiff emailed counsel for Defendants letting them know that she would be returning to the Library. Plaintiff further notes that one out of the two times (half) she petitioned at the Library in 2018, Library staff called Roger Clary who subsequently asked Plaintiff to leave library, told her no one had *ever* been allowed to petition there, and indicated that he wanted to press charges for trespassing, resulting in Plaintiff being placed in pink handcuffs and taken to jail.

16. Plaintiff testified Jacob did not come outside while she was canvassing for petitions and tell her she was in the wrong spot.

Plaintiff's response: Admitted.

17. Plaintiff testified that Jacob did not interfere with her efforts to get people to sign the petition.

Plaintiff's response: Admitted. While Jacob did not further interfere with Plaintiff's efforts to canvass in the designated area, the designated area itself that Plaintiff confined herself to out of fear of arrest certainly interfered with her efforts. See *Sixth Declaration of Stacy Arnold*, ***attached hereto as Exhibit C.***

18. Plaintiff testified that the second day she was out canvassing in front of the Library in February of 2020, nobody came out and bothered her or interfered with her ability to petitions.

Plaintiff's response: Admitted. No one interfered with Plaintiffs ability to canvass in the designated area on the second day that she was there in February 2020. Plaintiff further notes that the designated area itself that Plaintiff confined herself to out of fear of arrest interfered with her efforts. *See Sixth Declaration of Stacy Arnold*, ***attached hereto as Exhibit C.***

19. Plaintiff testified that the last day she was out canvassing in front of the Library in February of 2020, nobody bothered her for being in her interpretation of the designated area for petitioning.

Plaintiff's response: Admitted.

20. Plaintiff testified that nobody ever told her that she had to stay in the designated area because of the topic for which she was petitioning.

Plaintiff's response: Admitted.

21. Plaintiff testified that she never filed a grievance or complaint or appealed to have the Library's policy on petitioning changed.

Plaintiff's response: Controverted. The section of Plaintiff's deposition cited by counsel for Defendant referred specifically to complaining or appealing to the Library itself, not general complaints or appeals made to any entity. *See Deposition of Stacy Arnold, p. 112, 11-16,* ***attached hereto as Exhibit F.***

22. Plaintiff testified that other than counsel for the Library, she has not had any conversations or interactions with anybody at the Library since February of 2020.

Plaintiff's response: Admitted that this was Plaintiff's testimony, but also noting that Plaintiff did speak with a representative from the Library alongside counsel during mediation in March of 2020.

23. Plaintiff testified that she has not returned to the Library since the dates indicated in her sur-reply, which were February 4, 2020; February 6, 2020; February 8, 2020; February 9, 2020; and February 11, 2020.

Plaintiff's response: Admitted.

24. Plaintiff testified that whether she returns to Kansas City is up in the air.

Plaintiff's response: Controverted. This is a gross mischaracterization of Plaintiff's testimony. Plaintiff testified that she is absolutely coming back to the Library. *See Deposition of Stacy Arnold, p. 75, 12-18,* ***attached hereto as Exhibit F.*** What was up in the air, as indicated in the deposition cited by Defendant, was whether or not Plaintiff would return to Kansas City in the "near future." Plaintiff, who travels frequently for work and does not own property, had looked at airbnbs for Kansas City (a place where she has found herself many times), among other locations. *See Deposition of Stacy Arnold, p. 70,13-18,* ***attached hereto as Exhibit F.*** ("I – I like Kansas City. It's a good place to stay.

Sometimes with the work that I do I find myself unemployed and I need somewhere to stay until there's another assignment."). *See also Plaintiff's responses to City of St. Joseph and Rebecca Hailey 1st Interrogatories, at Interrog. 2,* in which Plaintiff' disclosed to Defendants an exhaustive location history in which Kansas City was included multiple times.

25. Plaintiff testified that she does not have a date scheduled to return to the St. Joseph Public Library to petition, nor does she have a topic or cause to return to the Library to petition for.

Plaintiff's response: Admitted.

26. Plaintiff testified that is not aware of any plans for her employer to send her to Kansas City to petition at the St. Joseph Public Library.

Plaintiff's response: Admitted.

27. Plaintiff testified that the only limitation which she believes is constitutionally permissible in terms of limiting canvassing for petitions is that it must take place a reasonable distance away from the doors.

