# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| STACY ARNOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No. 19-06137-CV-SJ-BP |
| CITY OF ST. JOSEPH, | ) |
| ST. JOSEPH PUBLIC LIBRARY, | ) |
| OFFICER REBECCA HAILEY (IN HER | ) |
| PERSONAL AND PROFESSIONAL CAPACITY) | ) |
| | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S REPLY SUGGESTIONS TO HER MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, Stacy Arnold, and presents these reply suggestions in support of her motion for summary judgment on Count I. Plaintiff wishes to engage in petitioning on the external grounds of a place that is a forum for information and ideas—a public library—and a sidewalk with the ability to greet and actively approach people, without being confined to a box, and without the burden of ambiguity of interpretation. In Count I, Plaintiff alleges that the Library policy on petitioning is unconstitutional on its face and impermissibly vague. She also alleges that St. Joseph Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on the external grounds of a Library and the sidewalk in question, regardless of title, and as it was applied to her. Defendants City of St. Joseph and Rebecca Hailey, in her professional capacity (hereinafter "City") and St. Joseph Public Library (hereinafter "Library") oppose Plaintiff's motion. The City argues that Plaintiff's motion must fail because Officer

Hailey had probable cause, the Court cannot rewrite an Ordinance, and the controversy is moot. Defendant City[1] and Defendant Library argue that Plaintiff has not overcome Defendant Library's affirmative defenses[2], that the Library policy is inapplicable to the private property, that the policy is not impermissibly vague, that the policy is reasonable and narrowly tailored, and that the policy is not subject to strict scrutiny. Neither the City nor the Library has advanced an argument countering or disputing Plaintiff's support for her claim that the private property in question in subject to First Amendment scrutiny.

The constitutionality of the Ordinance and the Library policy are issues of law, and despite Defendants' protestations that Plaintiff does not have a personal stake in the controversy, Plaintiff's personal stake in the controversy is tremendously and painfully obvious. *See Sixth Declaration of Stacy Arnold, **attached hereto as Exhibit A.** See also Plaintiff's Suggestions in Opposition to the Library's Motion for Summary Judgment* (ECF 95), which Plaintiff incorporates by reference. Count I is ripe for summary judgment.

## PLAINTIFF'S REPLY TO DEFENDANTS RESPONSES TO HER STATEMENTS OF UNCONTROVERTED FACTS

*Plaintiff has included replies to Defendants' objections, and, in some cases additional documentation. Not all statements have a reply. While Plaintiff contests some of Defendants objections, she also respectfully requests that this Court consider the material cited in these*

---

[1] Defendant City has incorporated the Library's Motion for Summary Judgment and supporting suggestions, as well as the Library's Suggestions in Opposition to Plaintiff's motion for summary judgment as applicable. (ECF 93, p. 16).

[2] Said "affirmative defenses" are all boilerplate and lack specificity and supporting facts. That stated, factually unsupported issues raised in said "affirmative defenses" such as subject matter jurisdiction, the adequacy of Plaintiff's claims, standing, ripeness, mootness, and the constitutionality of the restrictions in the Library policy have been discussed and argued by Plaintiff at length in a manner that is far from frivolous. See Plaintiff's First Amended Complaint (ECF 19), Plaintiff's Suggestion in Opposition to the Library's Motion to Dismiss Party (ECF 38), Plaintiff's Motion for Leave to File a Sur-Reply to the Library's Reply to Plaintiff's Suggestion in Opposition of Dismissal (ECF 45), Plaintiff's Motion for Summary Judgment and Suggestions in Support (ECF 86 & 87), Plaintiff's Suggestions in Opposition to the City's Motion for Summary Judgment (ECF 94), and Plaintiff's Suggestions in Opposition to the Library's Motion for Summary Judgment (ECF 95).

*reply suggestions, as well as Plaintiff's pro se status and lack of experience, and give an*
*opportunity to properly support or address any fact that the Court may still consider improperly*
*asserted, or to consider such a fact undisputed for the purposes of this motion. The Court may*
*do this per Fed. R. Civ. P. 56(e)(1) and 56(e)(2), and Plaintiff respectfully makes this request in*
*the interest of substantive justice and adequate development of the record. Moreover, Defendants*
*claim that many of Plaintiff's facts are immaterial. To any such claim Plaintiff replies that*
*Defendants are looking through the narrow lens of their own legal theories, which Plaintiff has*
*disputed in the argument section of this reply, her suggestions in opposition to Defendants'*
*summary judgment motions, and the suggestions in support of this motion.*

1. On or around noon on January 30, 2018, Plaintiff was circulating a petition in front of the East Hills Library, a library within the St. Joseph Public Library Branch. (ECF 24 ⁋ 12). See also excerpts from the Library's 26a disclosures—SJPL000001, 2—attached hereto as Exhibit 1.

> City's Response: It is uncontroverted that Plaintiff was circulating a petition in front of the East Hills Library. It is also uncontroverted Plaintiff was conducting this activity in the parking lot of the library which is private property owned by the East Hills Mall. (citations omitted).

> Library's Response: Not controverted for the purposes of this motion that Plaintiff was circulating a petition near the library on January 30, 2018. This fact is irrelevant and not material…

2. The East Hills Library, a separate physical structure from the East Hills Mall, is accessed from a vehicular right-of-way from which one can also access the East Hills Mall, Office Depot, JOANNE Fabrics and Crafts, New China Super Buffet, and other businesses. Below is a picture of the Library, retrieved from Google maps.



