IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| STACY K. ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-06137-CV-SJ-BP |
| CITY OF ST. JOSEPH, MISSOURI, *et al.*, | ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION GRANTING DEFENDANTS' MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this case, *pro se* Plaintiff Stacy Arnold ("Plaintiff") alleges that her civil rights were violated in front of the East Hall Library, a branch of the St. Joseph Public Library, ("the Library").[1] She has asserted claims against the Library, the City of St. Joseph, ("the City"), and Officer Rebecca Hailey in her individual capacity, ("Hailey"). Plaintiff has filed a Motion for Summary Judgment as to Count I. The City and Hailey, (collectively, "the City Defendants"), have filed a Motion for Summary Judgment. The Library has filed a motion seeking dismissal for lack of jurisdiction or, alternatively, for summary judgment. As discussed more fully below, (1) Plaintiff's motion, (Doc. 86), is **DENIED**, (2) the City Defendants' motion, (Doc. 84), is **GRANTED**, and (3) the Court **GRANTS** the Library's request to dismiss the sole remaining claim against it for lack of jurisdiction.

## I. BACKGROUND

Most of the relevant facts are not disputed, so the Court will provide citations only where necessary. In addition, many of the disputes involve irrelevant semantic differences; the Court has

---

[1] The St. Joseph Public Library is a political subdivision of Missouri, distinct from the City of St. Joseph.

stated these facts consistently with the parties' agreement without further citation. The Court also has not included facts that are not relevant to the legal analysis.[2]

The Library is located in the East Hills Mall, ("the Mall"), in St. Joseph, Missouri. It is not clear whether the Library building itself is owned by the Mall or the Library. It is clear, however, that the sidewalks and the parking lot belong to the Mall. On January 30, 2018, Plaintiff was at the Library seeking signatures on a petition to place a question related to the minimum wage on the ballot at the next election. She did so in her capacity as an employee for FieldWorks, LLC, which is an entity that, among other things, promotes causes and gathers signatures on petitions for clients around the country. Sara Whitten, a Senior Library Assistant at the Library, received multiple complaints from Library patrons that they had been "accosted" by Plaintiff as they were getting into or out of their cars in the parking lot.[3] Maryanne Knorr, another Library employee, received similar complaints. (Doc. 85-5, ¶ 4; Doc. 94-3, pp. 6-7 (Answer to Interrogatory No. 6.)[4] Knorr contacted Mall Security.

At the time, the Library had a policy, ("the 2018 Policy"), that permitted petitioners to stand outside its branches and collect signatures at areas designated by staff but prohibited petitioners from "pursuing" patrons. The Mall had a policy prohibiting all forms of solicitation – including collection of signatures – without prior permission from Mall management. It is not clear to what extent the Mall, Whitten, or Knorr were aware of the Library's policy.

---

[2] The City Defendants describe many facts as both irrelevant and constituting hearsay. The Court does not agree that the facts are hearsay; however, there is no need to discuss that issue further because the Court agrees that many facts identified by Plaintiff are irrelevant under the legal standards governing this case. Plaintiff has occasionally agreed that a fact proposed by a Defendant is uncontroverted and added additional facts; in such cases the Court has treated the fact as uncontroverted to the extent that the parties have agreed that it is uncontroverted.

[3] Plaintiff disputes that she accosted anyone, but she does not dispute that Whitten received complaints that she had.

[4] All page numbers cited herein are those generated by the Court's CM/ECF system.

When Knorr contacted Mall Security, she was advised of the Mall's policy prohibiting the gathering of signatures and Mall Security Officers Roger Clary and Zachary Langford came to the Library to address the situation. There is a dispute as to where Plaintiff was and what she was doing when the security officers arrived. Clary states that Plaintiff was soliciting signatures in the parking lot. (Doc. 85-7, ¶ 4.) Plaintiff states that she was on the sidewalk and was not soliciting signatures, but as stated earlier Plaintiff agrees that the sidewalk she was standing on (like the parking lot) was not Library property. (Doc. 94-4, ¶¶ 2-5; *see also* Doc. 94, p. 12 (essentially agreeing with the City's Statement of Uncontroverted Fact 23).) Thus, regardless of where Plaintiff was or what she was doing when the security officers arrived, the parties agree that she was not on Library property.