Plaintiff's response: Controverted. This mischaracterizes Plaintiff's testimony. The record indicates that Plaintiff testified that the only limitation she believes in constitutionally permissible *in terms of location* is that petitioning should take place a reasonable distance away from the doors. *See Deposition of Stacy Arnold, p. 138, 7-23,* ***attached hereto as Exhibit F.***

28. Plaintiff testified that she believes the word "pursue" to mean "follow".

Plaintiff's response: Controverted. Plaintiff testified that the word "pursue" could mean a lot of different things, one of which she indicated was follow, consistent

with the argument that Plaintiff raised in her summary judgment motion. For context, more than the few lines of Plaintiff's deposition cited by Defendant are needed. *See Deposition of Stacy Arnold, p. 139, 3 – 142, 14,* ***attached hereto as Exhibit F.***

**ARGUMENT**

## I. PLAINTIFF IS ABSOLUTELY RETURNING TO THE LIBRARY AND HER CLAIM IS NOT MOOT.

> **"I have every intention of coming back**, so although that intention doesn't correlate with specificity in terms of a date, I have a concrete intention of returning to the library in the future to circulate a petition." Arnold Depo. p. 75, lines 13-18 (emphasis added).

Plaintiff absolutely ***did not*** testify that whether or not she returns to the Library is up in the air, she testified that she was coming back. *See Arnold Depo, p. 75, 13-18,* ***attached hereto as Exhibit F.*** *See also Sixth Declaration of Stacy Arnold,* ***attached hereto as Exhibit C***. The specific testimony in question that counsel for the Defendant Library misrepresents is whether or not Plaintiff planned to return to Kansas City in the *near future*. Plaintiff is somewhat nomadic, and has shared her location history with Defendants. See *Plaintiff's Responses to The City and Rebecca Hailey's First Interrogatories at Interrog. 2,* **attached hereto as Exhibit G.** Plaintiff has stayed in the Kansas City area many times, for work and otherwise, and it is an area she likes and frequently returns to, regardless of her ability to circulate a petition there. *See Id.* Plaintiff does not have any plans to circulate a petition at the Library in the near future as she is unaware of any petitions that she supports that are currently being circulated. Not only that, she is unaware of any petitions that are being circulated at all. *See Sixth Declaration of Stacy Arnold,* ***attached hereto as Exhibit C.*** This is likely due to scheduling set forth by the Missouri Revised Statutes.

R.S.Mo. § 116.334.3 reads that "[s]ignatures for statutory initiative petitions shall be filed not later than six months prior to the general election during which the petition's ballot measure is submitted to vote, and shall also be collected not earlier than the day after the day upon which the previous general election was held." Moreover, per the Missouri Secretary of State's website, petition signatures for this year's general election "must be submitted by 5 p.m. on May 3, 2020." A PDF of the below link accessed on 11/15/2020 is ***attached hereto as Exhibit H.*** https://www.sos.mo.gov/CMSImages/Elections/Petitions/Two-PageIPProcessOverview.pdf

Therefore, even if Plaintiff had returned to the Library a day after her deposition, there would simply not have been any petitions registered with the state of Missouri to circulate. In Plaintiff's experience, ballot initiatives are somewhat seasonal, and there are often petitions being circulated that she supports on even election years (sometimes starting in the fall or winter of the previous year). *See Arnold Depo p. 74, 9-10*, ***attached hereto as Exhibit F.*** The Missouri SOS website further indicates a cycle of even years, and Plaintiff sees *plenty* of initiatives on there that she supports. The screenshot below was accessed from the Missouri SOS website on 11/15/2020.




And, same as when Plaintiff returned to the Library to petition in February 2020, when Plaintiff returns again, she would like to petition without being burdened by the designated area or ambiguity of interpretation that covers over Plaintiff's ability to actively approach people. *See Sixth Declaration of Stacy Arnold*, ***attached hereto as Exhibit C.*** Plaintiff alleged in her complaint that she wanted to return to the Library to petition, although she did not allege a specific date, time or cause. *See Arnold Depo 74, 14-17*, ***attached hereto as Exhibit F.*** ("I knew it was a place that I wanted to go back to for the reasons that are stated in my complaint, because

I felt that I had a right to be there."). Plaintiff did not allege that she wanted to return to the Library on a specific date for a specific cause in her complaint, because she was unable to predict the future. However, Plaintiff did know that petition season would come back around again just like Christmas, and that there would be more causes that she supports, and more opportunities to petition for them, and Plaintiff indeed returned to the Library as she indicated that she would. And Plaintiff is absolutely coming back again. Regardless of the outcome of this legal action, Plaintiff will be back petitioning at the East Hills Library. The fact that Plaintiff does have immediate plans to petition tomorrow or some other concrete date for a specified cause *at this very moment* does not by any means indicate that the controversy is moot; it indicates that the controversy is capable of repetition, yet evading review.