It is approximately four tenths of a mile from the intersection of Frederick Avenue and North Woodbine Road to the East Hills Library. The two pictures that follow are from google maps. The first is a larger aerial view which includes the entire mall, and the second focuses in a bit more on the Library (the public bus stops are also visible).



Case 5:19-cv-06137-BP   Document 100   Filed 12/04/20   Page 5 of 30



Pictures of the turn-off to the vehicular right-of-way that leads to the Library and the vehicular right-of-way are shown below. Once again, both pictures are from google maps.



6



City's Response: Objection. This request is compound and not properly supported for summary judgment under the rules. However, without waiving said objection, this statement is immaterial to Plaintiff's request for summary judgment and immaterial to the City's and Officer Hailey's entitlement to summary judgment in this case.

Library's Response: Objection. Plaintiff fails to identify any particular material in the record to support her contention – i.e., some record, document, or testimony as required by Fed.R.Civ.P. 56(c)(1). It should therefore be disregarded. This fact is irrelevant and not material…

*Plaintiff's Reply: Google maps is well-known source of information regarding locations and distances that is not subject to reasonable dispute. Please see also the Ninth Declaration of Stacy Arnold, **attached hereto as Exhibit B.** Additional photos taken by Plaintiff are also **attached hereto as Exhibit C**. Should the Court find that gaps remain in the record concerning the location and surroundings of the East Hills Library, Plaintiff respectfully request an opportunity to supplement the information in order to adequately develop the record concerning this point.*

3. Shortly after 12pm on January 30, 2018, Roger Clary, a mall security guard, told Plaintiff

that she could not petition at the Library, that the mall owned the entire Library and no one had ever been allowed to petition there. At no point did he inform Plaintiff of the existence of a designated area and ask Plaintiff to move to and/or remain in said area. He also called the police. (ECF 24 ¶ 17, 18, 21). See also East Hills Security Department Incident Report, pp. 2, excerpted from *Roger Clary's Responses to Plaintiff's Requests for Production of Documents To Def. Clary* attached hereto as Exhibit 2 as well as excerpts from *Roger Clary's Answers to Plaintiff's First Interrog. To Def. Clary* at Interrog. 6-7, attached hereto as Exhibit 3.

> City's Response: This statement is largely uncontroverted. However, it is immaterial…

> Library's Response: Not controverted for the purposes of this motion that Plaintiff and Roger Clary had an interaction on January 30, 2018. This fact is irrelevant and not material…

4. On or around 12:30pm on January 30, 2018, Defendant Hailey, a police officer for the City of St. Joseph, placed Plaintiff under arrest. (ECF 26 ¶ 16).

> City's Response: Uncontroverted but immaterial…

> Library's Response: Not controverted for the purposes of this motion but not relevant or material…

5. The arrest occurred after Plaintiff had communicated her belief to her arresting officer, Defendant Hailey, that the area in question was a public forum, communicated to Defendant Hailey that she would not disobey an order, communicated to Defendant Hailey that she, Plaintiff, would leave if Defendant Hailey wanted her to leave, and asked Defendant Hailey for her badge number. See Exhibit E from ECF 19, which was delivered to the Court along with Plaintiff's Complaint in the form of an audio CD.

> City's Response: Controverted…

Library's Response: Not controverted for purposes of this motion that Exhibit E is an audio recording delivered with Plaintiff's Complaint (ECF No. 1). Defendant objects to Plaintiff's attempt to summarize or misstate the contents of the recording. This fact is irrelevant and not material…

6.   Plaintiff was subsequently charged with trespassing, St. Joseph City Ordinance 20-51. See Plaintiff's ticket, attached hereto as Exhibit 4.

City's Response:  Uncontroverted, yet immaterial…

Library's Response: Not controverted for purposes of this motion but not relevant or material…

7.   St. Joseph City Ordinance 20-51 reads as follows: "Trespass. (a) A person commits the offense of trespass if he enters or remains unlawfully upon real property of another. The fact that a person has no intent to enter unlawfully or remain unlawfully is no defense to this section.  (b) A person enters unlawfully or remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. (c) Trespass is a misdemeanor.

City's Response:  Uncontroverted. The St. Joseph trespass ordinance 20-51 speaks for itself, is content neutral, and thus is constitutional.

Library's Response: Not controverted for purposes of this motion but not relevant or material…

7.[3]  The East Hills Mall and the East Hills Library have separate addresses. The address of the East Hills Mall is 3702 Frederick Ave, St. Joseph, MO 64506. The address of the East Hills Library is 502 N Woodbine Rd, St. Joseph, MO 64506.  (ECF 24 ¶ 36); (ECF 26 ¶ 20). The address listed on Plaintiff's trespass ticket was the address for the mall.

>   City's Response: Uncontroverted…

>   Library's Response: Not controverted for purposes of this motion but not relevant or
>    material…

8.  There is a sidewalk that runs parallel to the entrance of the East Hills Library.  (ECF 24 ¶ 37) For pictures, see ECF 19, Exhibits G, H, I & J.

>   City's Response: Uncontroverted…

>   Library's Response: Not controverted for purposes of this motion that there is a sidewalk
>   in front of the entrance to the library. This fact is irrelevant and immaterial…

9.  Although it extends far beyond the library doors, the sidewalk has a beginning and an end. (ECF 24 ¶ 37).

>   City's Response: Uncontroverted…

>   Library's Response: Not controverted for purposes of this motion that there is a sidewalk
>    in front of the entrance to the library. This fact is irrelevant and not material…

10. In front of the sidewalk is a single row of parking spaces, in front of the spaces is a vehicular pass-through that cars must utilize to access the library, and on the other side of the vehicular pass-through sits the mall parking lot.  (ECF 24 ¶ 37).