Clary told Plaintiff to leave, but the parties disagree as to the precise words Clary used. Regardless of the words Clary employed, Plaintiff concedes that Clary conveyed to her that she was on property owned by the Mall and that Clary desired for her to leave the Mall altogether because soliciting – including seeking signatures on petitions – was not permitted at the Mall. Plaintiff insisted she has a right to seek signatures at the Library; it is not clear how she distinguished between the Library and the Mall, but the fact that she saw a distinction caused her to believe that she did not need to leave. Clary saw no such distinction and again instructed her to leave. Plaintiff declined to leave and told Clary that if he wanted her to leave he would have to call the police.

The police were called, and Hailey and another officer responded. The parties agree that when the officers arrived Plaintiff was on Mall property and not on Library property. Hailey told Plaintiff that she was trespassing based on (1) complaints received from the Library, Clary, and Langford and (2) Clary's directive that she leave. Plaintiff told Hailey that she would leave if she

3

was directed to do so by a police officer but first she wanted Hailey's badge number. Plaintiff did not leave. Eventually, Hailey asked Clary if the Mall wished to prosecute Plaintiff for trespassing, and he indicated that the Mall did. Plaintiff, still standing on Mall property, was then arrested and taken to the police station where she was issued a summons for violating section 20-51(B) of the City's ordinances, regarding trespassing.[5] Hailey's police report incorrectly indicates that Langford, not Clary, was the complaining representative for the Mall. The trespassing charge was eventually dropped.

In July 2019, the Library adopted a new policy, ("the 2019 Policy"), that replaced the 2018 Policy. Under the new policy, those engaged in petitioning are "required to stand outside library buildings on [Library] property in areas designated by staff, away from entrances, and must not impede traffic or pursue patrons." (Doc. 89-1, p. 61.) The 2019 Policy then designates the area at each branch where petitioners may stand; for the Library branch at the Mall the designated area is:

> An area of eight squares of concrete halfway between the statue garden and the front door. The nine [sic] squares are between the pillars. Petitioners and those Assembling should not be on the sidewalk in front of the pillars or the ten squares of concrete directly in front of the entrance. Petitioners and Assemblers may not impede entrance into the library.

(Doc. 89-1, p. 62.) A picture of the entrance appears below this description, and the picture depicts the areas where petitioners may stand.

Plaintiff filed this suit on October 9, 2019, several months after the 2019 Policy was adopted. Meanwhile, according to her response to interrogatories, (Doc. 85-11, pp. 2-3), Plaintiff

---

[5] Plaintiff recorded part of her interaction with Hailey on her cellphone, and the video is in the Record as Exhibit E to the original Complaint and referenced in the summary judgment briefing as Plaintiff's Exhibit K. (*See* Doc. 94-11.) In the video, Hailey's name is clearly visible on her name badge. Plaintiff relies on the video as proof that Hailey never told her to leave, but as it is an excerpt it does not show the entirety of her encounter with Hailey. And, in the excerpt provided, Hailey told Plaintiff "[i]f they asked you to leave and you refuse you're actually trespassing" and Plaintiff responded "I just need your badge number ma'am." Based on the undisputed facts, it is obvious that the Mall's desire that Plaintiff leave was communicated to her regardless of the precise words Clary and Hailey used. Finally, it should be noted that a directive to leave from a police officer is not a prerequisite for a trespassing charge. (*See* page 12, below (where the ordinance is set forth).)

4

left Missouri in March 2018. She lived in numerous locations and did not return to Missouri until June 8, 2019 but left again three weeks later (before the 2019 Policy was adopted in July and before this suit was filed in October). She returned to Missouri on January 21, 2020. She did not solicit signatures for petitions at the Library in June 2019, but she did in January/February 2020, without incident. (*See, e.g.*, Doc. 85-12, p. 24 (Plaintiff's Dep., p. 93).) When she canvassed for signatures in 2020 she did so as a volunteer, (Doc. 85-12, pp. 17-18 (Plaintiff's Dep., pp. 68-69)), but she left Missouri in February 2020 to take a job elsewhere (apparently, in North Carolina) for FieldWorks. (Doc. 85-12, pp. 16, 18 (Plaintiff's Dep., pp. 61, 70).) She was hired to be a "campaign director," and her duties were (and continue to be) managing canvassers around the country, arranging and coordinating locations for canvassers around the country, and filling in for other directors; occasionally, she fills in for a canvasser for an hour or so. (Doc. 85-12, pp. 20-21 (Plaintiff's Dep., pp. 79-81).)