"Controversies that arise in election campaigns are unquestionably among those saved from mootness under the exception for matters 'capable of repetition, yet evading review.'" Branch v. FCC, 824 F.2d 37, 41 n. 2 (D.C. Cir. 1987) (internal citations omitted). This exception is applied by federal courts in election related challenges. See Davis v. Federal Election Comm'n., 554 U.S. 724, 735-6; Federal Election Comm'n. v. Wisconsin Right to Life, Inc., 551 U.S. 449, 463 (2007); Norman v. Reed, 502 U.S. 279, 287–88 (1992); Meyer v. Grant, 486 U.S. 414, 417 n. 2 (1988); First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978); Cal. Pro–Life Council v. Getman, 328 F.3d 1088, 1095 n. 4 (9th Cir. 2003); Majors v. Abell, 317 F.3d 719, 722 (7th Cir. 2003); Fla. Right to Life, Inc. v. Lamar, 273 F.3d 1318, 1324, 5 n. 6 (11th Cir. 2001); Stewart v. Taylor, 104 F.3d 965, 969–71 (7th Cir. 1997); N.H. Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 18 (1st Cir. 1996); Kansans for Life, Inc. v. Gaede, 38 F.Supp.2d 928, 932 (D. Kan. 1999). The "capable of repetition exception requires a reasonable expectation or a demonstrated probability that the same controversy will recur involving the

same complaining party." Federal Election Com'n v. Wisconsin Right to Life, Inc., 551. U.S. 449, 463 (2007) (internal quotations and citations omitted).

Plaintiff would like to return to the Library, again, to petition for a cause that she cares about without fear of arrest, without being burdened by ambiguity of interpretation, and without being confined to a box. Neither the First Amendment nor § 1983 require that Plaintiff be able to predict which petitions will be circulated in the future or when they will be registered with the SOS, nor do they require that Plaintiff have the luxury and the resources to petition in front of the Library every single day it is possible to do so. Plaintiff's assertion that she will return to the Library is simply not abstract or theoretical, nor is Plaintiff's fear of criminal prosecution should she petition at the Library and not confine herself to the designated area. The fact that Plaintiff has already returned to the Library to petition once, that Plaintiff has asserted that she would like to return to petition again, and that Plaintiff is actively looking for petitions registered in MO, combined with the time and dedication that Plaintiff has projected towards this lawsuit demonstrates an undeniable personal stake in the controversy and there is at the very least a reasonable expectation and a demonstrated probability that the same controversy will recur involving her. *See Sixth Declaration of Stacy Arnold,* ***attached hereto as Exhibit C.*** Alternatively if there is something else that Plaintiff needs to do or allege or amend in order to have this controversy adjudicated on the merits, Plaintiff respectfully requests the opportunity to do that thing and also to know what specific thing(s) are precluding adjudication.

## II. THE LIBRARY POLICY IS NOT NARROWLY TAILORED TO ANY LEGITIMATE INTEREST.

The fact that the Library policy on its face is content neutral is not in dispute or the subject of this controversy. What is in dispute is the permissibility of the restrictions put in place by the Library policy. The Library claims that "the 2019 policy is not unconstitutional because it is a legitimate content-neutral time, place or manner restriction that is narrowly tailored to prevent the impediment of the Library patrons' ingress and egress." *See Defendant St. Joseph Public Library's Suggestion in Support of Summary Judgment, p. 11,* ***attached hereto as Exhibit I.*** Per common sense and to a certain extent the Library's own argument, the impediment of patrons' ingress and egress necessarily involves a petitioner's proximity to the door. *See Id. at p.11* ("A cursory review of the 2019 Policy's language and the image demonstrates that petitioners…cannot stand directly in front of the columns or the door which would impede patrons' ability to access the Library."). The legitimacy of this interest, to the extent that it is defined as not blocking patron's access to the doors, is not in dispute, and subsequently neither is the area behind the green squares that Plaintiff has marked in blue. Please see the picture to the right. Plaintiff is claiming no First Amendment right nor has any desire to petition in this area and is requesting neither declaratory nor injunctive relief as applied to it.




Defendant Library, citing Ward v. Rock Against Racism, 491 U.S. 781 (1989), argues that the Library policy is indeed narrowly tailored because the policy itself need not be the least restrictive means of achieving its interest and further comments that "[a]lthough Plaintiff has a

much more limited view on what is constitutionally permissible, the Library does not have to enact a policy that is the absolute least restrictive or intrusive means of prohibiting petitioners from impeding ingress and egress to the library." *See Defendant St. Joseph Public Library's Suggestion in Support of Summary Judgment, p. 11,* ***attached hereto as Exhibit I.*** Essentially the Library is arguing that as long as whatever restriction it chooses contains within it the ability of patrons to have unimpeded ingress or egress, it passes constitutional muster. The logical consequence of this theory is that any means whatsoever gets a pass for being narrowly tailored.