>   City's Response: Uncontroverted…

>   Library's Response: Not controverted for purposes of this motion that there is a row of

---

[3] Number 7 was duplicated in Plaintiff's suggestions supporting her motion for summary judgment. Apologies for the oversight.

parking spaces in front of the sidewalk. The other statement contained in this "fact" do not appear to be consistent with the photographs and other depictions of the property which Plaintiff has provided to support other facts in her Suggestions. Plaintiff has not properly supported these statement as required by Fed.R.Civ.P. 56(c)(1). Defendant is not bound by any answer of another Defendant. The fact is also irrelevant and not material…

*Plaintiff's Reply: Please see the Ninth Declaration of Stacy Arnold, **attached hereto as Exhibit B** and additional pictures, **attached hereto as Exhibit C**. Due to the Library's absence of particularity, Plaintiff is unsure what exactly what the Library is claiming is inconsistent with the pictures attached. Drivers certainly need not turn around after they have driven past the Library to access it, and may park before passing the entire Library, but again due to the Library's lack of specificity, Plaintiff is unsure if this observation adequately addresses its consistency concern.*

11. A statue of a girl with a dove surrounded by sidewalk now stands in place of what was once five parking spaces in the single row of spaces in front of the library. (ECF 24 ¶ 37). See also ECF 19, Exhibit K.

> City's Response:  This statement is largely uncontroverted…

> Library's Response: Not controverted for purposes of this motion that there is a statute of a girl with a dove in front of the library. This fact is irrelevant and not material…

12. The sidewalk surrounding the statue is intertwined with and physically indistinguishable from the sidewalk that is parallel to the library. (ECF 24 ¶ 37).

> City's Response: This statement is largely uncontroverted…

<u>Library's Response</u>: Not controverted for purposes of this motion that there is a sidewalk next to the statute of a girl with a dove in front of the library. This fact is irrelevant and not material…

13. There are four benches, two to the right and two to the left of the statue. (ECF 24 ¶ 37).

<u>City's Response:</u>  This statement is largely uncontroverted…

<u>Library's Response</u>: Not controverted for purposes of this motion that there are benches near the statue of a girl with a dove in front of the library. This fact is irrelevant and not material…

14. Between the statue and the sidewalk are rocks. (ECF 24 ¶ 37).

<u>City's Response:</u> This statement is largely uncontroverted…

<u>Library's Response</u>: Not controverted for the purposes of this motion that there are rocks around the statute. This fact is irrelevant and not material…

15. There was, at the time of Plaintiff's arrest, and on January 2, 2019, a sign in the rocks that read: "Rock Garden/Take a rock for inspiration/Share one for motivation/or/Leave a rock to help the garden grow!"  (ECF 24 ¶ 37). See ECF 19, Exhibit L for a picture.

<u>City's Response:</u> This statement is largely uncontroverted…

<u>Library's Response</u>: Not controverted for purposes of this motion that the photo attached to Plaintiff's Amended Complaint (ECF No. 19-12) containing this sign. The fact is irrelevant and not material…

16. Messages as well as artwork were displayed on some of the rocks in the garden. (ECF 24 ¶ 37).

<u>City's Response:</u> This statement is largely uncontroverted…

12

Library's Response: Although this fact is not properly supported, as required by Fed.R.Civ.P. 56(c)(1) and is not relevant or material to the Plaintiff's remaining claim asserted against this Defendant, this fact is not controverted for the purposes of this motion.

*Plaintiff's Reply: Please see the Ninth Declaration of Stacy Arnold, **attached hereto as Exhibit B.***

17. There is a plaque in front of the statue that reads: "Girl With Dove/Artist: Tom Corbin/Generously donated to the St. Joseph Public Library by the Bradley Charitable Trust and the William T. Kemper Foundation Commerce Bank, Trustee." (ECF 24 ¶ 37). See ECF 19, Exhibit M for a picture.

City's Response: This statement is largely uncontroverted…

Library's Response: Not controverted for purposes of this motion that the photo attached to Plaintiff's Amended Complaint (ECF No. 19-13) containing this plaque. This fact is irrelevant and not material…

18. According to Google maps, public bus stops 13 and 19 are located in front of the statue.

City's Response: This statement is largely uncontroverted…

Library's Response: Objection. Plaintiff fails to identify any particular material in the record to support her contention – i.e., some record, document or testimony as required by Fed.R.Civ.P. 56(c)(1). It should therefore be disregarded. Regardless, this fact is irrelevant and not material…

*Plaintiff's Reply: Google maps is a well-known source of information, the accuracy of which is not subject to reasonable dispute. Please see the Ninth Declaration of Stacy Arnold, **attached hereto as Exhibit B**, for additional documentation. See also the bus schedule for the City of St.*

*Joseph, also a source of information the accuracy of which is not subject to reasonable dispute,*

*https://www.stjoemo.info/312/Routes-Time-Tables (retrieved on December 3, 2020), specifically*

*Route 13,  https://www.stjoemo.info/DocumentCenter/View/219/13-Route-map?bidId=,*

*(retrieved on December 3, 2020) and Route 19,*

*https://www.stjoemo.info/DocumentCenter/View/6292/19-Route-Map?bidId= (retrieved on*

*December 3, 2020). Should the Court find that gaps remain in the record concerning the fact*

*that a public bus stop is location in front of the East Hills Library, Plaintiff respectfully request*

*an opportunity to supplement the information in order to adequately develop the record*

*concerning this point.*

19. The Library owns the property from and including the portions of the sidewalk that are parallel to the Library (not to include the parts of the sidewalk to the front, right, and left of the statue), and the East Hills Mall owns the parking spaces and the vehicular pass-through. See the Library final plat excerpted from the Library's initial 26(a) disclosures—SJPL000007—attached hereto as Exhibit 5. See also ECF 19, Exhibits N and O.