Plaintiff testified that she wants to return to the Library to collect signatures and that she has a "concrete intention to return . . . in the future and circulate a petition," (Doc. 85-12, p. 19 (Plaintiff's Dep., pp. 73, 75).) However, she also testified that whether and when she returns is "up in the air," she is not aware of any issues in Missouri that she would like to personally support that would cause her to return to collect signatures at the Library, and she currently has no plans to return to Missouri or collect signatures at the Library. (Doc. 85-12, pp. 18-19 (Plaintiff's Dep., pp. 69-73).)

The Amended Complaint asserts five claims, portions of which were dismissed in a prior Order addressing a motion filed by the Library. (Doc. 50.) The claims asserted, and the effect of the Court's prior Order, are as follows:[6]

---

[6] Clary was originally a defendant in this case, but he was dismissed pursuant to the parties' stipulation. (Doc. 56; Doc. 57.) The Court will omit him from the description of Plaintiff's claims except as necessary for clarity.

5

Count I alleged that the 2018 Policy was, and the 2019 Policy is, unconstitutional and sought declaratory and injunctive relief (but not monetary relief) against the Library and the City.[7] The Court dismissed Count I insofar as it related to the 2018 Policy because the 2018 Policy no longer existed when the suit was filed, so Plaintiff lacked standing to seek declaratory and injunctive relief. (Doc. 50, p. 6.) The Court further concluded, based on the allegations in the Amended Complaint, that Plaintiff had standing to challenge the 2019 Policy, (Doc. 50, pp. 6-7), and this is the only remaining aspect of Count I.[8]

Count II is asserted against the Library and the City Defendants and alleges that the events in January 2018 violated Plaintiff's First Amendment rights. The Court previously interpreted Count II as seeking (1) declaratory and injunctive relief as to the Library and (2) declaratory and injunctive relief and damages from the City Defendants. (Doc. 50, p. 7.) The Court then concluded that Plaintiff lacked standing to seek declaratory and injunctive relief against the Library and dismissed the Library from Count II. (Doc. 50, pp. 7-8.)

Count III alleges that Hailey violated Plaintiff's Due Process rights when she wrote that Langford, and not Clary, confirmed that the Mall wanted to pursue a trespassing charge.

Count IV asserted two distinct conspiracies, alleging that (1) Clary and the Library conspired to deprive Plaintiff of her First Amendment rights and (2) Clary and Hailey conspired to deprive Plaintiff of her Due Process rights. The Court dismissed the Library from Count IV, (Doc. 50, pp. 9-10), which, with Clary's dismissal, (*see* footnote 6, above) leaves Hailey as the only defendant on Count IV.

---

[7] Count I also names Hailey in her official capacity, which Plaintiff acknowledges is the same as naming the City itself and is therefore redundant. (Doc. 19, p. 18 n.2; *see also Kentucky v. Graham*. 473 U.S. 159, 166 (1985).)

[8] The Court's prior Order is not clear as to whether it dismissed Count I's claims regarding the 2018 Policy only as to the Library or as to both the Library and the City. To clarify matters, the Court states that its prior analysis regarding Plaintiff's standing to seek equitable relief regarding the 2018 Policy applies equally to the City. Thus, further discussion of the 2018 Policy is unnecessary.

Finally, Count V alleges that Hailey arrested Plaintiff in retaliation for Plaintiff's exercise of her First Amendment rights.