This theory is not only unsupported by case law, it is also specifically repudiated by it. The Supreme Court clarified in Ward v. Rock Against Racism, directly after its least restrictive means discussion, that "[t]o be sure, this standard does not mean that a time, place or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expressions in such a manner that a substantial portion of the burden on speech does not advance its goals." Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989). Here, the Library's policy prohibits petitioning in all areas of its external grounds with the exception of the green area demarcated on the policy. In this case, the substantial portion of the burden on speech that does not advance the Library's goals has physical dimensions that can be measured and includes most of a sidewalk. While there is indeed a meaningful relationship between the ends and the means of the Library's goals and its

prohibition of petitioning in front of the doors, this relationship does not extend to the remainder of the Library's exterior grounds, including the remainder of the concrete squares not next to the doors and the sidewalk in question.[1] While Plaintiff has not yet ventured to measure the dimensions of the permitted area versus the restricted area, she can say in good faith that the dimensions of the restricted area by far exceed the dimensions of the permitted area, as demonstrated by the pictures she took, ***attached hereto as Exhibit A.*** Moreover, and more recently, the Supreme Court concluded that in order to "meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interest." McCullen v. Coakley, 573, U.S. 464, 495 (2014). This the Library simply has not done, nor can it.




**III. THE LIBRARY POLICY IS UNCONSTITUTIONALLY VAGUE.**

While the size of the designated area itself precludes the possibility of following or walking behind anyone for more than a brief moment, or perhaps even at all, as Plaintiff stated in

---

[1] The sidewalk written over on page 16 is publicly owned and the sidewalk written over on this page is privately owned, and part of the easement. The privately-owned sidewalk is challenged with regards to Defendant Library to the extent that the Library may control, lease, pay for, or otherwise provide upkeep to the area. The privately-owned sidewalk (in addition to the publicly owned sidewalk and the external grounds of the Library) is of course also included in Plaintiff's as-applied challenge to St. Joseph Code Ordinance 20-51 in Count I.

her deposition, and as was also stated in Plaintiff's motion for summary judgment, "pursue," can absolutely mean "follow," among other things. Other things like approaching people from behind, *approaching people in general,* continuing to pester or follow people who have made their disinterest in the petition or engaging with Plaintiff apparent, or initiating a conversation with people in general. Indeed, when Plaintiff returned to the Library on February 4 2020, the branch manager, Shirley Blakeney, told Plaintiff that if people were walking by that she needed to "let them pass." *See Affidavit of Stacy Arnold*, ***attached hereto as Exhibit D.*** This is indeed an interpretation of "pursing patrons" that would preclude a petitioner from *actively approaching people.* What's more, when Plaintiff emailed counsel for the Library prior to her February 2020 return there, Plaintiff specifically indicated that she would like to actively approach people (from any angle) and was not aware if the same was precluded by the Library policy or not. In response, the Library sent Plaintiff a copy of its policy, and included no answer to whether or not actively approaching people was offensive to said policy. *Id.*

While the policy is content neutral on its face, there is potential for differentiating treatment on the basis of content in its interpretation, specifically the "pursue patrons" language. Not only could a librarian interpret this phrase differently depending on their opinion of the initiative a petitioner is collecting signatures for, there is also plenty of potential for variance in interpretation from one librarian to another. For example, librarians who seem to interpret actively approaching people and asking them to sign a petition as *accosting* folks may certainly be more likely to interpret this phrase to preclude actively approaching people (or even initiating a conversation with people), while a librarian whose thoughts are occupied with other matters may interpret the phrase less restrictively.

## CONCLUSION

For the reasons herein in addition to the reasons in Plaintiff's suggestions in support of her motion for summary judgment (ECF 87), Plaintiff respectfully requests that her motion be granted, and that the Library's motion be denied.

RESPECTFULLY SUBMITTED,

STACY ARNOLD, Plaintiff

/s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on November 16, 2020, to be served by operation of the Court's electronic filing system upon:

Christopher L. Heigele
Steven F. Coronado
Bay Otto Coronado PC – KCMO
4600 Madison Avenue
Suite 210
Kansas City, MO 64112-3019
cheigele@batyotto.com
scoronado@batyotto.com
*Attorneys for Defendants*
*City of St. Joseph, Missouri,*
*Officer Rebecca Hailey*

Gregory P. Goheen
McAnany, Van Cleave & Phillips, PA-KCKS
10 East Cambridge Circle Drive
Ste. 300
Kansas City, KS 66103
ggoheen@mvplaw.com
*Attorneys for Defendant*
*St. Joseph Public Library*

*/s/ Stacy Arnold*