> City's Response: It is uncontroverted the East Hills Mall owns the parking lot in front of the library. The remaining statement is immaterial to Plaintiff's request for summary judgment and immaterial to the City's and Officer Hailey's entitlement to summary judgment in this case.

> Library's Response: Not controverted for purposes of this motion that the parking lot in front of the library building is owned by the East Hills Mall. Defendant objects to Plaintiff's attempt to summarize and mischaracterize the contents of the plat. The legal document speaks for itself. Defendant also objects to Plaintiff's contention to the extent it

contains unsupported allegations and legal argument. Fed.R.Civ.P. 56(c)(1). This fact is

also irrelevant and not material…

*Plaintiff's Reply: Defendants' reluctance to even admit that the sidewalk adjacent to the Library*

*is publicly owned is in itself telling and amplifies the reason why the First Amendment is*

*implicated on property serving a public purpose, regardless of title. Nonetheless, the City*

*Rebecca Hailey and the Library appear to have admitted this fact per Local Rule 56.1(b)(1) and*

*at least the City and Rebecca Hailey have admitted this fact per Fed. R. Civ. P. 56. In support of*

*this fact see also a screenshot of an email between Plaintiff and St. Joseph Department of Public*

*Works, **attached hereto as Exhibit D**, an attachment from said email, **attached hereto as Exhibit***

***E**, and a declaration by Plaintiff that Plaintiff was the recipient of the contents of said email,*

***attached hereto as Exhibit F.** Should the Court find that gaps remain in the record concerning*

*the ownership of the sidewalk adjacent to  the East Hills Library, Plaintiff respectfully request an*

*opportunity to supplement the information in order to adequately develop the record concerning*

*this point.*

20. An area where five parking spaces used to be is owned by the mall with an easement

granted to the Library for the purpose of the installation of a statue and related landscaping. See

excerpts from the Library's initial 26(a) disclosures—SJPL000008  - SJPL000009—attached

hereto as Exhibit 6. See also ECF 19, Exhibit P.

City's Response: It is uncontroverted the East Hills Mall owns the parking lot in front of

the library. The remaining statement is immaterial to Plaintiff's request for summary

judgment and immaterial to the City's and Officer Hailey's entitlement to summary

judgment in this case.

Library's Response: Not controverted for purpose so this motion that the statute of the girl with a dove in front of the library sits on an easement for that purpose. Defendant objects to Plaintiff's attempt to summarize and mischaracterize the contents of the easement. The legal document speaks for itself. Defendant also objects to Plaintiff's contention to the extent that it contains unsupported allegations and legal argument. Fed.R.Civ.P. 56(c)(1). This fact is irrelevant and not material…

21. The Library had a published policy on petitioning and the distribution of literature at the time of Plaintiff's arrest. This policy indicated that petitioning was allowed in undifferentiated "areas designated by staff," and that petitioners were "not to pursue patrons." See an excerpt from the Library's 26(a) disclosures—SJPL000005—attached hereto as Exhibit 7.

City's Response: The library's policy is uncontroverted. However, this statement is immaterial…

Library's Response: Not controverted for the purposes of this motion that Defendant had a policy that covered petitioning and the distribution of literature at this time. Because that policy has been revised and is no longer in effect, this fact is irrelevant and not material…

22. Another similar, but more detailed policy was implemented on 8/23/2019. This is the current policy as of 10/11/2020. It maintained the "pursue patrons" language from the initial policy as well as the designated areas; it also included a picture indicating where the designated area at the East Hills Library is located. See an excerpt from the Library's 26(a) disclosures—SJPL000010 – SJPL000011—attached hereto as Exhibit 8.

City's Response: The Library's policy is uncontroverted. However, this statement is immaterial…

Library's Response: Not controverted for purposes off this motion that Defendant's
Board of Trustees adopted its current Policy for Public Assembly and Petitioning and
Distribution of Literature on Library District Property on July 23, 2019 which is attached
in its entirety as Exhibit 2 to the Affidavit of Mary Beth Revels (Exhibit A) to
Defendant's Suggestions in support of Motion for Summary Judgment (ECF No. 89).

23. Plaintiff returned to the external grounds of the East Hills Library on several occasions in
February 2020 to petition for another cause that she cares about. (ECF 45, Ex. 1 ¶ 23). Plaintiff
wanted to petition as she was doing before her arrest on 1/30/2018, but, for fear of arrest,
Plaintiff confined herself to what she interpreted as the designated area. (ECF 45, Ex. 1 ¶¶ 4 &
5).

City's Response: Controverted. This statement is vague and argumentative. However,
this statement is immaterial…

Library's Response: Not controverted for purposes of this motion that Plaintiff returned
to the Library in February 2020 and was able to canvass for petitions…

*Plaintiff's Reply: This fact is properly supported by affidavit, uncontested in any meaningful or
properly supported way, and should be deemed admitted per Local Rule 56.1 and Fed. R. Civ. P.
56. Pursuant to Local Rule 56.1(d) a copy of the affidavit referred to in this statement of fact is*
**attached hereto as Exhibit G.**

24. In February 2020, Plaintiff received two verbal interpretations of the designated area
from East Hills Library staff that were more restrictive than the area indicated on the written
policy (ECF 45, Ex. 1 ¶¶ 6, 7, & 19).