The City Defendants have filed a Motion for Summary Judgment, and the Library has filed its own Motion for Summary Judgment that includes a request that the remainder of Count I be dismissed for lack of jurisdiction. In addition to opposing these motions, Plaintiff has filed her own Motion for Summary Judgment as to Count I. The Court resolves the parties' arguments below.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute. FED. R. CIV. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

7

## A. Count I – Constitutionality of the Library's 2019 Policy

As stated earlier, the only remaining aspect of Count I is Plaintiff's request for equitable relief with respect to the 2019 Policy. The Library argues that Count I should be dismissed for lack of jurisdiction because it has become moot. The Court does not believe that mootness applies because mootness requires a post-filing event, and the Library does not specify a post-filing event that would support a determination that the claim become moot *after* it was filed. *See, e.g.*, *Campbell-Ewald v. Gomez*, 577 U.S. 153, 160-61 (2016) (describing mootness as applying when an "intervening circumstance . . . during the litigation" makes it "impossible for a court to grant any effectual relief whatever to the prevailing party"). However, the Library's arguments equally implicate standing, and the Court concludes that when Plaintiff filed this suit she lacked standing to challenge the 2019 Policy. The City has not addressed the issue, but a federal court "has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), and the Court independently concludes that Plaintiff lacks standing to seek equitable relief from the City.

For a plaintiff to have standing, she must demonstrate that when she filed the suit she had an injury that was "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted). Because Count I seeks only injunctive relief, and because when she filed the suit the 2019 Policy had not been applied to her, Plaintiff had to demonstrate that when she filed this lawsuit the 2019 Policy would cause her an imminent injury. In *Clapper*, the Supreme Court stated that "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending. Thus, we have

8

repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id.* (cleaned up; emphasis in original). In that same opinion, the Court acknowledged that in some cases it had "found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm" but declined to definitively state whether "substantial risk" or "certainly impending" is the proper standard. *Id.* at 414. Subsequently, courts have applied both standards (or at least the seemingly-lesser standard) without resolving which standard applies (likely because there has been no case where the possibility of a future injury has fallen between "substantial risk" and "certainly impending"). *E.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020); *In re SuperValu, Inc.*, 870 F.3d 763, 768-9 (8th Cir. 2017). Under either formulation, the mere possibility of injury is insufficient. *E.g., City of Kennett v. Environmental Prot. Agency*, 887 F.3d 424, 431 (8th Cir. 2018) (citing *Clapper*, 568 U.S. at 409).

The Court concludes that Plaintiff did not face an imminent injury from the 2019 Policy when this case was filed, and even at present it is clear that there is not a substantial risk of an injury to Plaintiff, nor is one certainly impending. According to Plaintiff's interrogatory answers she was not in Missouri when the policy was adopted in July 2019 or when this suit was filed in October 2019. (Doc. 85-11, p. 2.) Nothing in the Record suggests that she had any plans to return to Missouri when she filed the suit. And, she has no present plans to return, much less plans to return to collect signatures at the Library.

Plaintiff relies principally on her declaration that she wants to return and her description of this desire as "concrete," but these statements do not demonstrate an imminent injury. The Eighth Circuit's decision in *Frost v. Sioux City,* 920 F.3d 1158 (8th Cir. 2019), is instructive. In that case

9

the plaintiff challenged a Sioux City ordinance regarding pit bulls. The plaintiff did not own a dog or live in Sioux City but stated that she intended to adopt a pit bull "in the near future" and when she did she would "likely . . . take it to Sioux City to visit family, friends, and her veterinarian." *Frost v. Sioux City,* 920 F.3d 1158, 1161 (8th Cir. 2019). The Eighth Circuit held that the risk of injury – that is, the risk that the plaintiff's actions would be constrained by the ordinance – were too speculative to support standing.

> Myers does not own a dog and does not live in Sioux City. And her intention to adopt a dog "in the near future" is uncertain as is her prediction that she will "likely" take it into Sioux City. In short, the threat of future injury to Myers from the pit bull ban is "conjectural or hypothetical" and therefore insufficient to confer standing.

*Id.* The Court of Appeals acknowledged the plaintiff's insistence that she would bring a pit bull to Sioux City, but found her declaration insufficient because "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* (cleaned up) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)). Other cases have similarly held that a plan to do something "some day," without more, is insufficient to establish an imminent injury. *E.g., Carney v. Adams*, No. 19-309, 2020 WL 7250101, at *6 (U.S. Dec. 10, 2020) ("Precedent supports the conclusion that an injury in fact requires an intent that is concrete. . . . And 'some day intentions' do not support a finding of the 'actual or imminent' injury that our cases require." (quotation omitted)); *see also Clapper*, 568 U.S. at 432; *Keller v. City of Fremont*, 719 F.3d 931, 952 (8th Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). Plaintiff's characterization of her plans as "concrete," without more, is insufficient; at best, she has a concrete plan to return some day if certain events occur. This intention does not establish an imminent injury.