City's Response: Objection. This statement is vague, involves hearsay and is
argumentative. However, this statement is immaterial…

17

<u>Library's Response</u>: Not controverted for purposes of this motion that on the first day Plaintiff was at the Library to petition in February of 2020, a Library employee, when asked by Plaintiff, initially indicated a more restrictive area for petitioning outside the Library than what is provided for in the policy, but that later that day the employee came back out and told Plaintiff that the employee had made a mistake. (citations omitted).

25. The Library was asked to produce any records or studies which may indicate that petitioning on its external grounds interferes with its intended purpose and the Library produced no such records. See excerpts from *St. Joseph Public Library's Responses to Plaintiff's Request for Production of Documents To Def. Library* at Request No. 2, attached hereto as Exhibit 9. Moreover, the Library was asked in an interrogatory if the designated area served a purpose that could not similarly be served by requiring that petitioning take place a reasonable distance from the entrance, and the Library indicated no reason, and, indeed, seemed confused by the question. See excerpts from *St. Joseph Public Library's Answers to Plaintiff's First Interrog. To St. Joseph Public Library* at Interrog. 8, attached hereto as Exhibit 10.

<u>City's Response</u>: Objection. This statement is vague, involves hearsay and is argumentative. However, this statement is immaterial…

<u>Library's Response</u>: Defendant objects to Plaintiff's attempt to mischaracterize and misstate the contents of Defendant's discovery responses. The responses speak for themselves. Defendant also objects to Plaintiff's contention to the extent it contains unsupported allegations and legal argument. Fed.R.Civ.P. 56(c)(1). The evidence cited by Plaintiff does not support her contention and it should be disregarded.

*Plaintiff's Reply: Defendants' objections are boilerplate and unsupported. With the arguable exception of Defendant Library seeming confused by a question, the evidence cited clearly*

*supports Plaintiff's contentions and Defendants cite nothing to the contrary. Fed. R. Civ. P.*
*56(c)(1)(A).*

26. Plaintiff would like to return to the East Hills Library in the future to petition for another cause that she cares about and to participate in expressive activities. While Plaintiff does not wish to impede the ingress or egress of Library patrons, Plaintiff would like to petition on the external grounds of the public East Hills Library, regardless of title, without being confined to a designated area or other paternalistic constraints, without being burdened by ambiguity of interpretation, and without fear of arrest.

> City's Response: Objection. This statement is not a fact but an argument and an incorrect argument at that. The fact is also not supported by the record as required by Federal Rule 56 and Local Rule 56.1. Nonetheless, this statement is immaterial…

> Library's Response: Objection. Plaintiff fails to identify any particular material in the record to support her contention – i.e., some record, document, or testimony as required by Fed.R.Civ.P. 56(c)(1). Defendant also objects to Plaintiff's contention to the extent it contains legal argument. It should therefore be disregarded.

*Plaintiff's Reply: Please see the Sixth Declaration of Stacy Arnold, **attached hereto as Exhibit A.***

## PLAINTIFF'S RESPONSES TO DEFENDANTS' ADDITIONAL STATEMENTS OF UNCONTROVERTED FACTS

Plaintiff incorporates by reference her arguments and responses to the allegedly uncontroverted facts advanced by the Library and the City in her suggestion in opposition to their summary judgment motions (ECF 94, 95).

19

## THE NATURE OF PLAINTIFF'S REQUEST TO THE COURT INVOLVING THE CITY ORDINANCE, ST. JOSEPH CODE ORDINANCE 20-51

While Plaintiff's First Amended Complaint and Motion for Summary Judgment were not written or pled with the experience of an attorney, behind no WHEREFORE clause or elsewhere can one find a request that the Court rewrite the Ordinance. The challenge to the city ordinance is an as-applied challenge. *See Plaintiff's First Amended Complaint,* ECF 19, ¶¶ 56, 57. ("Wherever the title of a public library may rest, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on its exterior grounds…Moreover, St. Joseph City Code Ordinance 20-51 is unconstitutional as applied to a sidewalk, including **all** of the public sidewalk surrounding the East Hills Library."). *See also Plaintiff's Suggestions in Opposition to the City's Motion for Summary Judgment* (ECF 94, p. 24, 25), requesting a "declaration that St. Joseph Code Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on the sidewalk in question and the external grounds of the East Hills Library and an injunction enjoining Defendants and their agents from repeating their complained of behavior." *See also Plaintiff's Motion for Summary Judgment* (ECF 86) stating that "St. Joseph Ordinance 20-51 is unconstitutional as applied to peacefully petitioning on the external grounds of a public library and a sidewalk, regardless of title." Plaintiff's argument, which is clear from the suggestions in support of her motion, is that the ordinance is unconstitutional as it was applied to Plaintiff and as it was applied to petitioning in front in front of a library and the sidewalk in question *because* "petitioning is core political speech that is protected on the exterior grounds of a public library, regardless of title, and that any restrictions must be narrowly tailored;" *because* "petitioning is core political speech that is protected on interior sidewalks of public buildings used for public purposes, regardless of title, and that any restrictions must be narrowly tailored;" and *because* "Defendant City of St. Joseph (to include Defendant Officer Rebecca Hailey, in her

Case 5:19-cv-06137-BP   Document 100   Filed 12/04/20   Page 20 of 30

official capacity) did not follow the First Amendment requirement of giving the benefit of the doubt to protecting instead of stifling speech." (ECF 86). While Plaintiff's motion for summary judgment may or may not have mixed up the order of what should have gone before and after the WHEREFORE clause, "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted) and the context of the motion itself makes Plaintiff's as-applied challenge to the ordinance clear, in addition to the fact that a declaration that the ordinance is unconstitutional as it was applied to Plaintiff and as applied to peacefully petitioning in front of a public library and on the sidewalk in question and an injunction enjoining the same is also relief that Plaintiff is seeking with respect to the ordinance.