10

It is true that Plaintiff returned to Missouri in early 2020 and at that time was required to abide by the 2019 Policy while collecting signatures at the Library, but she has not asserted a claim for damages based on a violation of her First Amendment rights in January/February 2020. The lack of a damage claim is significant because a plaintiff must demonstrate standing for each form of relief sought, *e.g., Summers*, 555 U.S. at 493; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and injunctive relief will not remedy the past (and completed) injury from January/February 2020. The Court further concludes that Plaintiff's brief encounter with the 2019 Policy is also insufficient to demonstrate standing to seek declaratory and injunctive relief. Plaintiff lacked standing when the suit was filed, and even if Plaintiff suffered an injury after the suit was filed (such that it could be suggested standing "arose" in early 2020), her present lack of an imminent injury is decisive. *E.g., Carney*, 2020 WL 7250101, at *4 (discussing need for the "personal connection" that is necessary at the commencement of the suit to continue throughout the case).

For these reasons, the Court concludes that Plaintiff lacks an injury that can support standing to seek equitable relief regarding the 2019 Policy.[9] Count I is dismissed for lack of jurisdiction, and the Court does not address the parties' arguments about the merits.[10]

---

[9] The Court reached a contrary conclusion when evaluating the Library's Motion to Dismiss, but that is not necessarily surprising. Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Constitution Party of SD v. Nelson,* 639 F.3d 417, 420 (8th Cir. 2011) (citing *Lujan*). Unlike at the dismissal stage, the Court now has a complete Record to evaluate and is no longer relying solely on Plaintiff's pleadings.

[10] In a single paragraph, Count I also suggests that Ordinance 20-51 is unconstitutional because it does not adequately preserve the right to petition on public sidewalks. (Doc. 19, ¶ 57; *see also* Doc. 94, pp. 24-25.) For the reasons stated above, the Court concludes Plaintiff lacks standing to assert this claim. Moreover, the parties agree that the sidewalk she was on belongs to the Mall and is thus private property, which provides another reason to conclude that Plaintiff lacks standing to litigate her right to collect signatures on public sidewalks.

11

## B. Count II – Unconstitutional Arrest in Violation of First Amendment

Count II alleges that Plaintiff's arrest violated her First Amendment right to collect signatures, and as stated earlier only the City Defendants remain.[11] Count II is slightly different from Count V; the latter focuses on Hailey's motivation for the arrest and alleges that Plaintiff was arrested in retaliation for exercising her First Amendment rights; Count II focuses solely on the arrest and does not depend on Hailey's motivations. Hailey contends that she is entitled to summary judgment because (1) she had probable cause to believe that Plaintiff was trespassing and (2) even if she didn't have probable cause she is entitled to qualified immunity. The City contends that it is entitled to summary judgment for several reasons, including that it cannot be liable if Hailey is not liable. Plaintiff does not respond to these arguments; that is, she does not argue that Hailey lacked probable cause or is not entitled to qualified immunity. (Doc. 94, pp. 15-16.)

The Court concludes that Hailey had probable cause to believe that Plaintiff was trespassing at the Mall (making it unnecessary to address qualified immunity). "Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010) (cleaned up; quotation omitted). This is not a "high bar." *District of Columbia v. Wesby,* 138 S. Ct. 577, 586 (2018).

Ordinance 20-51 defines trespassing as occurring when a person

> enters unlawfully or remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains

---

[11] As explained earlier, Plaintiff must have standing for each form of relief she seeks. For the reasons stated with respect to Count I and in the Court's prior Order, (*see* Doc. 50, pp. 7-8 (explaining that an injunction will not remedy a past injury)), the Court concludes that Plaintiff lacks standing to seek equitable relief from the City Defendants on Count II. However, she does have standing to seek damages from the City Defendants for the 2018 incident.

> in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

Reports had been made to the Library about patrons being "accosted," and Library personnel reported these complaints to the Mall. Plaintiff was on Mall property (either the sidewalk or the parking lot) when she was seen by Clary and Langford, and she was told to leave. Plaintiff did not leave and the police were called. Plaintiff was still on Mall property when Hailey and her partner arrived, and she was told again that the Mall wanted her to leave. Plaintiff stated that she would not leave until certain conditions she established had been met. And Clary, as the Mall's representative, confirmed that the Mall wanted to prosecute Plaintiff.