## ARGUMENT

### I.      THE EXISTENCE OF PROBABLE CAUSE IS IMMATERIAL TO SUMMARY JUDGMENT ON COUNT I

Count I seeks declaratory and injunctive relief, not damages. Whether or not probable cause or the doctrine of qualified immunity shields parties from damages in other causes of action seeking damages is immaterial to Count I. "[I]mmunity from damages does not ordinarily bar equitable relief as well." *Wood v. Strickland*, 420 U.S. 308, 314-315, n.6. "Qualified immunity does not apply to a claim for injunctive relief." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019). *See also Faith Baptist Church v. Waterford Tp.*, 522 Fed. Appx. 322, 328 (6th Cir. 2013) ("An official's qualified immunity does not preclude declaratory and injunctive relief."); *Hydrick v. Hunter* 669 F.3d 937, 939-940 (9th Cir. 2012) ("Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory and injunctive relief.").

## II.    THE SIDEWALK IN QUESTION IS A PUBLIC FORUM, NOT A LIMITED PUBLIC FORUM

Noting Plaintiff's commentary regarding the forum analysis, Defendants comment that "this Court is bound to follow U.S. Supreme Court and 8th Circuit precedent, in that order." *See Defendant St. Joseph Public Library's Suggestions in Opposition to Plaintiff's Motion for Summary Judgment*, ECF 96, p.10. While Plaintiff's criticism of the forum analysis is certainly ubiquitous throughout Plaintiff's motion, the need for this Court to follow precedent is not lost on Plaintiff.  However, it simply does not follow that this Court should adhere to Defendants' self-serving and scantily supported interpretive theory of the dispositive particulars of the forum analysis.  Defendants assert that the sole criterion that is dispositive of a location to be deemed a public forum is its intended use. *Id.* p.12. Indeed, Defendants' theory of the dispositive magic of the forum analysis, hereinafter the "*stated purpose interpretation*,"  involves two premises: 1) that the intended use of the property is wholly dispositive and 2) that the "intended use" theory turns not upon compatibility with First Amendment activities with the use of the place in question, but instead upon whether or not the *primary use* of the place in question is to provide a forum for citizens to talk about public questions. *See Defendant St. Joseph Public Library's Motion for Summary Judgment*, ECF 89, p.10.  ("The Library's purpose is to allow its patrons to check out books and other informational resources and materials, not to provide an open forum for debate.").

Notably, Plaintiff criticized the *stated purpose interpretation* in her motion for summary judgment, commenting that this interpretation "makes a mockery of both democracy and the First Amendment by striking at its heart…[it] carries with it the premise that government officials must, at their discretion, designate a place specifically for the free exchange of ideas as a precondition for first Amendment protections—an interpretation that conflates the category of

Case 5:19-cv-06137-BP   Document 100   Filed 12/04/20   Page 22 of 30

a traditional public forum with a designated public forum and employs circular logic to effectively collapse the category of a traditional public forum altogether." *Plaintiff's Suggestions in Support of her Motion for Summary Judgment on Count I*, ECF 87, p. 29. However the fact that the *stated purpose interpretation* of the forum analysis offends logic and is deconstructive of any foundation of rights secured under the First Amendment likely does not relieve the Court of ruling in favor the of the same if that is what is required by the applicable caselaw and precedent when viewed through the context of the forum analysis.

To support their self-serving theory that the *stated purpose interpretation* is indeed the dispositive magic of the forum analysis Defendants point 1) to a four-Justice plurality opinion of the Supreme Court and 2) a sole circuit court decision. The caselaw referenced by Defendants is simply insufficient to support their theory.

To begin, the four-Justice plurality opinion cited by Defendants is no more binding than the other four-Justice plurality opinion that is in Plaintiff's favor. Moreover, even assuming, arguendo, that the four-Justice opinion cited by Defendants were controlling, the *stated purpose interpretation* does not follow. Indeed, the four-Justice plurality in *Kokinda* cited a plethora of characteristics enjoyed by sidewalks that are public fora: a public passageway, a throughfare, continually open, often uncongested, a place where people can enjoy the open air or company of friends and neighbors in a relaxed environment, etc. While what factors or combination of factors would allow a sidewalk public forum status under the opinion of the four-Justice plurality in *Kokinda* is unclear in the dispositive sense, it *is* clear that this particular plurality opinion is pointing to something other than the circular *stated purpose interpretation* theory advanced by Defendants. *See United States v. Kokinda,* 493 U.S. 720, 725 – 731 (1990), for the four-Justice plurality's discussion of sidewalks that is referenced by Defendants. *Cf. United States v. Kokinda*

23

493 U.S. 720, 740-749 (1990), for another four-Justice plurality discussion regarding which sidewalks are sidewalks.

Keister v. Bell, 879 F.3d 1282 (11ᵗʰ Cir. 2018), is also cited by Defendants in support of the *stated purpose interpretation* of the dispositive particulars of a public forum in the forum analysis. This case found that a perimeter sidewalk that ran through a college campus was not a public forum. It is a case that contradicts decisions of other circuits. *See McGlone v. Bell*, 681 F.3d 718 (6ᵗʰ Cir. 2012) (sidewalk running through a college campus found to be a public forum); *Brister v. Faulkner*, 214 F.3d 675 (5ᵗʰ Cir. 2000) (paved area connected to but not part a perimeter sidewalk was a traditional public forum, just as the perimeter sidewalk was assumed to be); *Henderson v. Lujan*, 964 F.2d 1179 (D.C. Cir. 1992) (sidewalk officially part of the Vietnam Memorial adjacent to a public street found to be a public forum); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002) (sidewalk not bordering public streets on the capital grounds found to be a public forum); *United States v. Marcavage*, 609 F.3d 264 (3ʳᵈ Cir. 2010) (sidewalks surrounding Independence National Historical Park found to be a traditional public forum); *Venetian Casino Resort, LLC v. Local Joint Exec. Bd*, 257 F.3d 937 (9ᵗʰ Cir. 2001)(sidewalk on private casino property found to be a traditional public forum). Finally, it is worth noting that *Keister v. Bell,* 879 F.3d 1282 (11ᵗʰ Cir. 2018), affirmed a district court decision which recognized the utility of the duck test in the context of the forum analysis.[4] Neither the Supreme

---

[4] "[W]hen courts in this [11ᵗʰ] circuit conduct a forum analysis, they are tasked with assessing the forum's physical characteristics, as well as the traditional uses made of the property. To be sure, this is a fact-intensive inquiry, and at least some courts have been guided by the time-tested adage:'[i]f it looks like a duck, and it walks like a duck, and it quacks like a duck, then it's probably a duck.' *McMahon v. City of Panama Beach*, 180 F. Supp.3d 1076, 1080 (N.D. Fla. 2016) (noting the utility of the "duck test" in the context of forum analysis). So, the question becomes this: is the intersection a public forum duck or a limited public forum duck?" *Keister v. Bell*, 240 F. Supp.3d 1232, 1238 (N.D. Alabama, 2017). Plaintiff respectfully asks that the Court not consider what type of duck the external grounds of the East Hills Library and the sidewalk in question may be when making a decision.

Court nor the 8th Circuit have recognized any such utility of the duck test when engaging in the forum analysis and consequently this Court is not bound by such alleged reasoning.

Far from an interpretive epiphany, the *stated purpose interpretation* is naught but a logically offensive temporary and non-binding departure from the Supreme Court's past *and recent* First Amendment jurisprudence. Indeed, attempting to apply Defendants' *stated purpose interpretation* of the forum analysis to a relatively recent Supreme Court decision, *McCullen v. Coakley*, 574 U.S. 464 (2014), demonstrates the theory's implausibility. The sidewalk involved in *McCullen*, like all sidewalks, allowed folks to get from point A to point B. Here, it also allowed women to enter an abortion clinic. Plaintiffs in this case were attempting to engage in sidewalk canvassing to talk to women about alternatives to abortion and help them pursue those options. The s*tated purpose interpretation* of the dispositive criterion of the forum analysis would have found that no such right to sidewalk canvassing existed, as the stated purpose of the sidewalk was to facilitate pedestrian traffic, not to provide an open forum for debate. The reality, however, is that "traditional public fora are open to expressive activity regardless of the government's intent" *Arkansas Education Television Com'n v. Forbes*, 523 U.S. 666, 678 (1998) and the Supreme Court did not entertain any *stated purpose interpretation* of the sidewalk in question or any other inquiry serving to make a mockery of the First Amendment when it ruled in favor of the plaintiffs in *McCullen*. Indeed, in addition to general interpretive guidance that the First Amendment requires that the benefit of any doubt be given to the speaker, the *most recent guidance* we have from the Supreme Court regarding the dispositive criteria of a public forum per the forum analysis turns not upon stated purpose or intent, but objective (and non-exclusive) criteria: "streets, parks, sidewalks, and the like....." *Minnesota Voters Alliance v. Mansky,* 138 S.Ct. 1876, 1885 (2018).

25

### III. DEFENDANTS FAIL TO CONSISTENTLY CONCEPTUALIZE THE ALLEGED LEGITIMATE INTEREST THE DESIGNATED AREA PURPORTS TO SERVE

What legitimate interest the Library alleges the designated area is serving, along with how the Library would define unimpeded ingress and egress, and what restrictions it believes are necessary to allow for this or another alleged legitimate purpose is not entirely clear. Indeed, Plaintiff asked Defendant Library in an interrogatory if the designated area served a purpose that could not similarly be served by requiring that petitioning take place a reasonable distance from the doors. Below is a snippet of their response:

> #### INTERROGATORY NO. 8:
>
> Does the designated area serve a purpose that cannot similarly be served by petitioning taking place a reasonable distance from the doors, and if so, please describe this purpose in detail.
>
> **ANSWER:**   Defendant objects to this Interrogatory as being so vague, ambiguous and confusing that it is incapable of being answered.

From the Library's Suggestions in Support of its Motion for Summary Judgment, the Library policy is "narrowly tailored to prevent the impediment of the Library patrons' ingress and egress." ECF 89, p.11. *But see Defendant Library's Suggestions in Opposition to Plaintiff's Motion for Summary Judgment*, ECF 96, p.11. ("Defendant's 2019 policy…is …designed to protect patrons entering and leaving the Library who want to be left alone and 'pass without obstruction.'"). While Defendants fail to consistently conceptualize the alleged legitimate interest that the designated area purports to serve, they seemed, when pressed, to abandon and/or significantly expand the unimpeded ingress and egress interest with a general right-to-be-left-alone theory of state protection. However, the case cited by Defendants in support of such a theory involved a controversy between individuals entering healthcare facilities in Colorado who

26

were subjected to harassment and even assault and those opposed to medical procedures (abortion), particulars inapposite to the context of this controversy. The record developed surrounding the controversy in Colorado demonstrated that "many citizens seeking medical counseling and treatment at Colorado health care facilities were openly subjected to verbal abuse and on occasion, were physically assaulted while entering or leaving health care facilities." *Hill v. Thomas*, 973 P.2d 1246, 1249 (Colo., 1999). Specifically, there was testimony that a mother and a daughter, while walking towards a clinic were "immediately surrounded and yelled at and screamed at" and that anti-abortion protestors would "thrust signs in faces." *Id.* at 1251. Here, Colorado's purported legitimate interest was public safety to include protecting folks from documented assault and harassment when entering a health care facility, not an undifferentiated paternalistic desire to spare folks from unwanted communication in a general context. But, even when glossing over substantial differences in the purported interests of the Library and the State of Colorado in the case cited by Defendants,

## IV. DEFENDANTS' RIGHT-TO-BE-LEFT-ALONE THEORY OF STATE PROTECTION, SIMILAR TO THE LIBRARY'S "PURSUE PATRONS" LANGUAGE IN THE POLICY IN QUESTION, COVERS OVER APPROACHING PEOPLE FOR THE FIRST TIME AND CONTINUING TO BADGER SOMEONE WHO IS NOT INTERESTED.

The Library's argument fails to account for the important distinction between approaching someone for the first time and continuing to bother, badger or harass someone who has indicated they are opposed to the cause or do not want to be bothered. Case law, however, including the case law utilized by the Supreme Court to support its decision in *Colorado v. Hill*, 530 U.S. 730 (2000), distinguishes between initial human communication ("[w]e are a social people") and "persistent importunity, following and dogging **after an offer of communication has been declined**." (emphasis added). *Id.* at 717, citing *American Steel Foundries v. Tri-City*

*Trades Council,* 257 U.S. 184, 204 (1921). Waving at people, actively approaching people and talking with them from a normal conversational distance simply is not the same thing as continuing to press a communicative view or communication itself upon someone *after* they have expressed that they are not interested. It is this very distinction that is also covered over by the "pursue patrons" language of the library policy.

## V. DEFENDANTS ARGUMENT THAT THE LIBRARY POLICY IS NARROWLY TAILORED SIMPLY DOES NOT WITHSTAND CONSTITUTIONAL SCRUTINY

Defendants assert that any means whatsoever of achieving a legitimate end satisfies the First Amendment requirement of narrow tailoring. The logical consequence of such an interpretation of narrow tailoring is a circular deconstruction of First Amendment rights. But here Defendants' willful disregard of applicable caselaw in their interpretation is abundantly clear: no matter how many times that they assert that narrow tailoring does not require the least restrictive means of achieving an end, this assertion in itself does not excuse them from the remainder of the requirements, which are explicitly and unambiguously clear. "Government may not regulate expressions in such a manner that a substantial portion of the burden on speech does not advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). In order to "meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interest." *McCullen v. Coakley*, 573, U.S. 464, 495 (2014). Indeed, even in a nonpublic forum, the government may not simply utilize whatever means it chooses, as it may not decline to select "simple available alternatives" that will also serve the targeted legitimate interest. *Sammartano v. First Judicial Dist. Court,* 303 F.3d 959, 967 (9th Cir. 2002).

Case 5:19-cv-06137-BP   Document 100   Filed 12/04/20   Page 28 of 30

**CONCLUSION**

In their opposition to Plaintiff's motion for summary judgment, Defendants have argued that forum classification, legitimate interests and narrowly tailoring should be interpreted in a manner that deconstructs First Amendment rights, an argument unpersuasive from any logical or good faith interpretive standpoint. What's more, they make this argument without making any attempt to reconcile their theories with contradictory cases, arguments, *recent* Supreme Court cases, the substantive purpose of the First Amendment, or the First Amendment's requirement that the benefit of the doubt be given to protecting rather than stifling speech. Whether or not the First Amendment and its "interpretive framework"/the forum analysis should be interpreted in the facially deprecating manner advanced by Defendants is an issue of law. Plaintiff respectfully requests summary judgment in her favor.

RESPECTFULLY SUBMITTED,

STACY ARNOLD, Plaintiff

 /s/Stacy Arnold
Stacy Arnold
500 Westover Dr. #11589
Sanford, NC 27330
803-428-7024
stacy.kaye.arnold@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on December 4, 2020, to be served by operation of the Court's electronic filing system upon:

Christopher L. Heigele
Steven F. Coronado
Bay Otto Coronado PC – KCMO
4600 Madison Avenue
Suite 210
Kansas City, MO 64112-3019
cheigele@batyotto.com
scoronado@batyotto.com
*Attorneys for Defendants*
*City of St. Joseph, Missouri,*
*Officer Rebecca Hailey*

Gregory P. Goheen
McAnany, Van Cleave & Phillips, PA-KCKS
10 East Cambridge Circle Drive
Ste. 300
Kansas City, KS 66103
ggoheen@mvplaw.com
*Attorneys for Defendant*
*St. Joseph Public Library*

  */s/ Stacy Arnold_____*