The information known to Hailey provided her with probable cause to believe that Plaintiff was trespassing, so she is entitled to summary judgment on Count II. And because the City can be liable only if Hailey is liable, the City is also entitled to summary judgment.[12]

### C. Count III – Due Process Violation for Fabricating Evidence

In Count III, Plaintiff alleges that her Due Process rights were violated when Hailey wrote that Langford and not Clary stated that the Mall wanted to prosecute Plaintiff for trespassing. Hailey argues that she is entitled to summary judgment because this minor error did not violate Plaintiff's right to Due Process, and the Court agrees with Hailey.

---

[12] At times Plaintiff seems to suggest that she should not have been arrested because she wanted to petition in front of the Library. (*E.g.*, Doc. 16.) At the same time, as Plaintiff concedes, Officer Hailey was not required to "decipher and apply 'forum analysis' or First Amendment caselaw," (Doc. 94, p. 15); Hailey also was not required to ascertain and evaluate issues regarding the Mall's and the Library's property rights. Based on the facts, Hailey had probable cause to believe that Plaintiff was trespassing on the Mall's property (which, as noted above, Plaintiff does not challenge).

"[A] manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." *Winslow v. Smith,* 696 F.3d 716, 732 (8th Cir. 2012); *see also Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 899 (8th Cir. 2020); *Livers v. Schenck,* 700 F.3d 340, 354-55 (8th Cir. 2012); *White v. Smith,* 696 F.3d 740, 754, 757 (8th Cir. 2012); *Moran v. Clarke,* 296 F.3d 638, 647-48 (8th Cir. 2002) (en banc). However, negligence is insufficient; the plaintiff must demonstrate intentional or reckless conduct. *E.g., Folkerts v. City of Waverly, Iowa,* 707 F.3d 975, 981 (8th Cir. 2013). Moreover, minor errors or discrepancies are insufficient to demonstrate a Due Process violation. *See A.J. ex rel. Dixon v. Tanksley*, 822 F.3d 437, 441 (8th Cir. 2016).

The Record establishes that Clary told Hailey that the Mall wished to prosecute the trespassing charge. Hailey accurately reflected the Mall's desire in her report. The fact that she named the wrong individual who conveyed the Mall's intent was immaterial; the material fact was the Mall's desire to prosecute and this fact was accurately reported so no evidence was "manufactured" by Hailey. The minor error in misidentifying which of the two security guards at the scene conveyed the Mall's intent did not fabricate evidence or otherwise violate Plaintiff's Due Process Rights.

### D.  Count IV – Conspiracy to Violate Constitutional Rights

As stated earlier, the only remaining aspect of Count IV is Plaintiff's claim that Hailey conspired with Clary to violate Plaintiff's constitutional rights. A conspiracy claim requires, among other things, that the plaintiff establish a constitutional violation occurred: absent an underlying constitutional violation, there can be no conspiracy claim. *E.g., Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017); *Tanksley*, 822 F.3d at 444. All of Plaintiff's constitutional claims

14

have been disposed of in Defendants' favor; therefore, Hailey is entitled to summary judgment on Count IV.

### E.  Count V – Retaliatory Arrest

In Count V, Plaintiff alleges that Hailey arrested her in retaliation for exercising her First Amendment rights to (1) disagree with Hailey (2) record the encounter, and (3) request Hailey's badge number.  But the Supreme Court has held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."  *Nieves v. Bartlett,* 139 S. Ct. 1715, 1724 (2019).  As discussed in Part II.B, Hailey had probable cause to arrest Plaintiff for trespassing; therefore, Hailey is entitled to summary judgment on Count V.

### III.  CONCLUSION

For these reasons, Plaintiff's motion, (Doc. 86), is **DENIED** and Defendants' motions, (Doc. 84 and Doc. 88), are **GRANTED**.  Plaintiff's remaining requests for equitable relief in Counts I and II are dismissed, and summary judgment is entered in favor of Defendants and against Plaintiff on her damage-seeking claims in Counts II through V.

IT IS SO ORDERED.

DATE:  January 4, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT